REDACTED

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| Jane Doe, | ) | |
| | ) | **DOE DECL.** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| ABA Accredited University, | ) | |
| American Bar Association, | ) | 1:22CV 947 |
| Department of Education | ) | |
| | ) | |
| Defendants. | ) | |

F I L E D

AUG 1 9 2022

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

### DECLARATION OF JANE DOE

I, JANE DOE, hereby declare and say:

1.  I am a resident of Alexandria, VA, single, disabled veteran, honorably discharged, parent of 2 children (20 and 11 years of age), and on July 12, 2021 I entered into an implied contract with ABA Accredited University, terms of which are constructed from the school's literature and interactions between the parties (ABA Accredited University and me) to include ABA Accredited University providing distance education, providing distance learning, honoring its representations from published literature, acting with good faith, care, and cooperation, in exchange for me paying tuition and fees.

2.  As a law student at ABA Accredited University's ABA Accredited University School of Law, I have completed 39 of 87 required credits for the J.D. program.

3.  To date, each of those credit hours has been earned via "distance learning," which, in other words means that the classes have been taught over zoom video conference technology for any remote students.

4.  Depending on the law class, and when it was offered, some or all the students have been remote, and the delivery of content has been nearly flawless, allowing for synchronous learning, and extensive interactions between students and the professors, using the traditional Socratic methods of legal education.

5.  Plaintiff received distance learning education in Virginia based on ABA Accredited University's use of the zoom meeting technology to reach plaintiff and other students around the world (including as far as Canada and China) and in the United States (students in Miami, Florida), among other places.

6.     The law school announced a new final policy to discontinue the distance learning option on July 21, 2022, which will render it impossible for me to continue in the program for the fall semester absent the law school changing its policy or granting me a policy exception. Unless the court intervenes immediately, I will be unable to fulfill my dream to continue law school and become a lawyer for reasons that follow.

<b>Relocating to New York to Attend Classes In-<br>Person Would Create an Undue Hardship<br>Because of My [Redacted]</b>

7.     I have a [Redacted] for which the university provides certain [Redacted].

8.     The [Redacted] causes challenges in my day-to-day life, and those challenges would be exacerbated if the university discontinues the distance learning option to take law classes remotely, which would force me to attend class in-person in New York.

9.     One such tool that I use to minimize the impact of my [Redacted] is a special workstation that is set-up at my residence.

10.     It would not be feasible to set-up the workstation at the university in each classroom, as the university would not be able to do so while protecting my [Redacted] and [Redacted], or in other words, without drawing undue attention to my [Redacted]. I have sought information as to how the university would protect my [Redacted] and [Redacted] while providing the necessary [Redacted] and the university has chosen not to respond causing me to complaint and criticize the university.

11.     The American Bar Association Standards 306 and 311(e) which pertain to distance learning limits, and Standard 207, allow the law school to provide me the distance learning option as an [Redacted] without impacting their accreditation.

12.     I also believe that Standards 306 and 311(e) are also unconstitutional in that they are not rationally related to a proper governmental need, and to the extent that ABA has enacted these standards, they also violate anti-trust laws due to the anti-competitive effects of the standards on legal education.

13.     I wish to have the right to sit for the NY State and Virginia State bar examinations, which currently require graduation from an AAB accredited law school.,

14.     VA State Bar examination, with few exceptions, requires applicants to have a degree from an ABA accredited university, and I would not likely be deemed to satisfy any of the exceptions if the J.D. degree were somehow denotes as having been received without compliance with the ABA standards 306 and 311(e).

15.     NY State has different rule described below.

16.     I petitioned the New York State Court of Appeals for a waiver of § 520.3(c)(6)(i) of the Rules of the Court of Appeals, for the Admission of Attorneys and Counselors at

Law which prescribes distance learning credit limits, and which states, in pertinent part:

> *§ 520.3 Study of Law in Law School*
>
> *(6) Distance education. Distance education is an educational process in which more than one-third of the course instruction is characterized by the separation, in time or place, or both, between instructor and student, and the instruction involves the use of technology to support regular and substantive interaction among students and between students and the faculty member, either synchronously or asynchronously.*
>
> *(i) Up to 15 credit hours for distance education courses may be counted toward both the 83 credit hours required for graduation and the 64 classroom credit hours required by paragraph (1)(ii) of this subdivision, provided that:*
>
> *(a) there is opportunity for regular and substantive interaction between the faculty member and student and among students; and*
>
> *(b) there is regular monitoring of student effort and accomplishment by the faculty member as the course progresses, and the opportunity for communication regarding the student's work.*

17.   The Rules allow for a waiver, as stated below, pursuant to:

> *§ 520.14 Application for Waiver of Rules*
>
> *The Court of Appeals, upon application, may in its discretion vary the application of or waive any provision of these rules where strict compliance will cause undue hardship to the applicant. Such application shall be in the form of a verified petition setting forth the applicant's name, age and residence address, the facts relied upon and a prayer for relief.*

18.   The waiver sought from the New York State Court of Appeals would prospectively allow me to continue my enrollment in the J.D. law program and complete the remaining forty-eight (48) credits required for the J.D., while knowing that I would remain eligible to sit for the New York Bar Examination. Relocating to New York, even temporarily, to attend classes in-person in strict compliance with the rules, would cause an undue hardship for the reasons that follow.

19.   The university is aware that the ABA standards can be waived to accommodate a [Redacted], and also that the New York State Court of Appeals may grant a waiver to the distance learning standards, upon Petition, yet, they have refused to discuss either of those topics with me.

20.　At the same time, I am entitled by law to have other [Redacted], many of which have been denied by the university without any explanation, and contrary to its own policies.

**Relocating to New York to Attend Classes In-Person Would Create an Undue Hardship Because of a Virginia Court Ordered Shared Custody Arrangement**

21.　I share custody of a minor child who resides between my house and his other parent's house in a roughly fifty-fifty custody arrangement by agreement which has been incorporated into a court order.

22.　My child's mother works fulltime, and the child is involved in numerous school and sports activities, including a U.S. National Soccer affiliated soccer academy which makes it extremely important that I am local to help.

23.　My son also has a learning [Redacted] which makes my presence in Virginia and my involvement in his day-to-day life of paramount importance.

24.　It causes me great dread to consider the possibility that I would need to trigger child custody litigation to modify a child custody order, by relocating to New York, just so I may complete my J.D. program.

25.　More importantly, my young son needs me present here in Virginia, so without the waiver, my studies must be discontinued.

26.　Even if relocation were possible, which it is not, the timing of the university's announcement regarding discontinuing the distance learning, makes it impossible to obtain a modified custody order from a Court before the fall semester begins, and ultimately, my son's mother will not consent to my relocation.

27.　Therefore, it would be impossible to fulfill my family obligations from New York and I would need to withdraw from the program.

**Pre-Offer and Pre-Acceptance into the J.D. Program**

28.　Starting on October 14, 2020, ABA Accredited University law school sent unsolicited advertising emails to me inviting me to apply to the law school.  Those emails, including all emails referenced in this declaration, were sent to Plaintiff, received, opened, and read in Alexandria, VA.

29.　In 2020, on October 21, November 13, and November 16, ABA Accredited University continued to reach out inviting me to apply to the law school.

30.   The email on November 16 was from Associate Dean for Enrollment Management, Robert [Dean 2 Redacted], who wrote:

> *Dear [Jane Doe],*
>
> *I did not receive your LSAC Application to ABA Accredited University Law by yesterday's priority deadline. Since I'm still very interested in considering you for our JD program, I am giving you another day to apply.*
>
> *Please apply to ABA Accredited University Law by midnight tonight.*
>
> *You'll still be able to apply without paying an application fee, and you'll automatically be considered for merit scholarships. Plus, once you apply and complete your application by tonight's deadline, you'll receive an admission decision on or before December 15.*
>
> *Get the preparation you need to succeed in today's legal marketplace with a JD from ABA Accredited University Law. With our robust legal curriculum, outstanding faculty, 11 clinic programs, more than 150 externships and proximity to New York City, we'll help you achieve a rewarding and long-lasting legal career.*
>
> *I encourage you to take advantage of this extra day and get your application to me by midnight tonight!*

31.   I replied to Dean [Dean 2 Redacted] expressing my interest, but also to let him know that I had some questions related to the program, my [Redacted] and character and fitness concerns, we set-up a time to speak, and then we spoke around 11:30 a.m. on November 17.

32.   As I recall, Dean [Dean 2 Redacted] and I discussed several items including my [Redacted] and my family situation, including my arrangement of shared custody of a minor child in Alexandria, Virginia, and I was left assured that the University was committed to offering services to disabled students and students at different stages of their lives, with non-traditional family situations, and that there was an office to address any special needs.

33.   When I researched the program in November 2020, ABA Accredited University Law advertised on its website that all students were taking classes remotely and I relied upon that information in my decision to apply for admissions to ABA Accredited University Law School.

34.   Invitations and enticements continued to come regularly from ABA Accredited University Law.

35.  On November 25, Dean [Dean 2 Redacted] sent a personalized email again, indicating:

> Dear [Jane Doe],
> You're invited to apply to ABA Accredited University Law. I'm eager to consider you for admission to our outstanding JD program, which you can customize and which will prepare you to become an outstanding lawyer.
>
> Click here to submit your ABA Accredited University Law application through LSAC.
>
> I have granted you incentives that will make applying more convenient, such as:
>
> - No application fee
> - Automatic consideration for merit scholarships
> - A four-week admission decision once you've submitted a completed application
>
> The JD program at ABA Accredited University Law offers you many options to specialize your degree. You could add a concentration in an area such as business law, corporate compliance, criminal law and procedure, energy and environmental law, family law, health law, international law or intellectual property. Or you could get a joint degree with our three program options: JD/MBA (Master of Business Administration), JD/MPH (Master of Public Health) or JD/MALFL (Master of Forensic Linguistics). Plus, you'll love our close proximity to New York City and the benefits of our 240-acre college campus.
>
> In addition, ABA Accredited University Law is highly ranked; Law School Transparency ranks us as #8 for Job Placement Success Among Law Schools in New York State, and Buffalo Law Review ranks us #58 for Most Alumni Partners at Top 100 Firms.

36.  The emails from ABA Accredited University law continued to arrive. On December 2, with subject line: "Are you receiving my emails?" Dean [Dean 2 Redacted] wrote:

> Dear [Jane Doe]
>
> I want to make sure you received my previous invitation for you to apply to ABA Accredited University Law.
>
> Submit your ABA Accredited University Law application through LSAC here. You will receive these exclusive advantages:
>
> No application fee

6

*Automatic merit scholarship consideration*
***A four-week admission decision (from when you submit your completed application)(emphasis added)***

*As pioneers in fully integrating clinical education into a traditional law school curriculum, we understand the importance of having real-world experience when entering the job market. In any one of our valuable clinics, you'll have the opportunity to work alongside experienced faculty and represent actual clients.*

*Choose from one of our 11 clinics in the following areas: asylum, community and economic development, criminal justice, deportation defense, entrepreneurship and intellectual property, federal tax, immigration, juvenile justice, law reform advocate, veterans law or youth advocacy.*

*If you're not ready to pursue your legal degree, please let me know if you're interested in applying in the future. I'll keep you updated on important application news.*

*I'm eager to consider you for our engaging JD program, and I encourage you to apply as soon as possible.*

37.    On December 9, I received another email from the law school with subject line: "Everything is Possible," which is followed by:

*Thanks to our innovative hands-on opportunities, you will gain plenty of real-world experience at ABA Accredited University Law. You would join our alumni lawyers, business executives and community leaders by participating in fully integrated clinical education, working alongside our experienced faculty by counseling clients, advocating in court, mediating disputes and more as you earn your degree.*

*Whether you want to become a CEO, Health Care Director, Chief Innovator, Managing Partner, Justice or Public Servant, demand only the best from your JD program!*

38.    On December 16,  Dean [Dean 2 Redacted] emailed again:

*Dear [Jane Doe],*

*I encourage you to apply to ABA Accredited University Law. Here, we provide you with once-in-a-lifetime experiences that will jump-start your legal career and help you navigate the local, national and global worlds of practicing law.*

*Follow this link to your LSAC Application.*

*There is no fee to apply, and we'll send you an admission decision in just four weeks (from when you submit your completed application). Plus, you'll automatically be considered for merit scholarships!*

*We offer many unique externship opportunities that help students gain valuable direct experience that leads to success in the legal marketplace. We've placed students in externships at The Legal Aid Society, Louis Vuitton, New York State Attorney General's Office, Sony, SoulCycle, U.S. Attorney's Office and the U.S. Patent and Trademark Office. We also offer specialized externships, simulation courses and advocacy programs to help you supplement your learning experience.*

*Plus, our college campus feel just 25 miles from New York City will give you easy access to numerous career and social opportunities!*

*If you're not ready to start your JD in 2020, just let me know if you're interested in applying in the future. I would love to stay in touch.*

*Launch your career in health law, legal tech or another fast-growing field at ABA Accredited University Law. I look forward to receiving your application and considering you for admission soon.*

39.    On December 17, I received another email from Dean [Dean 2 Redacted] with subject line, "Have you received our letter?" The email stated:

*Dear [Jane Doe] ,*

*I encourage you to apply to ABA Accredited University Law. Here, we provide you with once-in-a-lifetime experiences that will jump-start your legal career and help you navigate the local, national and global worlds of practicing law.*

*Follow this link to your LSAC Application.*

*There is no fee to apply, and we'll send you an admission decision in just four weeks (from when you submit your completed application). Plus, you'll automatically be considered for merit scholarships!*

*We offer many unique externship opportunities that help students gain valuable direct experience that leads to success in the legal marketplace. We've placed students in externships at The Legal Aid Society, Louis Vuitton, New York State Attorney General's Office, Sony, SoulCycle, U.S. Attorney's Office and the U.S. Patent and Trademark Office. We also offer specialized externships, simulation courses and advocacy programs to help you supplement your learning experience.*

*Plus, our college campus feel just 25 miles from New York City will give you easy access to numerous career and social opportunities!*

*If you're not ready to start your JD in 2020, just let me know if you're interested in applying in the future. I would love to stay in touch.*

*Launch your career in health law, legal tech or another fast-growing field at ABA Accredited University Law. I look forward to receiving your application and considering you for admission soon.*

*Get started on a law degree that helps you turn your passion into a rewarding career. Apply to ABA Accredited University Law today, or give me an update on if you plan to apply in the future.*

40.    On January 2, 2021, Dean [Dean 2 Redacted] emailed again with subject line "Apply by 1/15," and in the body was the following:

*Dear [Jane Doe],*

*You're invited to apply to ABA Accredited University Law. The January 15 deadline to apply is just around the corner, so I encourage you to submit your application right away!*

*Click here to submit your application through LSAC.*

*You'll receive exclusive advantages when you apply, such as no application fee, a four-week admission decision (from when you submit your completed application) and automatic merit scholarship consideration.*

*We've developed a robust Mentorship Program to make sure your transition to law school is as seamless as possible. In your first year, you'll be provided with a collaborative advising team composed of a career counselor, student affairs advisor and two faculty members so you get a personalized academic and career-building experience. Then, in your third year, you'll be paired with a ABA Accredited University Law alumnus who currently works in your field of interest so you receive the support and network connections you need to enter the marketplace.*

*I know you'd benefit from all that ABA Accredited University Law has to offer you. Submit your application by January 15 or let me know if you're interested in applying in the future.*

41.    On January 8, Dean [Dean 2 Redacted] wrote an email with subject "Your January 15 deadline is one week away," which contained the following:

*Dear [Jane Doe],*

*Your invitation to apply to the JD program at ABA Accredited University Law by the winter deadline is good for one more week. I'd be honored to help you on your path toward a great legal career, and I encourage you to apply by January 15.*

*Apply to ABA Accredited University Law now!*

*Don't forget your privileges: no application fee, automatic consideration for merit scholarships and a four-week admission decision (from when you submit your completed application).*

*ABA Accredited University Law's faculty is composed of outstanding scholars, talented clinicians, published authors and well-respected experts in their fields. Not only will you learn from the best in small, tight-knit classes, but you'll also work and collaborate alongside them as they blaze trails in their chosen fields.*

*Not ready to apply to ABA Accredited University Law just yet? Simply let me know if you're interested in applying in the future.*

*I look forward to helping you pursue your JD. Submit your application through LSAC by the January 15 deadline.*

42.    On January 13, Dean. [Dean 2 Redacted] wrote: "Important: ABA Accredited University Law application due in two days," and the body of the email stated:

*Dear [Jane Doe],*

*We're only two days from the January 15 deadline to apply to ABA Accredited University Law. I urge you not to let this deadline pass you by – take action today!*

*When you submit your application through LSAC, you'll receive select advantages:*

*No application fee*
*Automatic merit scholarship consideration*
*A four-week admission decision (from when you submit your completed application)*
*At ABA Accredited University Law, we're constantly adapting to help our students stay on top of the latest changes in the legal profession and graduate practice-ready with the skills employers are looking for. In fact, last year, we ranked 68th nationally for our job placement success.*

*If you're not ready to begin your legal studies just yet, simply let me know which future enrollment term interests you. But if you are ready to pursue your JD, beat the January 15 deadline and submit your application now!*

43.   On January 15, Dean [Dean 2 Redacted] wrote: "Call for Applications – today is your deadline," and the body of the email was as follows:

*Dear [Jane Doe],*

*In order to be considered for the JD program at ABA Accredited University Law, you must submit your application by midnight tonight.*

*Submit your application through LSAC now.*

*Don't forget your exclusive privileges: no application fee, a four-week admission decision (from when you submit your completed application) and automatic merit scholarship consideration.*

*ABA Accredited University Law graduates find successful careers soon after completing their legal studies. In fact, according to Law School Transparency (LST), we're ranked 68th nationally and eighth in New York state for job placement success. Plus, our students have found rewarding positions in private practices, top businesses, the government, public interest fields and more.*

*I urge you not to wait a moment longer. Apply by midnight tonight and see how far you can take your future legal career.*

44.   I submitted an application on January 15, 2021 and received confirmation from Law School Admissions Counsel (LSAC) at 6:53 p.m. indicating that the application had been received.

45.   On January 16, apparently not realizing that I had submitted the application the day before, Dean [Dean 2 Redacted] sent another email with the subject: "I have extended your deadline to January 20," which stated:

*Dear [Jane Doe],*

*Yesterday was the winter deadline to apply to ABA Accredited University Law. But because I would still like to consider you for our upcoming class, I'm granting you more time. Please submit your application by January 20!*

*Remember, when you submit your application through LSAC, you will not pay an application fee, you'll receive a four-week admission decision (from when you submit your completed application) and you'll automatically be considered for merit scholarships.*

11

*You'll receive an outstanding legal education at ABA Accredited University Law. Not only do we offer a traditional JD program with a variety of excellent concentrations, but we also offer three joint degree programs: JD/MBA (Master of Business Administration), JD/MPH (Master of Public Health) and JD/MALFL (Master of Forensic Linguistics). We also offer programs such as the Master of Laws (LLM) in American legal studies, family law, and health law and policy.*

*Take advantage of this extra time to apply to ABA Accredited University Law. Get your application in by January 20!*

46.   I emailed Dean [Dean 2 Redacted] on January 16, and having not heard a reply, again on January 26, asking him to confirm that he received my application and to ask if anything further is required.

47.   On February 2, I informed Dean [Dean 2 Redacted] that I had transmitted my letters of recommendation, including one from a Four Star Navy Admiral (retired), who had just finished his office as a United States Ambassador.

48.   On February 4, Dean [Dean 2 Redacted] wrote, despite the previous unqualified commitment to render a decision within 4 weeks: "Please be aware that since there is a character and fitness issue, it may take a bit longer than usual for the committee to render a decision. We appreciate your patience." Dean [Dean 2 Redacted] didn't mention what the character and fitness issue was, but I suspected it may be related to my disclosure of my [Redacted].

49.   On June 10, I reached out to Dean [Dean 2 Redacted] to inquire as to the status, as it was several months beyond the date that he had committed to providing an admission decision.

50.   Despite the school's promise that applicants would hear back within 4 weeks, I had not heard anything as of June 10, so I emailed Dean [Dean 2 Redacted] to inquire about application decisions.

*51.*   On June 14, Dean [Dean 2 Redacted] replied and stated (though no one had ever told me that I was in a waiting list):

*Thank you for your continued interest in ABA Accredited University Law School, and your patience. I know how uncomfortable it is to be on a waiting list. Part of the uncertainty has to do with other students withdrawing at unpredictable times. Please be assured that we will make a final decision as soon as we can."*

52.   By July 2, I still had not heard anything back from the school, so I wrote an email to Dean [Dean 2 Redacted] on that date:

12

> *Dear Mr. [Dean 2 Redacted],*
>
> *You may recall that before I applied we discussed some of the challenges which I believed I might face in gaining admittance into law school with regard to the character and fitness standards. I understand that this is a competitive process, but is it fair to assume that because my LSAT score is above published for the school, and GPA is slightly below average (but in a very difficult major), and given all of my professional experience (military and otherwise), that the Character and Fitness portions of the application are proving to be an obstacle for me?*
>
> *Assuming so, I took the liberty of preparing an additional diversity statement which I've attached, and which I hope could be considered to overcome any objections that may exist.*

53.   I disclosed my [Redacted] in my application because it has a nexus with some of the conduct that I was required to disclose as part of the character and fitness section of the application.   I was concerned because I had read from other disabled students that the universities don't like to provide [Redacted] for certain types of disabilities, so I submitted a "diversity statement" in which I expressed an intent not to seek [Redacted].

### Offer and Acceptance

54.   On July 7, I received an email from Dean [Dean 2 Redacted] informing me that I was accepted into the program, which stated, in pertinent part:

> *Congratulations! On behalf of the faculty and the entire ABA Accredited University Law community, it is my pleasure to offer you admission to the Full Time J.D. Program at the ABA Accredited University School of Law at ABA Accredited University. You are an impressive student, and we are honored to have you here.*

55.   Also on July 7,  I received two separate emails indicating that I was being offered a scholarship, and that I would need to put a seat reservation payment of $1000 by July 12, respectively.

56.   On July 12, 2021, I paid $1000.00 to ABA Accredited University Law for the first and second seat deposits.

### ABA Accredited University Cancels Distance Learning and Wages a Campaign to Force Students to Return to Campus without Regard to Any Special Circumstances

57.   On July 13, 2021 I reached out to Dean [Dean 2 Redacted] about logistics:

*Dear Dean [Dean 2 Redacted]:*

*I just wanted to reach out express my excitement about acceptance into the law program and wanted to thank you for spending time addressing my concerns regarding admissions. I am thrilled with the opportunity and now I am shifting focus to the logistics.*

*As I currently live in Northern Virginia area, I am evaluating different options for completing the program, and I am interested in understanding whether ABA Accredited University Law is planning to continue supporting the remote learning capabilities after the Pandemic.*

*With regard to COVID related policies, the law school publishes that if a student has an illness or health concerns that prevent them from attending a class in-person, including first-year classes, they will be permitted to attend class remotely, via new lecture capture technology being installed in all of the law school classrooms.*

*In my case, participation in the program would likely require ability to take classes remotely, but I am trying to understand if there is a commitment to maintain this approach, or if you expect the school to go back to the traditional requirement of in-person learning. I am aware that ABA had not traditionally allowed remote learning for law programs, but I'm wondering if that has changed, if the school and the professors are supportive of this new approach, or if there is a chance the program will return back to mandatory in-person learning.*

*While the health concerns are the main reason for preventing the attendance at in-person classes at this time, is the school prepared to accommodate other motivations for remote learning if and when the pandemic ends?*

*In my case, I have elderly parents and a brother with a compromised immune system (Leukemia), in addition to parenting responsibilities in Virginia, and I would not be able to relocate to NY without significant hardship given these unfortunate family constraints.*

*I appreciate any insight you might offer on this topic. If the law school does not yet have a position on this, I suppose it could be possible to complete the first year remotely and then evaluate options for next year if pandemic circumstances change, but I really wanted to know if this is acceptable with the school and among its faculty.*

*I am very excited about this opportunity and hope I can participate.*

58.  On July 15, I emailed Dean [Dean 1 Redacted], after being referred to him by Dean [Dean 2 Redacted], which stated:

*Dear Dean [Dean 1 Redacted]:*

*Dean [Dean 2 Redacted] has provided your contact information regarding an inquiry I made about remote learning.*

*With regard to COVID related policies, the law school published on its website that if a student has an illness or health concerns that prevent them from attending a class in-person, including first-year classes, they will be permitted to attend class remotely, via new lecture capture technology being installed in all of the law school classrooms.*

*In my case, I have some health issues that place me at heightened risk for the COVID virus. I also have elderly parents in their 70s and a brother with a compromised immune system (Leukemia).*

*Obviously, law school is a huge investment and I am wondering if there is a way to get commitment from the school, for at least this next year, that I be permitted to participate remotely. I am happy to provide any medical documentation to support the request if necessary.*

*I am very excited about this opportunity and hope I can take the next steps towards enrollment at ABA Accredited University Law.*

59.   On July 14, I inquired about participating in a summer program called "Edge Ahead" designed for incoming students, for which I was too late to participate.  The Professor wrote:  *"We are halfway done with the program, so it's really too late for you to join."*

60.   Additionally, on July 14, I inquired about a fellowship which was advertised on the school website, but the response was: "Unfortunately, all the spots for the fellowship have been filled."

61.   Due to the school's delayed admissions decision, I was denied opportunities to participate in several parts of the programs and opportunities.

62.   It seemed to me at that time that Dean [Dean 1 Redacted] did not realize that I had *not yet* been given a ABA Accredited University email account, which meant I had not received Dean [Redacted]'s earlier email about "returning to campus."

63.   On July 15, Dean [Dean 1 Redacted] replied:

*Dear [Jane Doe],*

*Thanks for your email. I hope you will be able to join us this fall.*

*However, I do want to make sure you understand that our Fall 2021 COVID policies will be different from the policies that we have been using this past year and through our summer classes.   You should have received an email from our Dean, [First Name Redacted] [Redacted], earlier this week as well as earlier emails explaining our Fall*

15

*2021 policies. This fall all students will have to be vaccinated to attend class in person, and only students who have received exemptions from the vaccination requirement for medical or religious reasons (or for extraordinary circumstances) will be permitted to take classes remotely. This policy is different than the poicy [sic]on the website you reference, which only applied to our past semester and for our current summer semester students.*

*If you believe you cannot meet the vaccination requirement or need an exemption, please follow the instructions in Dean [Redacted]'s email as to applying for such an exemption. The deadline for such applications is July 21, 2021*

*I am attaching her email below for your reference.*

*Best,*

*Julian [Dean 1 Redacted]*

*To: [First Name Redacted] [Redacted] <[First Name Redacted].[Redacted]@ABA Accredited University.edu>*
*Subject: Important message from Judge [Redacted] regarding Fall semester*

*Dear Students,*

*We are very excited about the start of the upcoming Fall semester and have been working diligently to ensure that ABA Accredited University Law will be a safe place where we can once again be together on campus and in-person.*

*As you all know, ABA Accredited University is requiring all students, including law students (other than those who are in entirely online programs such as MA and LLM in Health Law programs), to be vaccinated before returning to campus for the Fall 2021 semester. (President Rabinowitz's message announcing the vaccine requirement is attached below for your reference.)*

*If you have not yet been vaccinated, we ask that you please do so as soon as possible. Adhering to this requirement will allow us to hold classes without the masks, social distancing, and other COVID19 requirements that were adopted over the past academic year as a result of the pandemic.*

*If you believe that you qualify for a medical or religious exemption to the vaccination requirement, we urge you to apply for this exemption as soon as possible via the online process set forth on the University's website here.*

*I am also notifying you that law school students can apply to attend classes remotely for next semester for "extraordinary circumstances" not related to medical or religious reasons. This process is open to law students only and approval to take classes remotely will be determined by the Dean's Office of the Law School. All*

*applications for the "extraordinary circumstances" exemption must be submitted to the Dean's Office no later July 21, 2021 at 5 p.m.  The application form and submission instructions for the "extraordinary circumstances" exemption can be found here.*

*Please keep in mind that any students who are approved to attend remotely will not be permitted to attend any classes in-person or participate in any on-campus Law School activities in-person for the entire Fall 2021 semester.  These students cannot use University or Law School campus facilities at all, including the library.  Once approved to attend classes remotely, students must attend all of their classes remotely for the entire semester. Any student who violates these requirements will be subject to discipline under the Law School's Code of Academic Conduct.*

*All students, other than those authorized to attend classes remotely, will be expected to attend all of their classes in-person and will not be permitted to attend class remotely unless the class or class session itself is entirely remote.*

*We are very much looking forward to the upcoming Fall semester so that we can return to all of the wonderful on-campus experiences that we enjoyed prior to the pandemic.  I hope to see you back on campus this fall!*

*With warmest regards,*

*JUDGE [FIRST NAME REDACTED] [REDACTED]*
*Dean*

*A Message from President Stuart Rabinowitz*

*As we continue to plan for our "Together Again" return to campus in the fall, we are taking steps to protect the health and safety of our entire community. We are so proud of how our community worked together to make our campus as safe as possible during the pandemic – the requirements about mask wearing, social distancing, and surveillance testing were taken seriously by our students, and we are proud of the very low incidents of COVID-19 on our campus.*

*As we move forward together, considering the wide availability of COVID-19 vaccines, including the vaccine hub on our own campus made available to our students, we have decided that all students, other than those who are in entirely online programs or are taking all classes remotely, will be required to be vaccinated before returning to campus for the fall semester.*

*At present, the three vaccines authorized for use (Pfizer, Moderna and Johnson & Johnson) are readily available, and we are giving notice now so that all students will have an opportunity to schedule an appointment if they have not already done so. We have previously provided vaccination hubs on our campus for both the Pfizer and Moderna vaccines, and we are able to assist any students in locating a vaccine site.*

17

*I want to urge each of you to get vaccinated as soon as possible. All of the scientific data confirms the health benefits to you and others once you are vaccinated. I have already been vaccinated as have all members of ABA Accredited University's senior administration. Being vaccinated helps to restore our "normal" day-to-day operations and campus life, and we all look forward to return to a pre-pandemic campus environment. In order to make our campus as safe as possible, now is the time to get vaccinated.*

*We expect that our entire campus community will be vaccinated before the start of the fall 2021 semester, and we will be working with all employee groups to achieve that goal. Together our community has adhered strictly to all of the safety requirements put in place during the past year. As we resume more in-person operations on our campus, together we must each do our part to make our campus as safe as possible. We must remain vigilant and nimble, and we will continue to monitor and adjust as the situation warrants, in consultation with health department officials and our partners at Northwell Health.*

*Additional information about where and how to file proof of your vaccine, as well as additional information pertaining to international students and students seeking medical or religious exemptions, is available on our website at ABA Accredited University.edu/togetheragain.*

*Thank you for your continued cooperation.*

*Sincerely,*

*Stuart Rabinowitz*
*President*

64.     This was the beginning of a major campaign at the University to get students and faculty "together again" emphasizing "in-person," and "on-campus" while any special needs of the students were put secondary to the school's business objectives.

65.     On July 16, I received the following from Dean [Redacted]:

*Dear [Jane Doe],*

*We are very excited about the start of the upcoming Fall semester and have been working diligently to ensure that ABA Accredited University Law will be a safe place where we can once again be together on campus and in-person.*

*As you all know, ABA Accredited University is requiring all students, including law students (other than those who are in entirely online programs such as MA and LLM in Health Law programs), to be vaccinated before returning to*

18

*campus for the Fall 2021 semester. (President Rabinowitz's message announcing the vaccine requirement is attached below for your reference.)*

*If you have not yet been vaccinated, we ask that you please do so as soon as possible. Adhering to this requirement will allow us to hold classes without the masks, social distancing, and other COVID19 requirements that were adopted over the past academic year as a result of the pandemic.*

*If you believe that you qualify for a medical or religious exemption to the vaccination requirement, we urge you to apply for this exemption as soon as possible via the online process set forth on the University's website here.*

*I am also notifying you that law school students can apply to attend classes remotely for next semester for "extraordinary circumstances" not related to medical or religious reasons. This process is open to law students only and approval to take classes remotely will be determined by the Dean's Office of the Law School. All applications for the "extraordinary circumstances" exemption must be submitted to the Dean's Office no later July 21, 2021 at 5 p.m. The application form and submission instructions for the "extraordinary circumstances" exemption can be found here.*

*Please keep in mind that any students who are approved to attend remotely will not be permitted to attend any classes in-person or participate in any on-campus Law School activities in-person for the entire Fall 2021 semester. These students cannot use University or Law School campus facilities at all, including the library. Once approved to attend classes remotely, students must attend all of their classes remotely for the entire semester. Any student who violates these requirements will be subject to discipline under the Law School's Code of Academic Conduct.*

*All students, other than those authorized to attend classes remotely, will be expected to attend all of their classes in-person and will not be permitted to attend class remotely unless the class or class session itself is entirely remote.*

*We are very much looking forward to the upcoming Fall semester so that we can return to all of the wonderful on-campus experiences that we enjoyed prior to the pandemic. I hope to see you back on campus this fall!*

*With warmest regards,*

*JUDGE [FIRST NAME REDACTED] [REDACTED]*
*Dean*

66.  Each time I inquired as to the reasons for strict COVID vaccination policy and its very limited criteria for exemptions, none were provided.

67. The university implemented a strict vaccine exemption process which was clearly designed to get everyone back to campus, and the school decided it would seek information about students' medical and religious information to attain its objective.

**Request for Religious Exemption**

68. On July 21, I submitted an eight-page letter in support of my request for an exemption to the vaccine policy and to study remotely, which I entitled Vaccine Exemption Request and Other Considerations. (Exhibit A.)

69. The school replied on July 21: "Please clarify whether you would like us to evaluate this as a religious exemption or not. If so, the religious leader document needs to be included or the request will be denied. If you intend to study remotely, that is handled by your School.

70. I replied to the school on July 21:

> *Greetings:*
>
> *Thank you for your reply. The ABA Accredited University Form requested:*
>
> *"A document from the religious organization to which the student belongs supporting the basis of the religious beliefs which are contrary to vaccination, which must be signed by a religious leader of the [Redacted], and which must include the name, address, and phone number/email of the religious leader."*
>
> *I addressed this in my pps section of my letter and if the requirement is for a personalized letter, which is not stated in the requirement, I would require more time. I would like my requests evaluated as a religious exemption while at the same time considering the inextricably connected issue of studying remotely, based on how ABA Accredited University has defined the requirement.*
>
> *I included reference to 8 documents of which the school can take "Judicial Notice" as authentic evidence of the [Redacted] Church supporting the religious beliefs outlined in my letter.*
>
> *I have also now attached three separate letters from religious leaders digitally signed and published on the Vatican's website supporting the religious beliefs.*
>
> *Notwithstanding my objection to a university attempting to seek out and assess information regarding personal and private religious convictions, and with some concern of caution that the university might not want to be in a position to infringe upon religious freedoms, or subject students to scrutiny for what may seem to be unorthodox views and decisions related to the vaccine in this unique times, if the attached documents are insufficient, I will continue to research to find more. However, it is my view that the attached documents and the 8*

*references are conclusive of the [Redacted]'s view and it supports the positions espoused in my letter.*

*I respectfully object to the university seeking a statement about "religious beliefs which are contrary to vaccination", when the foundational religious belief is that one's own conscience is determinative in whether or not to take a vaccine. By phrasing the requirement the way it did, the university is attempting to phrase the religious belief as to limit the scope of the religious exemption, and in doing so, is passing judgement on a religious belief that allows for personal authority over one's body based on ones conscience. In other words, the question on the form posed the way it does subjects itself to scrutiny that it is violating religious freedoms by attempting to force an answer to a religious question into a construct in which it will not fit, creating, in a sense, a false binary.*

*A decision not to obtain a vaccination for reasons described in the attached documents and in my letter falls within the exercise of one's religious beliefs, and yet, a question posed by the university which purports to evaluate the validity of one's freedom of religious expression based on whether the religious has or does not have an expressed prohibition to all possible vaccines, creates a false binary which infringes upon the protections afforded to religious practices and beliefs in the United States.*

*See also Catechism of the [Redacted] Church.*

*I hope I have given enough support for the university to decide that it can both respect my religious freedoms while at the same time achieve its objectives of getting most students back to the campus.*

*Thank you for your consideration.*

71. The school replied the same day as follows:

*The form and process as it is defined do require a personalized letter. That is stated as a requirement, by virtue of the fact that it is describing your own beliefs and how the religious belief you hold prohibit vaccination. Excerpts or tracts from the Vatican do not meet this requirement.*

*The only exemption processes are medical and religious. There is no "extraordinary " exemption process as you describe in your supporting documents.*

*Your objection is noted , but we are not going to engage in a debate about the process.*

*In addition, remote learning is not handled through the exemption request process and does not require an exemption, but you then would not be able to access campus. If you want to be remote, speak with your School.*

72. The school coerced me as a condition of receiving the exemption request to go get a letter from a religious leader, which I found to be wholly unjustified, unnecessarily burdensome, and a complete invasion into my [Redacted], and it was an indication of the lengths to which the university would go to achieve its unilateral objectives of getting students back on campus. I complied with their request, despite the difficulties, and submitted the letter to ABA Accredited University on July 27. (Exhibit B.)

73. On August 2, Dean Alfreda [Dean 4 Redacted], sent a form letter denying the request without any substantive reasons.  (Exhibit C.)

74. In that letter, Dean [Dean 4 Redacted] stated, notably: "As you know a student may be exempted from the University's vaccination requirement if, **in the opinion of the University, that student holds genuine and sincere religious beliefs which are, contrary to the practice of immunization.**" (emphasis added).

75. Implied in this statement is that the University would use any religious expression it coerced from the student, adjudicate its voracity, and make a decision.  Any adverse decision would have the effect of a punishment in that it would have been based on the University's belief that, in its opinion, the student did not hold a "genuine and sincere religious belief" which was "contrary to the practice of immunization."

76. The religious exemption request required me to disclose information about my beliefs and in that respect, I was forced to disclose some underlying reasons for my beliefs which are related to a very contentious public policy debate centered around women's rights, right-to-life, and more generally, human rights.

77. One conclusion that could be erroneously inferred is that I don't support a woman's right to choose, based on my reasons provided for my objection to my personal use of the vaccine, even though it is entirely consistent with a personal preference not to use a vaccine which came from objectionable methods (human fetal materials).

78. Dean [Dean 4 Redacted]'s letter also concluded that "This is the final decision of the university." The university decided that it would adjudicate students' religious beliefs and punish those whose beliefs it did not find to be genuine based on its arbitrary decisions which were based on information coercively obtained. To the extent that the universities decision was punitive, and had a punitive effect, I found the decision to be lacking in due process.

79. I have reason to believe that the information obtained through this religious inquiry was used to as the basis for discriminatory treatment, specifically, the continuing refusal of the university to provide clarity in how the J.D. degree could be obtained,

and decisions by individual professors and administrators not to support my transfer applications (to be discussed below).

80.    I replied on August 2 as follows:

> Dear Dean [Dean 4 Redacted],
>
> Thank you for your reply. I attempted to call to discuss but was forwarded to your electronic mailbox.
>
> Would you be so kind as to please provide specific details regarding the ways in which my exemption request did not satisfy the school's exemption requirements?
>
> I have conferred with several other people who independently hold, as I do, that my statement and supporting documentation comply with the school's exemption request requirements; therefore, the decision is perplexing.
>
> Separately, I have sought specific information regarding the school's policy in previous communications and the response has not addressed any of the concerns. Without reiterating each of the concerns, would you please address them, or at minimum acknowledge each concern so that I am aware you have received and understand the concerns, and identify any concern the school is electing not to address. As the school did not address any of the concerns, or answer my questions as to whether anyone has been granted an exemption, it seems that the exemption request is intended only to identify students with differing religious beliefs.
>
> According to the ACLU "81%
> Eighty-one percent of Americans say the law should not allow companies or other institutions to use religious beliefs to decide whether to offer a service to some people and not others."
>
> Separately, vaccinated or not, if I contract Covid-19 at the school and transmit it to a family member, who in turn develops the disease and becomes seriously injured or dies, is the school prepared to accept liability for unnecessarily exposing its students to this risk of attendance in person and any negative outcome? The stated reasons for requiring all students to return to campus include the idea of shedding the masks and the social distancing requirements, and it seams highly irresponsible to force students back to in-person learning given the recent surge and reversals from the CDC.
>
> I would ask that the school avoid the legal issues surrounding mandatory vaccines by granting my request to study remotely. As this capability is available, and sufficient, and likely will be offered to others, it would seem that it is a reasonable way to avoid the issue. If not, I would like to anonymously

23

*bring the issues and concerns regarding the school's policy before the Council on Diversity and Inclusion.*

*As general feedback, the preemptive declaration in the denial letter that the school's decision is "final" seems insensitive to people with diverse beliefs, and given that the school has a way to achieve its objectives of keeping students safe, and honoring religious beliefs not to take the vaccine, the decision not to do so, is contrary to stated policies on diversity and inclusion.*

*Thank you in advance for your prompt reply, as time is of the essence.*

81.    On August 3, I sought assistance from the Department of Education.  I felt frustrated by ABA Accredited University's invasion into my private religious views, under pretext of good faith, to purportedly review and grant vaccine exemptions, which it then denied without adjudicating them openly and fairly.  I sent a complaint to the Department of Education, specifically, the external contact for Department of Education regulations, as follows:

*Dear Ms. McArdle:*

*Does the Department of Education plan to enforce: 1. First  Amendment "freedom of [Redacted]" rights of students to refrain from receiving the COVID-19 vaccine, 2. Fourteenth Amendment rights of students to equal protection/treatment under the law, and due process rights?*

*In my assessment, ABA Accredited University has received some federal funding, and as such, is subject to DOE regulations regarding free speech.  Yet, it has implemented a policy which will force students to obtain the vaccine against their religious objections, while giving unequal treatment to students with certain religious beliefs or medical treatment, and without providing substantive due process rights to have the exemption requests fully heard and evaluated.*

*The school's published literature provides a foundation for expecting that the institute protects the rights of free speech, provides equal treatment and due process for exemption requests and their published policies gives DOE jurisdiction to enforce the law against this private university on behalf of its students.*

*Free speech includes the religious right to refrain from COVID-19 vaccination, for many reasons, but for me, as a [Redacted], because those vaccines were produced by companies who use products derived from aborted fetuses, a practice viewed as "evil" by [Redacted] organizations. While the [Redacted] church allows people to chose [sic]to take the vaccine, in my faith it is a right of the church member to decide based on their own informed conscience (a belief*

*substantiated in a letter on my behalf by the leader of a religious organization in which I am a member).*

*I submitted a request for exemption to ABA Accredited University and complied with their demands for information about my religious beliefs (which is in and of itself objectionable). I even obtained and submitted a letter from a leader of the religious organization of which I am a member confirming that the religious belief is consistent with beliefs of the [Redacted] itself. (Is there DOE guidance which addresses Universities seeking this information and how they can/should use it?)*

*They denied the request without any specific reason and have done so just days before the school program is intended to start. I am in a place where I may incur hundreds of thousands of dollars of damages if I refuse to be coerced by the university into complying with their unfair vaccination policy.*

*The school is either standing in judgement of religious views, allowing some religious beliefs to warrant exemption, while finding that others do not; or potentially worse, they are giving the appearance of granting exemptions, seeking out information which forces students to identify their religious beliefs - and potentially subjecting them to [Redacted] later beyond simply the coerced vaccination - without any intent to grant any exemptions. I have sought information regarding whether any exemptions were granted and the school has not replied.*

*Only a DOE investigation would reveal the truth and I may need to file a formal complaint alleging religious [Redacted] and First Amendment violations if the school does not modify its policy or provide the exemption sought.*

*I am reaching out to you because you are listed as a POC for the policy and regulation which is promulgated at the following link. I am seeking information about the DOE policies to determine if there might be a violation and if it's enforcement authority can be used to protect my religious freedoms, right to free speech, and right to due process.*

*Notwithstanding the obvious public benefit of the vaccine, the main risk is primarily among the unvaccinated and it seems that honoring a religious belief, presents the most risk to the individual and others who elect not to be vaccinated. Therefore, the school policy which intends to force students to obtain the vaccine in the name of safety is attempting to mitigate the risk for the population of non-vaccinated; a risk which is essentially those non-vaccinated persons' risk to incur. While there is some risk of an unvaccinated person to even the vaccinated people - a point which is ignored by the school's attempts to get everyone vaccinated so that they can remove masks and social distancing requirements - the main risk is to the other unvaccinated people.*

*It is entirely a "false binary" when the school claims safety as a justification for squashing religious freedoms when the alternative of allowing further remote education is a perfectly acceptable 3rd option which does not infringe upon anyone's rights.*

*The school's own website boasts of the fully available remote learning capabilities at the university.*

*https://www.ABA Accredited University.edu/about/it/it-remote-employee.html*
(See Exhibit D.)

*It is my belief that the schools are doing this to preserve their brick and mortar educational delivery mechanism, which it feels is under attack by the remote learning, and they are using the COVID -19 mandate, highlighted by the extreme inflexibility with which they grant vaccine exemptions, as a disingenuous way to force students back on campus.*

*To this end, the school's "exemption policy" is designed to be overly burdensome and probably impossible to satisfy, and when looked at comprehensively it has the effect of violating students right to freedom of their religious views for the primary, if not sole, financial benefit of the educational organizations.  The equal treatment and due princess violations are no less important.*

*The school has demonstrated a way to deliver content remotely (for the last 18 months) and chose to accept the profit, and their attempts to discontinue it in the name of forced vaccination should be dealt with by the Department of Education if it has any interest in protecting the rights of students to freely exercise their [Redacted]s, obtain equal treatment from the school, and receive due process for their exemption requests.*

*The timing is relevant and warrants an immediate intervention (DOE equivalent of an injunction) to thwart the schools' premature efforts to force all students back to campus while the threat of COVID is still very real. It is not the Universities' job to further the vaccination objectives of the nation, especially at the expense of students' religious freedoms, regardless of how well-intended those objectives may be, and the DOE has jurisdiction of this issue given that ABA Accredited University's marketing materials boasts of diversity and inclusion, the promotion of free speech, due process and equal treatment.*

*Will DOE make the difficult decision to protect religious freedoms by exercising its authority appropriately or will it allow universities to take these American freedoms from students for business reasons under the guise of public safety?*

*[...]*

26

> *https://www.ABA Accredited University.edu/together-again/*
> (See Exhibit E.)
> *I would appreciate your prompt reply as time is of the essence.*

82.   I did not receive any reply from either the school or the Department of Education and sent another communication to the school.

83.   On August 3, I sent an email to Dean [Redacted]:

> *Dear Dean [Redacted]:*
>
> *I am terribly disappointed that, yesterday, I received a letter from the school denying my request for a religious exemption to the vaccine mandate, despite having complied with the stated requirements, and that our first interactions are about this topic. It seemed to be a bureaucratic decision lacking any sensitivity towards my situation. The response was a generic form letter simply restating the "requirements" without any specific as to how it believes my request failed me meet their criteria. Needless to say, I object to the policy and the decision, and I responded with what I believe are sound reasons for my objection. Unfortunately, it appears from the language in the letter that the school will not reconsider the decision.*
>
> *I am at a decision point where I can either challenge the policy and it's implementation by retaining counsel, filing suit and seeking injunctive relief or acquiesce and take the vaccine over my objection. Conversations with several local NY based attorneys seem to believe that there are compelling reasons for an exemption, but I have not retained nor do I wish to retain counsel.  Both options seem terrible and I'm hoping you might be able and willing to assist with a solution.*
>
> *I applied to the Law School for permission to take the first semester remotely under the 'extraordinary circumstances' option but I have not yet heard a reply. Is there any chance this could be approved for reasons previously provided and to allow for some time for me to continue working with the University toward a reasonable solution regarding the vaccine without having to resort to draconian measures?  I have an inquiry in with the Department of Education which I've shared with the 'Exemption Team', which seeks information regarding the implication of the University policy on the First and Fourteenth Amendment rights of students, hoping a favorable response from the DOE might cause the school to reconsider.  I believe the remote learning option is one where the school could achieve its objectives and still honor my religious objections.*
>
> *Thinking creatively on a solution, if the University will not eventually grant the the exemption, perhaps me and a few similarly situated students (if they exist) could pursue this as part of an academic exercise (practical experience) with the help of a law professor, to guide us in a pro se action challenging the*

27

*school's policy in court. In this way, the school could stand by its policy while at the same time, support its diversity and inclusion commitments, by allowing the law students to challenge a policy in a productive, practical, and educational approach.*

*I look forward to hearing the School's decision regarding my request to take this semester remotely, and whether any students have been granted religious , medical or 'extraordinary circumstances' exemptions permitting them to join remotely.*

*I remain very excited about studying law and hope this first interaction doesn't cast a dark shadow over my experience with ABA Accredited University.*

*Best regards,*
*[Jane Doe]*

84.    On August 4, I followed up with Dean [Dean 4 Redacted]:

*Dear Dean [Dean 4 Redacted]:*

*I cannot begin to express my utter disappointment with the university's bureaucratic approach to my highly personal situation and its decision to begin what could have been a wonderful new relationship on a sour note by forcing this issue. With its decision to inquire into my religious beliefs under the guise of offering an opportunity for a religious exemption to its illegally mandated vaccination policy without any plan to protect my [Redacted], the school has opened itself to significant liability.*

*It is my belief that the university is violating many laws with the implementation of its policy, and I have an inquiry and preliminary complaint in with the US Department of Education regarding the school's policy and the application of the policy, particularly the First Amendment, Equal Protection and Due Process implications.*

*I have spen[t] the morning contacting attorneys and intend to retain one to seek an injunction against the school if the school remains insensitive and inflexible regarding the vaccine mandate contrary to its published literature promoting free speech, equal protection, and due process.*

*Do I want to file a suit against the school? Of course not, but it seems the school's insensitive approach to dealing with my highly personalized situation, leaves no other option. If the school wishes to reconsider its decision, I remain open to conversation about potential solutions. As I stated in my previous communications, there are solutions which would allow the school to honor religious beliefs of its students, principles of good faith and fair dealings, and other contractual obligations while at the same time achieve its business*

*objectives, but the current refusal to do so, suggests that the school is more interested in exercising its authority than seeking a fair, inclusive, non-discriminatory and lawful solution.*

*I look forward to your response. In the mean-time, please let me know if the school will immediately commit to authorizing me to work remotely for this semester while these legal issues are addressed either cooperatively or in the court system. If I am coerced into taking a vaccine against my religious beliefs in order to attend orientation and begin classes […], and avoid incurring significant damages (financial and otherwise), it is my belief that litigation will be inevitable and liability unavoidable.*

85.    Dean [Dean 4 Redacted] left a voicemail, and I responded:

*Dear Dean [Dean 4 Redacted]:*

*Thank you for your email. I'm sorry I missed your call this morning.*

*If you would, please provide answers to my questions so that I can obtain legal advice and then we can discuss them. I've enumerated them below, but some have multiple components. As time is of the essence, I've sent them quickly, but I hope you find them to be clear.*

*1.   The school's website, at the time of application and acceptance of offer stated:*

*"With regard to COVID related policies, the law school publishes that if a student has an illness or health concerns that prevent them from attending a class in-person, including first-year classes, they will be permitted to attend class remotely, via new lecture capture technology being installed in all of the law school classrooms."*

*Does the school intend to honor this commitment, and if so, would it not make the issue of forced vaccination moot?*

*2. Statement from school officials indicate that:*

*"If you have not yet been vaccinated, we ask that you please do so as soon as possible. Adhering to this requirement will allow us to hold classes without the masks, social distancing, and other COVID19 requirements that were adopted over the past academic year as a result of the pandemic."*

*Even if all students are vaccinated, there is still risk of students contracting and transmitting COVID-19. The guidance from the CDC indicates that people should still wear masks indoors even if everyone is vaccinated, and yet, the school is indicating otherwise. Regardless of the decrease in likelihood of a*

*vaccinated person contracting and transmitting COVID-19 virus, the risk exists and is it not irresponsible of the school to force students to assume that risk just to obtain an education (ie just to further the school's business objectives of in person learning), when the risk is avoidable, and should be best left to the discretion of the individual based on their own circumstances[?] My family members and I have compromised immune systems and the school's expressed intent to violate the CDC guidance by allowing unmasked vaccinated people indoors is deeply concerning and irresponsible. If the school intends to modify its guidance in line with the new CDC guidance (https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html) and will require students to wear masks indoors, why don't you give students the discretion of attending maskless or attending remotely so they can make individual choices based in their own risk assessment?*

*The primary reason for forcing vaccines was so students can return to class maskless and without other COVID-19 measures, but given the rapid spread of the Delta variant and the new CDC guidance, the objective is no longer viable, and shouldn't the school then modify its guidance considering the individual's choice to make risk-based decisions about themselves and their families?*

*3. Throughout the communication campaign regarding vaccinations, the language has been seemingly intolerant and dismissive of religious exemptions, including from President Rabinowitz who stated: "We expect that our entire campus community will be vaccinated before the start of the fall 2021 semester, and we will be working with all employee groups to achieve that goal". The statements are too numerous to list them all here, but they support the claim that the school is being coercive against religious beliefs. Although the university posted a process for students seeking medical or religious exemptions, the tone of the communications essentially dismissed the validity and importance of these exemptions and can be seen as coercive.*

*How many religious exemption requests have there been?*

*How many have been granted, if any?*

*How does the school intend to protect the [Redacted] of those limited students who are [] granted permission to work remotely due to vaccine exemption?*

*3. If I take the vaccine against my well founded religious objections to minimize/avoid the damages associated with the school's expressed intent to deny access to the education it has offered (and which I have accepted), is the school prepared to defend against claims of religious [Redacted], unequal treatment, breach of contract, violations of good faith and fair dealings, and violations of due process rights with regard to the "exemption" request processes, or more importantly, does the school want to invest time and money*

*and incur negative publicity doing so simply [to] further its business objectives of having students return to campus?*

*I ask that you reconsider granting the religious exemption to [prevent] me from having to hire a lawyer to address these issues properly.*

*If the school will not grant the exemption, then I'd ask the school to please provide specifics as to how my exemption request failed to meet the school's standards for exemption, and how the exemption process meets the basic elements of "due process" and respect for religious diversity.*

*5. Although the Department of Education and courts haven't addressed the religious exemption question for universities as has the DOL/EEOC with regard to employment law (see following link), does the school believe the courts would/should deviate from the standards established in the employment law space when addressing similar issues in the education arena?*

*[...]*
*6. If the school is able to respect religious diversity by simply allowing students with objections to the vaccine to study remotely, please state each and every reason why it choosing not to?*

86.     On August 4, Dean [Dean 4 Redacted] replied:

*The deadline for submitting vaccination information has past. You should visit ABA Accredited University's Together Again/Vaccination weblink for specific information about vaccinations.*

*You should contact Dr. Julian [Dean 1 Redacted] of the School of Law about Remote Learning options.*

87.     On August 5, Dean [Dean 1 Redacted] emailed:

*Dear [Jane Doe],*

*Your request for an exemption from ABA Accredited University's Fall 2021 Covid19 vaccination requirement has been approved by the Law School. This means that you may attend classes remotely during the fall semester, and you agree you cannot attend any classes or engage in other activities on-campus for the duration of the semester unless you demonstrate you are fully vaccinated against COVID19.*

*In order to exercise your right to attend classes remotely this semester, you must read and acknowledge the requirements of the exemption at this link by the end of the day on [Wednesday, August 4].  If you do not acknowledge the*

31

> *requirements on this form, you will not be able to use this exemption you have been granted in this email.*
>
> *Best,*
>
> *Julian [Dean 1 Redacted]*

88. Implied in the decision from the school, was that the university rejected my exemption request for either substantive reasons per the letter, (Exhibit C), or for procedural reasons per Dean [Dean 4 Redacted]'s email of August 4.

89. Yet, the law school, which is part of the university, through Dean [Dean 1 Redacted], on August 5, then represented that the exemption had been granted.

90. The reasons for the law school granting the request are unknown to me, and were never disclosed.

91. Therefore, the university sought information about its students' religious beliefs, including mine, as a condition of it performing under its contractual obligations, as though it were a condition precedent to distance learning, which it advertised to attract students to enroll.

92. Then, the university adjudicated the exemption request on its merits or on its view of the voracity of the student's religious beliefs, and then apparently opted to deny the exemption at the University Level (Dean [Dean 4 Redacted])  and at the same time grant an exemption at the Law School Level (Dean [Dean 1 Redacted]), for reasons undisclosed.

93. It appeared to me that the school was using the vaccine as a tool to roll back the advances in the distance learning program which it advertised specifically on its website, presumably so that it could continue to earn revenue during the pandemic.

### Class Begins in Fall 2021

94. On August 16, classes began and continued throughout the semester without any issues.

95. When it was necessary or convenient to the professors, they conducted class entirely over Zoom (for all students), otherwise, approximately 6 students in my section regularly attended all classes via zoom.

96. In my section, approximately 6 students participated remotely for the entire semester, while others did when approved by the professors on a case-by-case basis.

97. Some professors were strict and did not let additional students participate remotely even when they were sick, whereas others appeared to grant approval for remote attendance more liberally.

98. During a few classes, professors reminded the students that only those approved for remote classes could attend remotely, which seemed to have been prompted by an administrator instruction to the professors.

99. I attended all but one class during which I was sick, and I met with the professor one-on-one to get the missing material.

100. Most, if not all, classes were recorded and made available to the students for review as a study aid.

101. The Socratic Method was used in almost every class, and teachers would mostly randomly call on students, exactly as was depicted in the famous law school movie: "The Paper Chase."

102. Often when a remote student appeared distracted, I observed professors quickly call on that student, seemingly in the same manner that they would do to a student in the physical classroom.

103. Only a few classes were designated as "in-person" classes, and none of them were among the required courses for graduation.

104. Many professors had as part of their syllabus instructions for keeping the class discussions professional, with rules such as no eating or drinking, even over the zoom meetings.

105. All professors exercised control over their classrooms as they saw fit whether the class was in person, remote, or hybrid (both in person and remote). The entire experience was professional and effective.

### [Redacted] for [Redacted]

106. After my first timed midterm, I realized that my [Redacted] would make it nearly impossible to complete the exams within the allotted amount of time, so I decided to request [Redacted] before the first set of finals.

107. A typical [Redacted] for my type of [Redacted] is often extra time on exams.

108. I provided a doctor's letter indicating that I should be granted one hundred percent extra time to accommodate for my [Redacted].

109. The school only granted fifty percent extra time and mentioned that very few people have ever been allowed one hundred percent extra time.

110. On November 15, Dean [Dean 1 Redacted] disseminated Fall Final Exam policies which allowed for the remote students to take the exams at home using exam monitoring and proctoring software. (Exhibit F.)

111.   The final exams in the fall of 2021 were taken without incident from my home.

**Spring Semester 2022**

112.   On October 18, I emailed dean [Dean 1 Redacted] asking for a commitment from the school to allow me to continue remotely during the Spring Semester of 2022.

113.   Dean [Dean 1 Redacted] replied, without indicating the school's hidden intent, which was not to allow my to finish the program remotely, so as to induce continued investment:

> *Thanks for reaching out. Unfortunately, I am not able to make a commitment that we can continue to offer remote learning during the spring semester. That decision will be made later in the semester, in consultation with the University, as well as our own internal law school consulations [sic]. We will endeavor to make this decision available to you and the other students in your situation as soon as possible.*

114.   On November 5, after incurring three weeks more of unnecessary stress [Redacted] resulting from the uncertainty of the plan for next semester, Dean [Dean 1 Redacted] announced:

> *I am writing to you because each of you has received permission to be attend all of your classes remotely during the Fall 2021 semester at the Law School as an [Redacted] from the University's vaccination policy. I am writing to clarify and confirm our policies for the Spring 2022 semester.*

> *The Law School has decided to allow any student who has received an [Redacted] from the vaccination requirement during the Fall 2021 semester to maintain that [Redacted] during the Spring 2022 semester. This means that unless you plan to become compliant with the University's vaccination policy, you may continue to stay enrolled at the Law School and attend all of your classes remotely during the spring semester.*

> *The same limitations on remote learning, however, will apply to you during the spring 2022 semester that applied during the Fall 2021 semester. Students who are not compliant with the vaccination policy cannot use University or Law School campus facilities at all, including the library. Students who are not compliant with the vaccination policy must attend their all of their classes remotely in hybrid format for the entire semester. Any student who violates these requirements will be subject to discipline under the Law School's Code of Academic Conduct.*

> *Moreover, certain classes are not open to remote students due to the pedagogical nature of that particular class. A list of such classes can be found below. Please do not register for any of those classes unless you plan to comply with the*

*University's vaccination policy.  All other classes are available for your registration.*

*If you wish to return to in-person learning and comply with the vaccination policy, please upload your card here and inform the Law School's Office of Student Affairs. Once that office verifies your compliance, you may return to full in-person learning.*

*If you wish to remain in remote learning throughout the Spring 2022 semester, please complete the acknowledgement at this link here by the end of the day (5 p.m.) on Monday, November 8.  Once you have done so, you will be approved for remote learning during the Spring 2022 semester.  Please keep in mind that this [Redacted] will be provided during the Spring 2022 semester only. It is possible, and even likely, that it will not be extended past next semester.*

*Best,*

*Julian [Dean 1 Redacted]*

*---*

*The following courses do not accept remote attendance.  Please be aware of this when you are making your course selections and registering for classes in the Spring 2022 semester.*

*Real Time Lawyering: Grand Jury – Barron, McGuire, Hickey, Sullivan*
*Veterans Legal Clinic – [Dean 1 Redacted]bek*
*Lawyers as Leaders – Folami*
*Youth Advocacy Clinic – Liebmann*
*Clinic Practicum – Liebmann*
*Community Development Clinic – Haber*
*Expert Witness – Homicide – Barron*
*Modern Divorce Advocacy – Braunstein*
*Criminal Justice Clinic – Nevins*
*Collective Bargaining – Fernbach*
*Advanced Labor Law – Fernbach*
*Clinical Prosecution Practicum – Klein, Fred*
*Mediation: Principles and Practice – Bush*
*Environmental Dispute Resolution – Siegel*
*Legal Interviewing Counseling and Negotiation – Sethi*
*Spanish for Lawyers – Wong*
*Law and Psychiatry – Wolf and Rosen*
*Intellectual Property Colloquium – Manta*
*Asylum Clinic – Wren*
*Matrimonial Externship – Maffei*
*Corporate Governance Seminar – Merritt*
*Legal Methods – Louis*
*Real Estate Development Seminar – Ostrow*

*Real Estate Transactions – Weinstock*

115. The last sentence of Dean [Dean 1 Redacted]'s email sowed further confusion and represents the type of confusing instructions coming from the school. Notably absent from the communication is any reason for their decision.  Specifically, he wrote:

> *Please keep in mind that this [Redacted] will be provided during the Spring 2022 semester only. It is possible, and even likely, that it will not be extended past next semester.*

116. Nonetheless, Dean [Dean 1 Redacted]'s message was inherently contradictory in that it states both that the "[Redacted]" was being provided for the Spring semester only, while at the same time he stated that it was possible, and even likely that it wouldn't extend past last semester. It is either "only" for the spring, or there is a possibility, however slight, of it continuing after the Spring semester.  It cannot be both. Therefore, it is confusing.

117. I responded to Dean [Dean 1 Redacted]'s message: "Thank you, sir!  What a relief," and I filled out the form requested acknowledging the restrictions to on campus services without the vaccine.

118. On January 13, Dean [Dean 1 Redacted] sent an email stating:

> *Dear [Jane Doe],*
>
> *I received a forwarded email from you to Student Affairs about your vaccine status for the spring 2022 semester. **We did not have you on the remote learning list because you did not respond and acknowledge the conditions for Spring 2022 that are required by this email that I sent to you on November 5.** (emphasis added)*
>
> *Could you clarify that you are now requesting remote learning during the Spring 2022 semester? Is there some explanation for why you failed to fill out the required acknowledgement? As you see here, the deadline for that acknowledgement was November 8, 2021.*
>
> *Best,*
>
> *Julian [Dean 1 Redacted]*

119. I replied:

> *Dean [Dean 1 Redacted],*
>
> *Reference your earlier email, I am certain I filled out the form immediately after replying to your email (below).*

*When I just clicked on the link, however, I noticed that my browser defaulted to my personal google.com email address. I remember typing in my ABA Accredited University email in the email field when filling out the form. Is there a chance that the form was not accepted or was somehow filtered out if the submitter was not logged into the ABA Accredited University portal, even though the form is accessible to anyone with the link and a google log in? If not, I don't have any other explanation other than I recall going through this process when I received and acknowledged your approval.*

*I have requested remote learning during the Spring and filled out a separate form moments ago. Please let me know if there is any further action needed from me.*

120.    Dean [Dean 1 Redacted] replied:

*Hi [Jane Doe],*

*The form is not set to be limited to ABA Accredited University google accounts, and other students seemed to have no problems accessing the form. Moreover, there should have been an email acknowledgment of your completion of the form, as there was over the summer.*

*Given the circumstances, we will allow you to stay remote this semester, but your failure to fill out the form properly is what caused the problem with your access to the portal. It will take at least a day to revise our list to allow you access. Please be patient with this process.*

121.    I found it implausible and astonishing that Dean [Dean 1 Redacted] would believe that I was now attending classes in-person, despite the extensive discussions in the past and my acknowledgement via email that I would accept the offer of the school to attend classes remotely.

**Final Exams for Spring 2022 Semester**

122.    On April 6, Dean [Dean 1 Redacted] sent an email to the remote students stating:

*Dear Students,*

*I am writing because each of you has received an [Redacted] from the Law School or the University to take all of your classes remotely during the Spring 2022 semester.*

*Due to changing health conditions in the local area and on campus, the Law School has decided to administer exams for accommodated remote students in person at a special designated location and isolated from the rest of the campus. You also will have to also provide a negative COVID test within a certain time*

37

*period prior to the exam.   Details on the location and the specific protocols will be sent separately closer to the exam period.*

*During the spring examination period (which begins May 3 and runs through May 16), therefore, you will need to be prepared to take your exams (assuming your exams are not take home exams) in-person and on campus. Please check the exam schedule here to confirm your exam times and days.*

*I recognize this is a change from how we administered exams this past semester, so I wanted give all of you as much notice as possible to plan for the exam period this spring.   You should feel free to reach out to me with any specific individualized concerns or questions.*

123.   I wrote to Dean [Dean 1 Redacted] as follows:

*Dear Dean [Dean 1 Redacted]:*

*I am disappointed that we will need to continue adversarial discussions regarding the school's unilateral attempts to change the methods it intends to use to deliver its education after our contract is already in place.*

*I have childcare and other life responsibilities in Virginia during final exams and this arbitrary and unnecessary decision, if it stands, would present an unjustified hardship and cause me to incur unnecessary expenses.*

*It is my understanding that my exams are already open book exams and can be administered using remote proctoring software. The integrity and quality of the remote law school education has been sufficient for the LSAT, law school classes, exams, and even the Bar Exams since the start of COVID. There is no good reason to change anything now and the school has offered none.*

*In light of my reasonable and continuing objections, I ask you to please confirm that the law school will allow me to continue taking classes and examinations remotely for the duration of the program.  I believe our implied contract for educational services and the covenant of good faith and fair dealings obligates the school to honor the terms of the program as were advertised on the school website at the time the program commenced and was entered into including the use of the school's remote learning and exam capabilities which have been in place since the beginning of COVID. If the school wants to make decisions which it believes will better protect the financial profit motives of the antiquated methods of offering education that is exclusively 'in person', then perhaps it should start that with next year's 1L class. In this way, it could fairly set the expectations of students before they enter into agreements to educate the students.*

38

*Aside from the stress caused by the seemingly arbitrary decisions regarding the methods of delivery of the legal education, and the school's lack of response to my continuously expressed concerns about the same, my experience with the university, my classmates, and my professors has been excellent. I sincerely hope that I can continue my education at ABA Accredited University without interruptions like this, and that the school anticipates and accounts for the impact such decisions will have on your students' experience at the school.*

124.    Dean [Dean 1 Redacted] replied on August 6 in an email, stating:

*I am also disappointed in the tone and content of these communications. Putting that aside, I want to work with you to find a solution that would allow us to maintain our exam policies while accommodating your concerns, if possible.*

*For instance, if there is a local law school that is convenient to you where you are located in Virginia, we are willing to reach out to that school to ask them to help us administer our exams to you on their campus (this is an arrangement we have done for other law schools in the past).*

125.    I replied to Dean [Dean 1 Redacted] shortly after:

*Dear Dean [Dean 1 Redacted]:*

*It was not my intention to disappoint you. I, too, am disappointed in the recurring nature of these communications and the lack of commitment from the school to honor its agreement to provide educational services in-line with reasonable expectations of the remote students.*

*For example, your response does not address my concerns, and will now require further communications. In some ways my tone reflects an[] actual and justified frustration.*

*How does the school's perception of the changing COVID situation justify a change in the school's policies with regard to exams, particularly when last year there were remote students and remote exams, and this year there are remote students needing remote exams, and a technical capability to deliver remote exams? Why should I need to engage with another law school for a proctoring service during an open book exam, when identity verification has been part of the remote proctoring process?*

*I believe my tone is consistent with my experience in dealing with the issues for nearly a year without the school even attempting to address the concerns. My tone is intended to be respectful but assertive of my rights under our implied agreement. However, my tone is also skeptical of the motives for the school's decisions pertaining to remote education, and the school has chosen not to*

> *address my concerns. I would like to have these issues addressed so I may know if I will need to take specific steps to protect my interests.*
>
> *Will the school please provide the assurances requested or provide an explanation as to why it won't? If I can not get the assurances from the school that I will be permitted to take classes remotely for the remainder of the program, I will likely need to seek an injunction prohibiting the school from unreasonably discontinuing the remote services. Please, I would like to know as soon as possible.*

126.   I did not receive a reply from Dean [Dean 1 Redacted].

127.   On April 12, Dean [Dean 1 Redacted] released a message to all law students indicating that:

> *Dear Students,*
>
> *I am writing to let you know that, In light of changing health conditions and adjustments to University COVID policies, we have decided to return to our pre-pandemic exam administration policy.*
>
> *All exams will be administered in-person and will be distributed in paper form, as we did prior to the pandemic. Scan-trons can be used to answer multiple-choice exam questions, and faculty will no longer be required to divide up their exams into two separate independent parts without the possibility of going back to the first part. Students can continue to use their computers, and the Examplify software, to type their answers for non-multiple-choice portions of their exams. Students may now also choose to handwrite their answers if they prefer.*
>
> *Students who have been given permission to take all of their classes remotely will take their exams in-person at their scheduled times in a separate, specially-designated building on campus (and not in the Law School) under the same rules and with the same proctoring conditions as in-person students.*
>
> *We expect this return to our pre-pandemic policies will simplify exam preparation and administration for both faculty and students, while at the same time maintaining our ability to ensure exam security.*
>
> *Best,*
>
> *Julian [Dean 1 Redacted]*

128.   Dean [Dean 1 Redacted] emailed me on Monday, April 18 stating:

*I believe I addressed your concerns by offering to work with you to find a way to limit the costs to you of complying with our exam policy.  I regret that you did not respond to that offer by trying to work with me to find a solution.*

*Please keep our policy in perspective: the Law School required all students enrolling during the Fall 2021 semester to be fully vaccinated against COVID19.  The Law School offered you an exception to this policy and the opportunity to take classes remotely during the Fall 2021 semester and this current semester. This allowed you to attend and receive credit toward your law degree, but it required certain restrictions, including your ability to attend classes in person. This exception to the policy, however, was made in light of health conditions at that time.  It was not a promise that you would be permitted to attend remotely under any and all circumstances and indefinitely.*

*Because we have made the determination that existing health conditions and campus facilities can permit us to safely conduct exams in-person, even for students who have been permitted to take classes remotely during this semester, we now are returning to administering the exams in their traditional paper format.*

*To maintain exam security and fairness, we have consistently required all exams to be taken under the same conditions, whether the student is remote or in-person.  Hence, we required all of our in-person students last semester to take their exams in computer format so that remote students would not face any disadvantage in their exam conditions if, for example, in-person students had access to paper versions of the exams that remote students did not.   This semester, we are asking our remote students to take their exams using the paper format (with live proctors) that is being required of our in-person students.*

*I hope this explanation provides you with a better understanding of the reasoning behind this policy. As I mentioned earlier, we are willing to further work with you to find a place local to you to take your exams, if such a place is available. But we will not be altering our requirement that your exams be taken and administered in the same manner and under the same circumstances as all of your fellow students.*

*Best,*

*Julian [Dean 1 Redacted]*

129.   It is implausible that Dean [Dean 1 Redacted] thought he had "addressed my concerns," with his email, given he is a law professor and understands that his response did not address the concerns regarding the future in the program and the remote exam options.

130.    Furthermore, I found the reasons provided by the school to be nonsense, and part of
        their ongoing campaign to coerce students to be on campus. Given the extended
        history of this unresolved dispute, it simply is not genuine of the university to use a
        notional distinction between computer or paper exams as justification to order a
        Virginia based student, namely me, to NY. They knew or should have known that
        doing so would cause unnecessary stress and [Redacted], forcing me and the school
        back into contentious discussions. Implied in their preposterous assertion, is that a
        remote student could not simply choose to take the exam on the computer and waive
        any preference for paper copies of the exam.

131.    Dean [Dean 1 Redacted] misstated in his email of April 18 that: "This semester, we
        are asking our remote students to take their exams using the paper format (with live
        proctors) that is being required of our in-person students." In fact, all students had
        the option to take the exam on the computer.

132.    So committed to this false notion that the "paper" exams would necessitate "live
        proctoring" and "in person" exams, the university absurdly used scantrons even
        though the Examplify brand software that they used the previous semester to proctor
        and monitor exams, has an option to answer multiple choice questions right in the
        application. To my knowledge, no students opt for paper copies of the exam.
        Therefore, this entire ploy by the school should be seen for what it is, part of its larger
        campaign to simply to get the students back on campus.

133.    Distributing the exams on paper was not only a waste of paper, but was done so as
        part of the school pretending that the "paper exams" was what required the students to
        be in person for the exam. It is a preposterous assertion by the school.

134.    I replied to Dean [Dean 1 Redacted]'s email of April 18 on the same day and stated:

        *Dear Dean [Dean 1 Redacted]:*

        *Thank you for your email and for offering the school's rationale for the change
        in exam procedures. I understand that ABA Accredited University, as a private
        organization, does not need to share the reasons for each and every decision.
        However, I find that common among the best organizations are their attributes
        of transparency and fairness in dealing with their customers (in this case,
        students, among other important stakeholders). While I appreciate that ABA
        Accredited University has business objectives, I believe forcing students back
        onto campus is a short sighted strategy which will eventually end up backfiring.
        Instead, the school should be looking to extend the reach of the law program by
        recruiting worldwide into a remote program, and scaling the operation. At
        minimum, I would ask the students the correct questions about what they prefer
        and why, before setting a direction for the school.*

        *I applied for a program which was offering remote learning options to its
        students at that time, it was advertised as such on its website, and I believe that*

*a reasonable person would assume that those options would continue throughout the program as long as the student is performing and prepared to make the enormous investment in time and money. Afterall, the school invested in the technology and in training the professors and students, and to pull back these capabilities warrants full and open examination as the reasons and costs and the benefits. The school has not provided any compelling reason and this can only lead me to guess. I know you can appreciate that one year of a law program - which provides no realistic opportunities for some students to finish the degree, pass the bar, and gain admittance to a state bar - is of little to no value to those students. You mentioned with reference to the school's decision to allow my remote learning, that "[i]t was not a promise that [I] would be permitted to attend remotely under any and all circumstances and indefinitely." Again, I believed it would be for the duration of the program, however, I recognize that the ultimate decision rests with the school.*

*Unfortunately, there is slim to no chance that I can move to NY to complete the degree program so it is a reasonable question: **under what circumstances and duration will the school allow me to continue remote learning?** (emphasis added). That is the question which has gone unaddressed and is the source of stress and frustration. The change in exam procedures, despite the annoyance, is really a secondary matter.*

*As for the exams, I do not understand what compelling reasons would support a contention that the security and fairness of the exams will be furthered in any material way with the new procedures, particularly given the academic honesty policies in place and the dire consequences for violations. Also, I'd have to believe that the school sufficiently examined everyone last semester. My difficulty in accepting the rational provided is that it seems that this decision is consistent with the school's unwillingness, thus far, to commit to allowing remote education in that it forces students to be in person for exams, only in the name of "fairness and security".*

*I encountered challenges during the last exam cycle with open book exams because several of the books which I purchased for the kindle required internet access and it was suddenly unavailable from within exemplify (despite working during the test run). How would partnering with a local law school to proctor the exam, given the changes to exam procedures, and using a personal computer, address that important matter? Will I be permitted access to my files on my iMac Pro? Are there proctors willing to sit and proctor an exam with unvaccinated people? I have a [Redacted] [Redacted] for the exams which would increase the burden on any other law school to provide in-person proctors. Alternatively, the school could send a proctor to my house, but again, I really don't understand how the locked down exemplify program for remote administration of the exam is any less fair or secure? None-the-less, if you must, you can reach out to [Redacted] Law School in Arlington, VA to see if they will accommodate your proctoring needs if that is still a viable approach. I look*

43

*forward to working with you to find a solution to the remote learning situation and the exams.*

135.   Dean [Dean 1 Redacted] sent another email to all law students on April 21, stating:

*Dear Students,*

*As I indicated in my April 12 email (see below), all exams during the Spring 2022 semester will be administered in-person and exam questions will be distributed in paper form. I am writing this email to respond to some further questions raised by students about this policy.*

*1.     Students can still use your own computers to type your exam answers using the same Examplify software used in prior semesters (although fully handwritten exams are also an option). The only difference this semester is that the exam questions will not be on the computer, but instead will be distributed on paper.  Please take the "mock exams" that will be sent to you by Law School IT to make sure your computer is compatible with the Examplify software and so you can familiarize yourself with the version that will be used this semester.*

*2.     If your exam is open book, you may use any outside materials. Additionally, if your exam is open book, you will have access to your hard drive. However, you will not have access to the internet even if your exam is open book. If you have documents on your hard drive that require internet access for use, please either print or reformat those documents before the exam. (Again, I recommend you test this by using the "mock exams" that are being sent to you.)*

*3.     If your exam is closed book, you may not use any outside materials, and you will not have any access to your hard drive for the duration of the exam.*

*4.     If your exam has a multiple-choice section, you will be enter your answers on a paper Scan-Tron sheet.  Because exams will no longer be divided into independent parts, you will be able to have access to your computer while you are answering the multiple-choice portion of your exam. If your exam is open-book, you will therefore also have access to your hard drive while you are answering the multiple choice questions.*

*Best,*

*Julian [Dean 1 Redacted]*

136.   Dean [Dean 1 Redacted] sent another email on April 27, stating:

*Dear Students Who Have Been Fully Remote This Semester,*

*This email contains important logistical information for your in-person exams during the May 3 to May 16 exam period.*

*LOCATION:*

*All students who have been taking their classes remotely this semester due to the exemption from the vaccination requirement must take your exams at the days and times they are scheduled, but in the ABA Accredited University Oak Street Center (a link to its location and directions can be found here and directions are below). Exams will take place in Room 122 unless you have been otherwise instructed (in which case it will be in Room 123 or 125). A proctor will be in the room to administer the exams. IT support will also be available at the beginning of the exam period to troubleshoot any problems. (Any students who have received [Redacted] will receive separate instructions in a separate email.)*

*Parking is also available immediately adjacent to the Oak Street Center building. You should not enter any other buildings during your time on campus. We recommend you arrive at least a half hour earlier than your exam time to orient yourself to the room and building.*

*COVID PROTOCOLS:*

*All students must wear masks for the duration of the exam session while inside the Oak Street Center.*

*All students must submit a negative COVID19 test result to the ABA Accredited University MEDICAT site https://ABA Accredited University.medicatconnect.com/ taken within 72 hours of your exam date if it is a PCR test or 24 hours of your exam date if it is rapid antigen test.*

*So, if your exam is on Tuesday, May 3, you will need to report a negative PCR COVID test result from a test taken no earlier than Saturday, April 30 or a negative rapid antigen test taken no earlier than Monday, May 2. The COVID test cannot be an at home test.*

*If your next exam occurs more than 72 hours from the time of your first exam, you must submit a second COVID test result before coming onto campus for the next exam. For instance, if you submitted a negative COVID result on May 1, and your next exam occurs on May 2 or May 3, you do not need to submit another negative test result. But if your next exam is May 6, you must submit a second negative COVID test result before coming onto campus to take that exam.*

*If you have a positive test result, you should immediately notify Student Health Services (516-463-6745) and enter into the recommended COVID isolation protocols (typically five days). Your exam will be rescheduled for a different time. You should not come onto campus during that quarantine period. You should also inform the Office of Student Affairs ( lawstudentaffairs@ABA Accredited University.edu ) so they can reschedule your exam time.*

*You may use an off campus COVID test provider, or you may schedule a free COVID test (PCR) at ABA Accredited University Student Health Services here. Their hours are M-F 9 a.m to 7 p.m and 10A – 6 P on the weekends.  They also have walk-in testing without appointments on Mondays and Wednesdays, 10-1:30 and Thursdays from 2-5:30 p.m at the ABA Accredited University USA center.  PCR test results from Student Health Services takes about 1 hour.*

*---*

*If you have any questions about this process, please feel free to contact me directly.*

*Best,*

*Julian [Dean 1 Redacted]*

137.   As of April 30, I had not received any further information about taking the finals at a local law school.  I did receive another email from Dean Kaspar indicating that I had been scheduled for exams on campus at ABA Accredited University.  The communication made no reference to the ongoing discussion regarding taking exams at [Redacted], and added further confusion, stress, [Redacted], and frustration. Dean Kaspar wrote 3 separate emails, one for each class with a final exam, essentially as follows:

*[Jane Doe]*

*According to our records, you are scheduled to take this final exam at the Oak Street Center building on the North Campus.*

*Here are the details for your exam:*
*Course:        CONTRACTS*
*Professor:     [omitted]*
*Day and Time:      5/10/2022          8:00:00 AM*
*Oak Street Center Room:          125*
*Please report to the above listed room, 30 minutes prior to the start time indicated above.*
*Best of luck on your final exams!*
*Thank you.*
*Brian T. Kaspar*

*Associate Dean for Academic Records and Registrar - Law*

138.   I replied to Dean Kaspar and Dean [Dean 1 Redacted] on April 30 as follows:

*Dean Kaspar:*

*I received today's email below regarding the Contract Law final and two similar emails regarding the Constitutional Law and Property Law finals and don't believe I am expected onsite for these exams.*

*I am awaiting feedback from Dean [Dean 1 Redacted], who I understand was to be looking into alternative locations for me to take the exam, starting with [Redacted] University Law Center in Arlington, VA, the law school nearest to my residence here in Virginia.*

*Dean [Dean 1 Redacted]:*
*Do you have any updates on availability at [Redacted] and regarding the other questions I had posed in my email of Apr 18? Thanks.*

139.   I did not hear any reply by May 3, so I emailed Dean [Dean 1 Redacted] again:

*Dear Dean [Dean 1 Redacted]:*

*Have any arrangements been made for me to take the finals at a nearby locale? If you could, please let me as soon as possible to allow me to plan accordingly.*

140.   Dean Kaspar replied on May 4, stating:

*The [Redacted] [Redacted] Law School of [Redacted] University has graciously agreed to have you take your finals there.  Christine Malone, their Assistant Dean, Academic Administration & Student Records will be reaching out to you (within the next day or so) with the specifics.  Her e-mail address is cmalone4@[Redacted].edu.*

*The start times of two of your exams needed to be adjusted slightly.*

*May 10 – Contracts – [omitted]*
*Arrive at [REDACTED] Law Records Office – 9:00am*
*Exam Start Time – 9:30am*
*Exam End Time – 3:30pm*
*Length – 6 hours*

*May 12 – Constitutional Law I – [omitted]*
*Arrive at [REDACTED] Law Records Office – 12:30pm*
*Exam Start Time – 1:00pm*
*Exam End Time – 5:30pm*

*Length – 4 hours 30 minutes*

*May 16 – Property – [omitted]*
  *Arrive at [REDACTED] Law Records Office – 9:00am*
  *Exam Start Time – 9:30am*
  *Exam End Time – 3:30pm*
  *Length – 6 hours*

*Thank you.*

### Summer Session I

141.   I took the exams as scheduled without incident.

142.   On Tuesday, May 24, I started classes for Summer Session I and completed the classes remotely along with all of the other students without incident. I noted at the time that it was interesting that when it is convenient for the university, any and all classes can be offered in the distance learning format. Summer, was apparently an acceptable time for distance learning classes, for reasons undisclosed.

143.   On June 28, Dean Kaspar sent an email with the exam schedule, indicating room assignments (on campus).

144.   On July 6, I had not heard anything about scheduling finals from Dean [Dean 1 Redacted], and I emailed him to address that and other unresolved concerns.  I stated:

*Dear Dean [Dean 1 Redacted]:*

*I am writing to request your feedback on a few important topics.*

*I would like to revisit my request seeking confirmation that the university will allow me to finish the law program from my home in Virginia using the zoom technology.  I am incurring additional expenses associated with this uncertainty.  Specifically, I am unable to make a decision as to whether to purchase my next house or continue renting on a premium month-to-month basis.  As I have a family, others are dependent on this decision.*

*It remains nearly impossible for me to take classes from NY due to my other responsibilities, and we are approaching a critical juncture whereby if I continue in the ABA Accredited University Law program, I will have obtained more credits than I am able to transfer to another law program.  Approval on a semester by semester basis has created a hardship. This means I need to transfer now or not at all.   I believe it is reasonable to expect that I will be allowed to complete the program under the same conditions in which I started, i.e. remotely, but it seems the school has a different view. I would  like to explore any compromises that may be available. If you are unable or unwilling to commit to allowing me to continue remotely for the duration of the program*

*or offer some reasonable compromise, **I would like to have a meeting with Dean [Redacted] and/or the President [Redacted] to discuss the options.** (emphasis added).*

*I am preparing comments to the A.B.A. on the proposed revisions to A.B.A. Standard 306 which addresses remote learning. I understand the resolution has passed the standards committee and it is to be voted upon in August 2022. My view is that this standard is entirely antiquated given the precedents set by the law schools during COVID, and the overall advances in technology, and I believe those advocating for limits on remote learning are solely motivated by protectionist principles. None-the-less, I may qualify for an exemption under the proposed new wording of the standard, for an [Redacted] for a [Redacted] or exceptional circumstances. However, this would require the university to agree.*

*In the mean time, I have submitted several applications for transfer, as I must, given the uncertainty about the terms under which I may complete the program at ABA Accredited University program.*

*This brings me to another point of feedback. Prof. White has refused to provide a recommendation, for nonsensical (or maybe yet undisclosed reasons). I sought her recommendation because her writing classes allowed for multiple one-on-one conferences and I had the most interaction with her compared to other professors. I could not have foreseen that she would refuse and now I am left without options. I'd like to understand why, and whether the administration had any influence in this decision. She has chosen not to reply to my last communication, which was critical of her decision and the absurd reason she provided.*

*Lastly, Prof. [Omitted] is proposing a grade change in Constitutional Law I, which I understand is, for some reason, awaiting your approval. Perhaps recommendations require your approval as well. I plan to submit other applications, but would like the grade change to be on the transcript, and need a recommendation to attest to my abilities as a law student.*

*Lastly, I require a letter indicating that I am in good standing from the Dean in support of the transfer applications. Are you able to provide this?*

*I would appreciate any feedback you can provide on each of these time sensitive matters, as well as your ideas on any compromises which may be available for me to finish the program remotely.*

*Best regards,*
*[Jane Doe]*

145.    Dean [Dean 1 Redacted] replied:

*[Dear Ms. Doe]*

*Let me try to address your key points in as succinct a manner as possible.*

*1)      We cannot commit to allowing you, or other ABA Accredited University Law students next semester, to take all of their classes remotely in the same way you did during this past year.  There are a variety of reasons for this, but the lack of a NY Court of Appeals waiver for distance learning is a key factor since the lack of a waiver will make a fully remote student ineligible to sit for the NY Bar if they exceed the NY Court of Appeals' cap (15 credits) on the number of allowable distance learning credits. I realize that this issue does not apply to all of our students, but it does apply to a majority of our students, and has guided us in our planning for remote learning this fall.  The ABA Standard might or might not change, but it would not have an effect next year and it is doubtful it would be in effect the following year.  In any event, the ABA Standard is not the sole standard governing our distance learning policy. We of course have to comply with it, but we have so far been free to follow stricter rules on distance learning than is permitted under the ABA Standard.*
*2)      As for Prof. White, we have not in any way discussed or influenced her decision. This is a matter left purely to discretion of individual professors, but as a matter of policy, the Law School never discourage faculty from writing recommendations for students, even when those recommendations are for students seeking to transfer and leave the Law School.*
*3)      I approved your grade change in Constitutional Law earlier today.*
*4)      Dean Kaspar should be able to provide a letter of good standing if you need one.*

*Best,*

*Julian [Dean 1 Redacted]*

146.    I replied to Dean [Dean 1 Redacted] on July 6, as follows:

*Dear Dean [Dean 1 Redacted]:*

*Thank you for your succinct response.*

*I would like a meeting with you and Prof. White to discuss the recommendation.*

*I would also like a meeting with Dean [Redacted] to discuss the ways in which the school will support me to obtain the law degree consistent with the policies in place at the time I started the program. It is my position that the school has a co fracturai obligation to continue offering the legal education, which has come at significant cost, to me in essentially the same form it has offered the program to date.*

*On your point about waivers, it seems that there must be a waiver from the NYS Court of Appeals regarding the 15 hours since EVERYONE exceeded that during COVID.*

*It's concerning to me to hear you suggest that the absence of this waiver has guided the school's planning for the upcoming school year, even though you have students attending remotely from other states which have different licensing requirements. Your hint that the lack of waiver from NYS Court of Appeals has "guided" your planning, suggests that the school will discontinue remote services, without simply saying so, even though the technology is available and imposes no burden on the school to continue to use it. If you have made that decision, when was it made and why have I not been informed until now?*

*I would have hoped to hear in your response that the school is advocating for the needs of its students by indicating support for the elimination of the distance learning restrictions (which are not even rational) and inquiring about waivers from both NYS Court of Appeals and A.B.A. Missing from your email are any ideas on how to accommodate my reasonable request, or any indication that the school is interested in working with me to find a way to graduate. That is very disappointing, especially given the enormous financial investment that your program requires. A good business prioritizes the needs of its customers.*

*As you've noted, the school is not bound by A.B.A., nor must it be inflexible in how it delivers the education, and I think it is fair for the school to honor the terms and conditions in place at the time of my application and acceptance to the program.*

*Perhaps the school can take the lead on challenging:*
*520.3(a)(6)(i)*

> *(6) Distance education. Distance education is an educational process in which more than one-third of the course instruction is characterized by the separation, in time or place, or both, between instructor and student, and the instruction involves the use of technology to support regular and substantive interaction among students and between students and the faculty member, either synchronously or asynchronously.*
>> *(i) Up to 15 credit hours for distance education courses may be counted toward both the 83 credit hours required for graduation and the 64 classroom credit hours required by paragraph (1)(ii) of this subdivision, provided that:*
>> *(a) there is opportunity for regular and substantive interaction between the faculty member and student and among students; and*
>> *(b) there is regular monitoring of student effort and accomplishment by the faculty member as the course progresses, and the opportunity for communication regarding the student's work.*
>> *(ii) No credit shall be allowed for correspondence courses.*

> *(iii) No credit shall be allowed for distance education courses until the student has completed the equivalent of 28 credit hours toward the first degree in law.*
>
> *As it seems the courts make their own rules with regard to the training of lawyers without any real oversight from the legislature, it seems someone must challenge these outdated policies in the legal system. I suppose if the school won't advocate on behalf of its students to the NYS Court of Appeals and to the A.B.A., then I'm as good of a candidate as any to challenge that.*
>
> *I would like a survey to go out from the student body president or from the administration to the law students asking for their opinion as to the effectiveness of the remote learning. I'd also like to hear from anyone in the administration offering up a good faith argument as to why they believe offering 100% remote classes to everyone would not satisfy the need for producing sufficient attorneys, and to what extent these ideas are shared among the faculty.   We should have an open forum to debate and test the views on this important topic.*
>
> *In the absence of a solution from the school, if I am unable to secure a transfer to local university and retain the value of my investment in our contract, I suppose I must ask the courts to change the rules.*
>
> *As I've previously mentioned, in that case, I will need, at least to try, to seek an order enjoining the school from discontinuing the service it has thus far offered without issue. I am very disappointed that I'll need to begin the research on these legal positions.*
>
> *I respectfully ask you to consider this a legal demand for a commitment to continue offering the remote learning experience and escalate my concerns within the school's chain of command.*

147.   On July 7, I emailed Dean Kaspar to inquire about any efforts the university put forth to secure a local location for me to take the exams. I stated: *"Are we able to ask [Redacted] to host the summer final exams for me again?"*

148.   On July 9, Dean Kaspar replied: *"I don't know.  That would be a question for Dean [Dean 1 Redacted], whom I have copied on this message.*

149.   Dean [Dean 1 Redacted] had not replied by July 12, so I emailed again.
        *Can you please confirm that a request has been sent to [Redacted] to proctor my finals next week, and if they have consented?*

150.   Finals were scheduled to start in less than a week, July 18-20, and no [Redacted] have been arranged as of July 12. I was taking 10 credits over the summer enrolled in 3 classes, about 4000 reading pages of law to learn, and a week before the finals, the school is displaying a minimal interest in accommodating me.

151.    Dean [Dean 1 Redacted] replied on July 12:

   *Hi [Jane],*

   *Dean Kaspar made the request yesterday and we just heard this morning that [Redacted] is unable to accommodate this request this time.*

   *Best, Julian [Dean 1 Redacted]*

152.    Dean [Dean 1 Redacted] invites more conflict with his matter-of-fact, indifferent response, providing no further ideas, and displaying not a care in the world that his response (a nonchalant attitude, which amounts to [Redacted]) towards my finals would naturally be expected to cause tremendous stress and [Redacted] in addition to the normal high level of stress and [Redacted] associated with the law program, and especially during the shortened summer schedule.

153.    I replied on the same day:

   *They are all open book tests.*

   *What are the other options? How about one of the following?*

   *UVA (Arlington Campus)*
   *GW*
   *[Redacted]*
   *American*
   *DC (Clarke)*

154.    Dean [Dean 1 Redacted] replied the same day:

   *We will reach out to as many of these law schools as possible, but during the summer, it is quite difficult to coordinate exam administration. I would advise you, as a back up, to plan to take the exam in-person at ABA Accredited University next week. We will let you know if any of these schools are able to accommodate this request.*

   *Best,*

   *Julian [Dean 1 Redacted]*

155.    I replied to Dean [Dean 1 Redacted] on July 12 at 5:13 p.m. as follows:

   *Dean [Dean 1 Redacted],*

*I made no plans to come to campus and the requirement that I do so, levied at this late hour, is unfair. Similarly, the expectation that I spend time coordinating directly with other law schools, now, at this late hour, because you have arbitrarily decided that taking open book exams remotely using proven proctoring software is somehow insufficient. I need to be fully focused on preparing for the exams.*

*I'd like, once again, to ask that you be mindful of the covenant of good faith and fair dealings which governs our contractual relationship as we work to find a solution.*

*Do you plan to address the other issues raised or should I schedule a meeting directly with Dean [Redacted]/President Posner? If you are unwilling or unable to find an [Redacted] at this late hour for next weeks exams, then I suggest we plan to use the remote proctoring software. If you refuse over my objection, the school should pay my expenses to fly to NY, stay at a hotel and provide reliable transportation for as long as I need to be in town.*

156.   I was in the middle of studying around the clock and Dean [Dean 1 Redacted] doesn't even show the common courtesy of replying to this urgent matter. At 10:24 p.m. I email him again, in a much more assertive tone, having suffered loss of sleep and persistent [Redacted] due to the university's refusal to collaborate, cooperate or act in harmony with its duty of good faith and fair dealing:

*Dean [Dean 1 Redacted]:*

*As it appears you are content to deliberately cause chaos in my life and in my preparations for my final exams, I will be reaching out in the morning to seek an urgent meeting with President Posner to lodge a complaint about your handling of my situation. If she is unavailable, I will reach out to the board of trustees. If no solution arises, then I will be walking across the street to the Federal Court House to file a suit against the University and YOU. In that scenario, I will be missing the final exams on Monday and we'll need to reschedule or seek a court order.*

*It is unacceptable to me that you feel it appropriate to selectively chose to reply to the issues I have raised for a year, and even then, only when you feel like it. By allowing the issues to linger on and on, without any concern over the hardship you are causing, demonstrates complete disrespect to me as a student. It appears to be a personal decision to handle the issue in this way as though I have somehow annoyed you with my reasonable requests for certainty over the relationship and our mutual obligations. Otherwise, how can you explain your lack of diligence and willful evasiveness. It is clear that you are again deploying the tactic of ignoring issues, as you've done repeatedly to induce me to escalate matters in an attempt to make me appear unreasonable. But these efforts will fail, as we have a documented history dating back to the beginning*

*of the program. It has progressed to this point only because of the way you chose to handle the matters by abusing your authority. This approach reflects terribly on the university and they should reconsider having you in this position given your propensity to abuse your authority.*

*In this latest saga, your posture to force me to come to the university with 4 days notice, with full knowledge that I am in Virginia and have been for the entire program, is intentional to harrass and cause stress.*

*It is abhorrent that you feel entitled under our contractual relationship to tell me when and where I need to be, regardless of how unreasonable your demands are, knowing I have so much to lose.*

*Your nonchalant decision to order me to come to the University next week at risk of me losing or significantly diminishing the value of my $100,000 investment thus far, is tortious, especially after you have failed to exercise any care in the handling of my situation.*

*I think I have effectively voiced my concern and made clear in my demand that you and the University treat me fairly. Ordering me to campus because you neglected to make other reasonable arrangements for me to take the final exams, and then attempting to pawn the obligation off on me at the last minute, reflects a calculus which warrants examination by your leadership.  The fact that you have knowledge of my [Redacted] and you chose to conduct yourself this way is most disturbing. I am left to wonder whether if I did chose to show up on campus, how you plan protect my confidential medical information [from] other classmate[s], including that I have an [Redacted].*

*If you want to fix this relationship, I'm happy to discuss. If not, I will ask President Posner to implement a solution whereby we have no further interaction.*

157.   I had not heard any reply from Dean [Dean 1 Redacted] by Wed., July 13 at 3:10 p.m., and I escalated the matter with a letter to the President of ABA Accredited University. (Exhibit G.) I stated in the email as follows:

*Dear President [Redacted],*

*Please find an attached letter regarding ongoing issues with Dean [Dean 1 Redacted] and my educational experience at the Law School.*

*I look forward to an opportunity to bring the matters raised to a prompt and fair resolution.*

158.   Dean [Dean 1 Redacted] finally replied four minutes later at 3:14 p.m. (in a manner which is a prime example of the Dean refusing to address the matters raised in breach of the duty of good faith and fair dealing), as follows:

*I obviously strongly disagree with everything in your letter (emphasis added), but as I have stated, I have tried to work with you to facilitate practical solutions to your specific concerns. The issues you raise in this letter are largely irrelevant to the particular issues you are facing for next week.*

*In this case, I have arranged for your exams to be taken at [Redacted] University next week. If this is not satisfactory to you, please let me know. Otherwise, I will assume you will take the exam next week at [Redacted] and will work with them and you to facilitate that process. If you choose not to work with me on this, I will assume you will take your exam in person at ABA Accredited University next week.*

159.   I replied to Dean [Dean 1 Redacted], and added the Dean [Dean 3 Redacted], Dean for Diversity and Inclusion, on Wed, July 14 at 10:22 a.m. as follows:

*Dean [Dean 1 Redacted],*

*Again, your communications lack any display of empathy towards my situation which was one of the reasons for the communication to President [Redacted]. Your blanket statement that you "disagree with [E]verything in my letter," is just the latest example of you obfuscating the issue and worse yet, showing no interest in resolving it.*

*Perhaps Dean [Dean 3 Redacted] as the Dean for Diversity and Inclusion can offer you insight into the ways in which your communications lack any sensitivity towards my particular situation. If the university offers to educate students with disabilities, it should fully understand the obligations it incurs before accepting tuition money from those students.*

*I've lost about 6-8 hours of study for my finals while addressing these issues and it is quite frustrating. The credits I am taking now exceed the limits of credits that I am able to transfer to other law programs, so this uncertainty has already caused me to sustain unnecessary financial risk and the stress associated with it. I would not have needed to have applied for transfers if you would have provided assurances that the school intends to perform on your side of the contract (as I have sought for a year). Incrementally changing the terms under which the school is providing the education is rapidly approaching a material breach of our implied contract. Stop professing your expectation for me [to] randomly and arbitrarily show up at campus in NY, knowing that I live in Virginia, as it is borderline harassment.*

*To the extent that your communications continue to fail to address that main issue, remote learning, I'd appreciate it if you'd stop feigning an attitude of*

*wanting to "work with me" after causing the problem about the finals by ignoring it until the last minute. Finding a solution to the problem you caused is not considered "working with me."*

*Of course, taking the exams at [Redacted] is better than going to NY, it is not as good as taking the open book exam using the setup at my house which is designed to accommodate me for my [Redacted]. As you know, I'm sure there isn't a real risk of cheating on a timed open book exam which could be monitored using the remote monitoring and proctoring software which, incidentally, was sufficient for years prior. I'm sure you can appreciate my position that it's absurd for anyone to think I might have a collection of people in my residence,  who would effectively be committing felonies to help me to somehow cheat on an open book timed lawschool.  Simply absurd.*

*You've not responded at all to my request for a meeting about Prof. White's refusal to write a recommendation, or for a meeting with Dean [Redacted].*

*On the topic of Prof. White, now that she has demonstrated an undisclosed biased against me as a student, by lying to me about the reason she refused to write a recommendation, and since the grading process in her writing classes were not anonymous like in the other classes, I'd like my grades in the two writing classes changed to "A+'s." Or,  provide me with copies of all other students' graded work with their names redacted for my review, and have them all regraded in the blind by other professors to demonstrate that the assignment of the grades was not arbitrary, and that her bias had no effect on the grades she assigned to me in her classes.*

*If your office does not immediately provide me with assurances that the law program will continue providing remote learning services that were in place when we started and that, furthermore, the law school has requested from the ABA and the New York Court of Appeals any necessary waivers you need from them in order to deliver on your contract with me, then you will continue to incur liability for the damages you've forced me to sustain.  Some of those damages include, premium charges on my month to month rent arrangement, loss of value of my degree from lower grades caused by your refusal to confirm you will perform on our contract, diverting my time and energy from my studies to address this nonsense, etc. Of course, if I am forced to transfer schools, some credit may not transfer, some grades may not count towards my GPA, and I may be excluded from competing for certain GPA based accolades at any new school. You will be liable for the loss in value of my degree under those circumstances. That loss in economic opportunity would be substantially greater than any tuition that I've paid to date.  If I am unable to transfer and complete the J.D.,  the damages will be astronomically higher.*

*I'll plan to take the exams at [Redacted] if you refuse to allow me to use my home workstation configuration with the appropriate proctoring software for*

> *these open book exams. We should postpone the exams for a week to address the loss in preparation time which I've incurred when you forced me to deal with these issues. But also so that I may address any mental health related issues associated with the stress you've caused.*

160.   On July 14, Dean [Dean 1 Redacted] wrote:

> *Hi, we will get you this info as quickly as possible. In the interim, could you confirm that you will take your exams next week at [Redacted] U? -Julian [Dean 1 Redacted]*

161.   On July 15, I responded:

> *Dean [Dean 1 Redacted]:*
>
> *Your email implies that you have emit read my separate email.*
>
> *Will you confirm that you saw my separate email requesting we postpone the exams for a week for reasons stated, and requesting that the exams be taken at my residence where I can use my multiple monitor setup. This setup was permitted first semester, but not the second semester, and I believe it had a negative impact on my performance. I believe the set-up helps with my ability to stay organized and is a reasonable [Redacted] for my [Redacted].*
>
> *If you will not let it me to take the open book exams using the proctoring and monitoring software from my residence where I can use my special setup, please indicate whether the [Redacted] has external monitors which can to attach to my laptop.*
>
> *Thanks,*
> *[Jane]*

162.   Dean [Dean 1 Redacted] wrote:

> *[Jane Doe],*
>
> *I am sorry if I missed your earlier emails.*
>
> *You cannot delay the exam for a week in these circumstances. Nor can you receive an [Redacted] for external monitors unless you have a new and different basis than what you had during the spring semester. Please note that the fall exams were not administered on paper, which was the main reason we permitted [Redacted] like that during that exam period. Like in the spring, this exam is administered on paper.*

*I will inform [Redacted] that you will take the exam next week at the same times on the exam schedule and ask them to send you logistical details.*

*Julian [Dean 1 Redacted]*

163.   I wrote to Dean [Dean 1 Redacted] on Fri, July 15:

*Dean [Dean 1 Redacted]:*

*Extra monitors were required last exam as well but were not provided. Even the variance in students' laptop sizes amounts to an inconsistency that is of more significance than the distinction between paper and electronic exams. I am not taking the exam using paper, we use the archaic examplify. That software or the way it is configured is horrible in that it doesn't allow copying and pasting, even from within the document, and presents additional difficulties for people with organizational challenges. For instance, it is absurd that a student can't write four paragraphs and then decide to change the sequence of the four paragraphs, without having to type as many as three of them again. Time doesn't permit that. This has a particularly detrimental effect on me given my learning difference.*

*Extra Monitors and use of plain old Microsoft Word should be a reasonable [Redacted] since you won't permit me to take the exams using my setup. If word can't be used, then the feature to disable cut and pasting should also be disabled.*

*Another issue,  people like me who use online books don't have access to them during the exam, making the open book exam benefit unavailable.*

*Some publishers have agreed to send me pdf documents of the book, but my ethics book is entirely online. Locking down the internet for an open book exam is a decision which should be made before the class begins so students know not to purchase online books if they want to use them during the final.*

*I believe the exams should start in the AM so the staff won't be at the school until 7pm and so we can finish the exams during business hours.*

*Thanks,*
*[Jane]*

164.   On July 17, having not heard any reply from Dean [Dean 1 Redacted], I emailed again at 1:44 p.m.:

*Dean [Dean 1 Redacted]:*

59

*I have not received a reply to the important and time sensitive issues I've raised below. Since you have indicated that you may miss emails, I would appreciate it if you would acknowledge receipt of my communications and give some indication as to whether you are working on finding answers or not responding for other reasons.*

*I have not received any contact information or reporting instructions for tomorrow. Obviously, the longer it takes to receive these, the more stressful it becomes, wondering if you will have had time to coordinate a reasonable start time, or if I'll be holding someone at [Redacted] University until 7pm each night. That won't reflect favorably in my transfer application at the Columbus School of Law.*

*Will you be sending instructions regarding testing of examplify, assuming the school chooses not to allow the [Redacted] requested?*

*On that point, extra monitors, use of Microsoft Word, and access to the internet for sole purpose of using online textbooks seem like reasonable [Redacted] for the learning difference, and also because the school didn't communicate before the start of class that they would not allow access to online textbooks for open book exams.*

*A start time of 1pm for a 6 hour exam and no recovery days in between 3 exams is not reasonable given the circumstances.*

*The exams should be Mon, Wed, Fri. Given the short summer semester and the lack of a reading week. The school should not schedule exams in this manner simply for its own convenience.*

*Thanks,*
*[Jane]*

165.  I had not heard a reply by 1:59 p.m. the night before their finals were scheduled to begin, July 17, and emailed Dean Kaspar and Dean [Dean 3 Redacted], cc Dean [Dean 1 Redacted] as follows:

*Dean Kaspar, Dean [Dean 3 Redacted]:*
*Do either of you have any instructions regarding my taking exams at [Redacted] University starting tomorrow? I raised a few questions with Dean [Dean 1 Redacted] on Fri and again this afternoon but have not heard back. Specifically, I'll need information on location, point of contact, start time (if other than 1pm - not sure their staff want to stay until 7pm), parking, testing of examplify (if needed), requested [Redacted] related to extra monitors, examplify/word (regarding challenges with organization and cut and pasting).*

60

> *If I understand correctly, Dean [Dean 1 Redacted] has denied the request to delay the exams and for the requested [Redacted] but [I] have urged him to reconsider.*
>
> *Standing by for instructions.*
>
> *Thanks,*
> *[Jane]*

166.   At 10:08 p.m. on July 17, Dean [Dean 1 Redacted]  forwarded the contact information he received on July 15, which contained the start times which had been set on July 13. Due to the last min coordination the Dean from the host school indicated that parking could not be arranged, that meters were available [they were not long enough for 6 hours exam]. The site location was about 60 min drive with traffic. The scheduled start time for the exam was 1 p.m, but the email below said 10 a.m. so the conflict was obvious:

167.   On July 18, at 8:58 a.m., I wrote to Dean [Dean 1 Redacted] and Dean Kaspar:

> *Please address the discrepancy between the start time you state (as scheduled, 1pm), and the reasonable time that the school has offered, 10am. Also, please address the other questions posed in my earlier emails of Fri and Sunday.*

168.   At 9:42 a.m. on July 18, an hour before one of the two conflicting scheduled start times, I wrote to Dean [Dean 1 Redacted] again:

> *Dean [Dean 1 Redacted],*
>
> *I have forwarded all of our correspondence to President [Redacted] since my July 13 letter to demonstrate to her the further deficiencies in your communications with me and have asked her to address them.*
>
> *Clearly, the [Redacted] University has offered to start the final exams today at 10am. However, in additional to ignoring the other issues, you indicate that the exams should start at 1pm. There's no indication that [Redacted] knows this or that they will need to proctor from 1pm to 7pm,  as their email references a 10am offer to start, and there's nothing to explain why you have not addressed this discrepancy or accommodated the start time.*
>
> *This is very disappointing, Dean [Dean 1 Redacted].  Start times were reasonably adjusted last semester, in fact discretion as to start time was given to [REDACTED]. Whereas here, today, you are inexplicably inflexible with the request to start the exams at a reasonable time given the duration [Redacted]; it appears punitive.*
>
> *Best regards,*

*[Doe]*

169.   At 9:25 a.m. Dean [Dean 1 Redacted] emailed me: *"I meant you would get the same accommodated time you would have gotten at ABA Accredited University. So that means  you start at 10 am, not 1 pm. Sorry if that was unclear."*

*Dean [Dean 1 Redacted],*
*Your communication is ridiculous. Obviously, the exam can't start at 10am now. I live at least 45 mins from University and was planning for 1pm.*

*Let's postpone the exams until next week to give President [Redacted] a chance to address the extensive issues regarding your office's deficient communications with me about the schedule and [Redacted] for these final exams, as well as the plan for next year.*

*Literally, [Redacted] [University] is expecting me at 10am to do ABA Accredited University a favor and you tell me that at 925? Absolutely [ridiculous!]*

*Thanks,*
*[Jane]*

170.   Dean Kaspar emailed me at 10:38 a.m. that: "*[Redacted] Law School was expecting you at 10:00am (the start time that was communicated to you in the attached message dated June 30th).  Please let us know once you are there.*"

171.   I replied to Dean Kaspar:

*Dean,*

*Please review extensive communications about this topic with Dean [Dean 1 Redacted] that went unaddressed until 925 today. This is just one instance of a larger issue about not getting issues resolved by Dean [Dean 1 Redacted] when they are raised. I have escalated my concerns to President [Redacted] and am suggesting that the exams be postponed until those issues are resolved.*

*Thanks,*
*[Doe]*

172.   Dean Kaspar emailed me at 11:02 a.m.

*[Doe],*

*I am not aware of any issues that have resulted in your exams being postponed. Your exams are scheduled for today, tomorrow and Wednesday and you must take them on these scheduled days.  I sent you e-mails in June/July with the start time of each exam.   You said that you were not able to come to campus to take*

*these exams, so Dean [Dean 1 Redacted] was able to arrange for you to take them at [Redacted] University Law School.  You are expected to take the exams as scheduled.*

*Thank you.*
*Brian Kaspar*

173.   Doe replied to Dean Kaspar at 11:08 a.m.:

*Dean Kaspar,*

*There have been extensive communications with Dean [Dean 1 Redacted]. I have been asking him to confirm what he finally confirmed at 925 as I was planning for 1pm. Nothwithstanding the many other issues that have been unresolved and escalated to President [Redacted].*

*I am on the way to the exams now. Please let the school know about the confusion in start time.*
*Thanks,*
*[Jane]*

174.   Dean Kaspar replied at 11:08 a.m.:

*Thank you for your e-mail.  What time are you expecting to be there so I can let the person know?*

175.   Doe replied to Dean Kaspar at 11:27 a.m.:

*I hope to be there about 1215*

176.   Dean Kaspar replied to me at 11:29 a.m.:

*Ok, thank you.*

177.   Dean Kaspar emailed to me at 11:48 a.m.:

*Hi [Jane],*

*I just heard from [Redacted] University Law School.  The latest they can stay is 5:15pm.  Therefore, you will have until 5:15pm in order to complete the exam.*

*Thank you.*
*Brian Kaspar*

178.   I replied to Dean Kaspar at 11:49 a.m.:

*No*

179.   President of ABA Accredited University replied to my complaint regarding Dean [Dean 1 Redacted] and scheduling of final exams at 11:32 a.m. on July 18:

> *Dear [Doe],*
>
> *Any complaints concerning this situation should be directed to Dean [Dean 1 Redacted] or Dean [Redacted].*
>
> *Sincerely,*
> *Susan*

180.   I emailed President [Redacted] at 12:00 p.m. on July 18:

> *President [Redacted],*
> *The complaints were directed to them and there has not been any resolution, hence I directed them to you.*
>
> *Now, Dean [Dean 1 Redacted] has not confirmed the start time for the exam today until 925 am when it was clear I believed it was 1pm.  Now Dean Kaspar is claiming that I will not have the full time allotted for the exam because [Redacted] University cannot accommodate me after 515. This is EXACTLY what I have told Dean [Dean 1 Redacted] would be the case.*
>
> *If the hosting university cannot accommodate me for the open book exam, I should be able to take it remotely just as was permitted the first semester.*
>
> *The exam should be delayed until this is worked out and your staff engages in reasonable communication.*
>
> *Thanks,*
> *[Doe]*

181.   I emailed Dean [Redacted], Dean [Dean 1 Redacted] and Dean Kaspar in response to the email that I would be given less than the required 6 hours:

> *My [Redacted] mandates 6 hours for the exam. Dean [Dean 1 Redacted]'s continuing evasive communication about the exam caused this issue and it is completely unfair. This is not how you fairly deal with students.*

182.   Logistics issues continued as the GPS took me to a blocked entrance, and I sent an email to Dean Kaspar with a picture of it, to which the replied to contact the registrar. I called the registrar and finally met and spoke with the Dean of the host university. At 12:42 p.m. I emailed the Deans of ABA Accredited University:

*They can accommodate the exam Tues, Wed, Thurs. there is not enough time to take the exam. Forcing me to take this today will cause you to respond to the allegation of [Redacted]. You decide.*

183.   Dean Kaspar replied at 12:53 p.m.:

*Hi [Doe],*

*I have spoken with Dean [Dean 1 Redacted] and purely as an [Redacted], we will move your exam that was scheduled for today, to Thursday.  I will be sending you a detailed e-mail with the dates and times of your Summer 2022 exams.*

184.   I emailed Deans [Dean 1 Redacted] and Kaspar on July 18 at 1:42 p.m.:

*Dean [Dean 1 Redacted],*

*This is a decision that should have been made after you acknowledged responsibility at 925 a.m. this morning for your failure to communicate about the issues raised. You have deliberately manipulated my emotions on an otherwise important and stressful day, and forced me to drive to DC. You know full well that it was completely inappropriate for you to direct me to take an exam with less time than my [Redacted] allows and force upon the the foreseeable mental anguish that would result. This is apparently your modis operandi.  We can now add this to the list of past negative experiences with you, and the numerous issues I've brought to your attention which remain unresolved. When can I expect that you will address the issues?*

*Please forward to me copies of all communications between ABA Accredited University Law and [Redacted] in the last week relevant to the scheduling of my exams.*

*Thanks,*
*[Doe]*

185.   At 1:27 p.m. Dean Kaspar emailed the exam schedule for the following three days:

*Hi [Doe],*

*Here is your exam schedule.  Please respond to this message, so that I know you have received it.*

*Thank you.*
*Brian Kaspar*

*Tuesday, July 19th*

*...*
*3 hours*
*1:00pm-4:00pm*
*You need to report at 12:30pm, so that you can be placed by [Redacted] University Law School Staff.*

*Wednesday, July 20th*

*...*
*6 hours*
*10:00am-4:00pm*
*You need to report at 9:30am, so that you can be placed by [Redacted] University Law School Staff.*

*Thursday, July 21st*

*...*
*6 hours*
*10:00am-4:00pm*
*You need to report at 9:30am, so that you can be placed by [Redacted] University Law School Staff.*

186.   On July 7, I reached out to the Dean Kaspar regarding a letter of good standing and transcript for transfer applications which I was forced to spend hours of time during the exam preparation process because of the school's decision to cancel distance learning:

   *Dean Kaspar:*

   *May I have a letter of good standing to include my GPA and class rank in support transfer applications? Dean [Dean 1 Redacted] indicated that your office provides such letters.*

   *If I am not permitted to take classes remotely for the remainder of the degree program, I will need to transfer or discontinue my studies due to family constraints.*

   *Thanks*
   *[Doe]*

187.   On July 9, Dean Kaspar replied:

   *[Doe],*

   *In order to apply to transfer, you need to fill out the attached form and submit the required fee – $40.00 per school.*

*The check for the fee should be made payable to ABA Accredited University Law School.*

*The completed form and fee should be sent to:*

*Attn: Mary Fair*
*Office of Academic Records and Registrar*
*126 ABA Accredited University*
*207 Memorial Hall*
*[City Redacted], New York   11549*

188.   On July 12 I replied to Dean Kaspar:

*Dean Kaspar,*

*I am not requesting to transfer at this time, only for a letter of good standing. I didn't see anywhere … that states that a fee would be charged $40 for each copies of my school record and for a certified transcript. Can you explain the fee and why we would need multiple fees per school?*

*Thanks,*
*[Doe]*

189.   Dean Kaspar replied on July 18:

*Hi [Doe],*

*The policy of ABA Accredited University Law School (as is with most Law Schools) is to charge a fee to apply to transfer to another law school.  The fee includes us sending an official transcript, letter of good standing, as well as filling out any school specific paperwork that the school you are applying to, may require.*

*I hope that this answers your question.*

*I know that Mrs. Fair took care of sending a letter and transcript out for you. You can send the check or money order (made payable to ABA Accredited University Law School) to the following:*

*Attn: Mary Fair*
*Office of Academic Records and Registrar*
*126 ABA Accredited University*
*207 Memorial Hall*
*[City Redacted], New York   11549*

*Thank you.*
*Brian Kaspar*

190.  I sent an email to President [Redacted], Dean [Redacted] and Dean [Dean 1 Redacted] on July 18, at 3:56 very upset about the fiasco they had put me through over the last few days.

*President [Redacted],*

*I was hoping that this matter could be addressed by your office informally so that we can have a clear understanding of how this relationship should proceed. Absent your intervention, it appears I will need to invoke my rights under the policy below.*

*https://www.ABA Accredited University.edu/policy/harassment.html*
[See Exhibit H.]

*I have lodged a complaint against Dean [Dean 1 Redacted] last week, after repeated attempts to resolve the matters with him directly, and after Dean [Redacted] elected not to engage in the matter.*

*I have several open [Redacted] [Redacted] requests with Dean [Dean 1 Redacted] which have been ignored and others which have been denied without explanation. The way I have been treated can be construed as harassment, even if most of the conduct triggering that characterization comes from omissions to act in a reasonable manner. However, today, it was specific action that triggers the characterization of harassment. Here, due to Dean [Dean 1 Redacted]'s delay in responding to my repeated requests, the time of the exam was not confirmed until 925 this morning. Instead of recognizing this and attempting to reschedule, and once it became clear, as I predicted, that the host school didn't want to proctor the exam lasting until 7pm, we went through a series of communications which culminated in me driving to DC under threat of having to take my exam with less than the required time. I was made to feel that I would be held responsible for the result if I chose not to proceed under these discriminatory terms. An unbearable stress during a time of stressful final exams. The fact that the university finally acquiesced to reschedule today's exam, does not mean that the harassment and discriminatory event didn't occur. It did and certainly had the intended effect on me.*

*[None-the-less], I remain open to resolving these issues informally, but it would seem appropriate that you intervene and not simply direct me back to the office which is implicated as the source of this grievance.*

*I have a right to clarity regarding the circumstances in which I will be permitted to complete the degree program. In other words, I have a right to an answer to the question: will the university commit to allowing me to continue*

*remotely, without forcing me to wait semester by semester for an answer, as the school incrementally discontinues features of the remote distance-learning program.*

*I have a right to my reasonable requests for [Redacted] to be reviewed and responded to appropriately.*

*This is my proposed resolution:*
*1. Make the [Redacted] requested or provide explanation as to why the school won't.*
*2. Commit to engaging in the legally required dialogue about the [Redacted] requested.*
*3. Commit to having the school proactively and comprehensively address any issues about matters impacting my participation in, and intended completion of, the law program.*
*4. Provide me assurances that the school will allow me to complete the program as advertised with the terms initially set forth, I.e. remotely, and seek whatever exemptions are necessary from ABA and/or NYS Court of Appeals for the school to fulfill its commitment to me.*
*5. Reschedule Wednesday's Business Law exam to Monday so I will have proper time to prepare without my performance being impacted, as it has been, by this conflict with Dean [Dean 1 Redacted].*
*Thank you for your consideration.*

*Sincerely,*
*[Doe]*

191.    On July 20 at 9:20 a.m. Dean [Dean 1 Redacted] responded:

*Dear [Ms. Doe],*

*As I have stated in prior emails, we are not providing the [Redacted] you have requested and which you requested again last night. There are several reasons for this.*

*1. All of the measures you seek [Redacted] from are exam security measures that are being applied to all students taking the exams you are taking.*
*2. Exam [Redacted] requests must raised in a timely manner with proper documentation. When you did so in the past, the Law School has provided those [Redacted] to you in the form of extra time. Making an completely new exam [Redacted] request less than a week before an scheduled exam, and renewing it the day before an exam, cannot be the basis for delaying or rescheduling an exam.*
*3. If you believe your [Redacted] requires an [Redacted] in the manner you have suggested, you can submit your request and proper documentation for that [Redacted] to Dean [Dean 3 Redacted] for exams next semester.*

69

*We expect you to take your exam at the time scheduled and under the [Redacted] already provided.*

192.    I emailed Dean [Dean 1 Redacted] after the first final at 5:31 p.m.:

*Dean [Dean 1 Redacted],*

*The lack of reasonable [Redacted] which I had requested for today's exam had a substantial negative impact on my performance. Specifically, the lack of monitors, coupled with the school disabling the cut and paste features, have a disproportionate negative impact on me, given my learning difference. The school's refusal to discuss this with me is discriminatory. I should be permitted to take any exam a second time which is not administered with the required [Redacted]. Additionally, the school should provide the 100% extra time that the doctor has indicated is appropriate for my [Redacted].*

*There are ways to test a student's ability to spot issues, identify law, and apply it to facts which do not require imposing such arbitrary and disproportionately harmful constraints such as these. If these were closed book exams for everyone, then this distinction may not have such a pronounced negative effect on me, however, under these conditions, where we are compared to other students in a relative grading scheme, the school arbitrarily forcing students, regardless of learning differences, to take open books exams under circumstances which require excessive shifts in focus from content in one view, then to memorize it, then to shift to the another view, and then regurgitate it into examplify, and then subject the test taker to the constraints of disabling the ability to move the content around because some discriminatory administrator decided it would be fun to implement such an arbitrary constraint is absurd. It impacts my ability to organize ideas. These methods are arguably more harmful to any non-linear thinker not just those afflicted with my learning difference. I demand the ability to use monitors (ie a larger workspace) and the cut and paste features or you will continue to discriminate. If not, you should send me a scribe for the remaining exams.*

*Separately, I am taking evidence on Thursday. Tomorrow's exam in Business Associations should be rescheduled to Monday to provide sufficient time to prepare and transition between subjects, as a reasonable [Redacted], particularly given the issues you created over the last week.*

*Thanks,*
*[Doe]*

193.    I did not receive a reply from President [Redacted] and emailed President [Redacted] at 9:57 p.m. as follows:

*Dear President [Redacted]:*

*I have a time sensitive issue. The details are below. I have not received any response from Dean [Dean 1 Redacted].*

*I have not heard from Dean [Redacted] on any issue I have previously raised. Yet, you have directed me back to them for resolution of the issues.*

*My investment in this program is too high not to have responsive administrators available to address urgent matters, especially during exam periods.*

*My [Redacted] [Redacted] requests have been ignored, and in addition to impacting my exam performance, it is causing tremendous stress and [Redacted].*

*Anti-[Redacted] laws are in place to ensure that these types of experiences do not occur.*

*If you need additional documentation to support the granting of my [Redacted] request, despite the reasons for the request being obvious, let's postpone the exams and discuss what the school would require. Essentially, I am escalating my issue to you because your staff has been ignoring the requests and not engaging in the required interactive dialogue.*

*Before assessing the appropriateness of my frustrated tone, I'd respectfully ask that please perform a review of the extensive communications between Dean [Dean 1 Redacted] and myself over the past year on many topics including this, and you will find that my level of frustration is commensurate with the number and importance of the issues left unresolved by him.*

*Thanks,*
*[Doe]*

194. Dean [Dean 1 Redacted] replied July 20 at 9:20 a.m before my second final:

*Dear [Doe],*

*As I have stated in prior emails, we are not providing the [Redacted] you have requested and which you requested again last night. There are several reasons for this.*

*All of the measures you seek [Redacted] from are exam security measures that are being applied to all students taking the exams you are taking.*
*Exam [Redacted] requests must raised in a timely manner with proper documentation. When you did so in the past, the Law School has provided those [Redacted] to you in the form of extra time. Making an completely new exam*

71

*[Redacted] request less than a week before an scheduled exam, and renewing it the day before an exam, cannot be the basis for delaying or rescheduling an exam.*

*If you believe your [Redacted] requires an [Redacted] in the manner you have suggested, you can submit your request and proper documentation for that [Redacted] to Dean [Dean 3 Redacted] for exams next semester.*

*We expect you to take your exam at the time scheduled and under the [Redacted] already provided.*

*Julian [Dean 1 Redacted]*

195.   I replied to Dean [Dean 1 Redacted] at 9:46 a.m. on July 20:

*Dean [Dean 1 Redacted],*

*The [Redacted] requested are substantially supported by the documentation previously provided by my doctor. Simply because the school [Redacted] by not providing the previously requested [Redacted] doesn't mean that my renewed request constitutes a new request. It certainly doesn't justify you ignoring my request or failing to fully address it until, ONCE AGAIN, minutes before the exam.*

*Your false claims of "security" to justify your discriminatory decision is absurd, particularly in an open book exam taken in a back room of a university by myself for 6 hours. Locking down the internet without providing students with access to their online books during an "open book" exam, forcing students to use tiny laptop monitors, and [disabling] cut and paste are not "security" related in the context text of open books, they are apparently designed to disadvantage disabled students. At minimum they are designed to further your agenda of getting everyone back in campus, and to support the absurd reasoning with regard to that. Anyone with expertise in [Redacted] law will tell you that my request is reasonable, and your failure to address it last semester, and again a week ago, and now, in a nonchalant manner minutes before the exam, is, unfortunately, consistent with your treatment of these important issues to date. Had you put forth your complaint about the timeliness and completeness of the [Redacted] request last week, I could have flooded your office with letters from doctors to demonstrate that your decision making about my [Redacted] request is absurd.*

*You are inviting a lawsuit, and you will get one.*

*Thanks,*
*[Doe]*

196. I wrote Dean [Dean 1 Redacted] again at 9:58 a.m. concerned about the lengthy exams through the lunch hour without a lunch break:

> Dean [Dean 1 Redacted],
> *I have not received any information about taking breaks for lunch during the 6 hour exam which runs through the lunch hour, and what, if any, exam security measures you have in place for this.*
> *Thanks,*
> *[Doe]*

197. Dean Kaspar replied at 10:20 a.m after the exam was scheduled to start, and obviously without any time to get a lunch to bring into the exam, when past exam policies have not allowed food:

> *Hi [Jane],*
>
> *The same rules apply that were in place during the Spring 2022 final exam period. We do not give additional time for a lunch break. Of course, you can certainly eat/drink something during the exam.*
>
> *Thank you.*
> *Brian Kaspar*

198. Dean [Redacted] emailed me at 10:18 a.m. during the final exam:

> *Dear [Doe],*
>
> *I have carefully reviewed the various recent communications between you and ABA Accredited University Law School. I discussed them at length with those individuals involved from our Law School with the goal of making sure that you received all of the [Redacted] to which you are duly entitled. After taking a good hard look, I wanted to let you know that I see no basis in fact or in law to support your numerous contentions. The Law School actually went above and beyond what is required in granting you [Redacted] with respect to taking your final exams.*
>
> *You have been on notice from no later than 6/28/22 that your exams, as well as the exams of all other law students, would have to be taken in-person at ABA Accredited University Law School. In fact, you were so notified by your instructors during your summer session classes earlier in the semester. However, as an [Redacted] to you, the law school made arrangements, at your request, to have you take final exams in the Washington, D.C. area at [Redacted] University's Columbus School of Law. ABA Accredited University Law did so despite the fact that this request was not required by your [Redacted].*

*You were also provided with the same amount of "extra time" that you would have been permitted if you had taken the final exams in-person at ABA Accredited University Law School, to wit, double the time provided to students without a [Redacted]. Despite the above, instead of confirming to the law school that you would be taking your exams as scheduled at Columbus Law School, you chose to send a letter to the President of ABA Accredited University, restating your prior claims as if nothing had been done to "accommodate" you. You also then requested even more additional time to take your exams, beyond the "double time" and made a new request to be permitted to take the exams at your home with extra monitors.*

*These additional requests, which were not supported by any rules or protocols, were denied by the law school. The [Redacted] that were granted to you were reflected in the scheduling of your final exams by ABA Accredited University Law at Columbus School of Law in D.C. on Monday, Tuesday and Wednesday – 7/18/22 to 7/20/22 – to take place at the same time that they had been scheduled to take place at ABA Accredited University Law School, with a starting time at 10:00 a.m. and an ending time at 4:00 p.m.*

*On the morning of Monday, 7/18/22, you contacted Dean [Dean 1 Redacted] and asked him why the exam was going to start at 1:00 p.m. instead of at 10:00 a.m., at which time he explained to you that the start time of the exam that day was in fact at 10:00 a.m. By that time, it was already past the starting time of the exam, and you then asked to be permitted to take the exam scheduled for that day during the following week. Although at that point in time, applicable protocols provided that you should start the exam then, albeit later than the previously scheduled starting time, and finish it within the time allotted, the Law School again accommodated you and agreed to move the final exam from Monday, 7/18, to this coming Thursday, 7/21 so that you would have the full "double time" allotted to take the exam. Thus, instead of taking the exams as scheduled on Monday, Tuesday and Wednesday, the schedule was once again revised to accommodate you so that you could take them from Tuesday, 7/19, through Thursday, 7/21.*

*ABA Accredited University Law has extended to you every appropriate [Redacted] and courtesy. There is no basis, whatsoever, to reschedule the exams yet again for next week and your request for same was properly denied.*

*In essence, everything that could and should have been done to accommodate your requests was done and some of them were granted despite there being no obligation on ABA Accredited University's part to do so. Your contentions that the Law School's response to your requests constitutes some kind of violation of ABA Accredited University's Harassment Policy or some other wrongdoing are thus completely unfounded.*

74

*Law School can be stressful at times with pressure and time limitations – but it is a training ground to prepare our students for the arduous practice of law which is a profession, which by its very nature, is deadline and pressure oriented. I want you to know that I wish you the very best in your professional endeavors and during the remainder of your legal education.*

*[Note Dean [Redacted] uses the phrase "legal education" doesn't say "at ABA Accredited University Law," from which the fact finder can draw an inference that Dean [Redacted] intends to coerce me into transferring or dropping, as they then proceeded to do, by refusing to provide information necessary to plaintiff to decide if he will be allowed to continue, in. breach of its duty of good faith and fair dealing and to cooperate]*

*Sincerely,*

*JUDGE [FIRST NAME REDACTED] [REDACTED]*
*Dean*

199.  I replied that evening after the second exam and sent a screenshot depicting the extreme difficulty I had to see anything on one monitor with two windows open side by side given the nature of the Examplify software. Email sent at 9:32 p.m. the evening before the last scheduled final:

*Dear Dean [Redacted]:*

*I have received your email and will respond in detail, if necessary, after I complete my exams. It is disappointing that the simple accomodation will not be provided.*

*Contrary to your understanding, I have not been given double time as was provided for me on the LSAT, and which was consistent with my doctor's recommendation. Instead, I was given time and a half.*

*I have attached a screenshot below to help you understand why the school's refusal to allow for monitors is unreasonable. There's not even enough room to put two windows side by side and read anything on a laptop. If you can easily tell me what the word document says, that would be amazing.*

*[See Exhibit I.]*

*As you may know, the workflow of a student with [REDACTED] is different from a normal student. Cutting and pasting, at least from within the examplify program, to organize, and being able to see a document and type in another, simultaneously, should be allowed for everyone, but MUST be allowed for students with my [Redacted]. I would expect the school to have staff versed in [Redacted] law to understand this basic concept and advise you. I know*

*everyone is not familiar with every type of [Redacted], but my critique is that the dialogue has been lacking. Taking exams under these conditions is disproportionately more difficult for someone with [REDACTED]. In fact, the playing field would be more level if it were a closed book exam, if the school is to insist on these arbitrary constraints about the monitors and "cutting and pasting." Then we would all have to memorize everything, but at least it would be fair.*

*If Dean [Dean 1 Redacted] would have responded to my communications in a timely and thorough manner, things would not have escalated as they did and we could have resolved this.  If he needed additional documentation, he should have said so. He has clearly been annoyed we me as a "remote" student, and eventually, his communications (or lack thereof) resulted in me needing to assert my rights.*

*It is reasonable to expect that the program shall continue under the same material terms as we're in place when it started, so I don't think it can be said in good faith that the school, by allowing me to take the exams down in Virginia,  as it has, is making an "accomodation" in as much as it is complying with its contractual obligation.  It certainly is obligated to do something reasonable. It was reasonable to take the exams remotely from my apartment during the first semester, and because no valid reason was provided for changing that, it remains the most reasonable option. After all, they are all open book exams. What was unreasonable was the school changing that for no good reason.  The circumstances of Monday were completely unfair, not because the school "accommodated me," but rather, the school shouldn't have made me drive DC once it realized I wouldn't have time for the exam. Let us not overlook Dean [Dean 1 Redacted]'s acknowledgement that he wasn't clear.*

*Dean [Dean 1 Redacted]'s refusal to make arrangements until the last moment for me to take exams in Virginia, and then by continuing to push his agenda of having me on campus, and even attempting to have me coordinate a location, in the midst of a critical studying period, was deliberate and not part of the training for the high pressure, arduous profession of law. Missing from each and every one of the school's communication is the commitment I seek to allow me to continue studying remotely. So, that is extremely frustrating.*

*As I have stated to Dean [Dean 1 Redacted] for nearly a year, receiving a confirmation from the school on this simple point is critical for me to be able to plan my life appropriately. It is highly unreasonable, given my constraints, including my obligations to my family, that I am being forced to incur additional costs (like renting on a month-to-month basis), simply because the school refuses to confirm that it will perform on our contract. It is my view that the school is liable for those extra costs I have incurred, and if it does not honor the terms of its commitment, it appears to be fraud.*

76

*I am hoping that the school will confirm it's intention to perform on the contract, work with me to lay out a detailed plan as to how I will obtain my degree, instead of forcing me to litigate this. I am asking the school to simply be fair, and not penalize me as part of its business agenda.*

*The examplify software is aweful and the "feature" of disabling the "cut and paste" within the application itself is a violation of section 508. It appears that the school can disable it, and it should. A monitor is not an [Redacted], it's a basic requirement. At minimum, I should be able to carry in my iMac to the exam tomorrow. At least I can see two windows. It will cost everyone a whole bunch of time and money to get this documented by a doctor. If I must, I will and then I will ask all the other students to join me in my complaint for monitors, cut and paste, and to study remotely.*

*Thanks for your consideration.*

*Thanks,*
*[Jane Doe]*

200.   Dean [Dean 1 Redacted] emailed all remote students 30 mins before my last final exam was scheduled to be completed cancelling distance learning the next semester, in pertinent part, as follows:

*Dear Students,*

*I am writing to you because each of you had received approval from the Law School during the Spring 2022 semester to take all of your classes at ABA Accredited University Law remotely. As you were previously notified, this approval was for the spring 2022 semester only and it was likely that this would not be extended beyond that semester.   Due to changes in the health and regulatory environment, the Law School has decided that it will no longer offer any law students a fully remote option during the Fall 2022 and subsequent semesters. It is also important to note that as of this date, the New York Court of Appeals has not extended the waiver of its distance learning limitations that had been in effect from the spring 2020 semester through the spring 2022 semester. The lack of a waiver means that if students take more than 15 credits in remote format after the spring 2022 semester, those students would lose their eligibility to sit for the New York Bar exam.*

*At the same time, the University has recently reaffirmed its policy requiring vaccination against COVID19.  (See President [Redacted]'s email of July 11 below.)*

*Taken together, this means that if you wish to stay enrolled at the law school next semester, you must be vaccinated against COVID19 since there will be no "remote" option available for any law students.  The vaccination requirement*

77

*will apply even if the classes you enroll in this fall are all fully online. For this reason, we recommend that you become vaccinated against COVID19 as soon as possible and upload that vaccination card here.*

*If you do not wish to comply with the University's COVID19 vaccination requirement, you have at least three options.*

*First, especially if you are entering your second year, you can apply to transfer to another law school which does not have a vaccination requirement.*

*Second, you can apply to take classes at another ABA-accredited law school that does not have a vaccination requirement. You would remain enrolled at ABA Accredited University, but you would take your classes at another law school and you would receive transfer credit for classes (which would not count toward your GPA). In order to qualify to visit at another law school, however, you must seek to demonstrate that your circumstances satisfy the "extraordinary circumstances" .... You must also demonstrate that you have already completed all of your ABA Accredited University Law graduation requirements ... with the exception of Perspectives. If you have fulfilled all of your other graduation requirements, you may apply if a class sufficiently similar to Perspectives is offered at the other law school.*

*Third, you may take an academic leave for a semester or a whole academic year. When considering this option, keep in mind that ABA Accredited University's vaccination requirements are likely to remain in place.*

*The Law School's Office of Student Affairs should be your first contact point to provide further advice on these options. Please do not hesitate to contact either Dean Lisa [Dean 3 Redacted] or Michele Lo Faso for advice and guidance on these options.*

*Best,*

*Julian [Dean 1 Redacted]*

201.   On July 22, Dean [Redacted] emailed me at 1:52 p.m.:

*Dear [Doe],*

*I am in receipt of your reply to the email that I sent to you on 7/20/22. I apologize for the miscommunication about the amount of additional time provided to you for the taking of your final exams. I have confirmed that you were provided with time and a half and not double time. However, this was the very same amount of additional time provided to you for your final exams at the end of both the Fall 2021 and Spring 2022 semesters. Thus, the additional time [Redacted] granted to you at the end of all three sessions were exactly the same.*

*Moreover, I have spoken to the Dean of Students and she advised me that she had a zoom meeting with you in April of 2022 concerning your [Redacted] and at that time, she advised you that you would be required to submit additional original medical documentation to support your [Redacted] request (beyond the mere cursory "doctor's note" that you had previously provided) in the event that you wanted the Law School to consider continuing the existing [Redacted] going forward. Notwithstanding this fact, she nor anyone else at the Law School has ever received any additional medical documentation from you.*

*Under these circumstances, the granting to you of the existing [Redacted] for the summer 2022 summer session finals was more than that to which you were actually entitled. The Law School has and remains in full compliance of all applicable rules and protocols and has done everything in its power to properly accommodate your [Redacted].*

*As you are aware from Dean [Dean 1 Redacted]'s email to all students yesterday, due to changes in the health and regulatory environment, the Law School has decided that it will no longer offer any law students a fully remote option during the Fall 2022 and subsequent semesters. I have attached hereto this email from Dean [Dean 1 Redacted] which explains all of the options available to students who were learning remotely during the Spring 2022 semester. I hope that this is helpful to you in making arrangements for the continuation of your legal education going forward.*

*Wishing you all the best!*

*Sincerely,*

*JUDGE [FIRST NAME REDACTED] [REDACTED]*

*Dean*

202.    I replied to Dean [Redacted] at 3:42 p.m. as follows:

*Dear Dean [Redacted]:*

*Thank you for your email. As you know, I have received Dean [Dean 1 Redacted]'s email. None of the options which he presented satisfies ABA Accredited University Law's obligation under our contract.*

*For thoroughness, I'd like to address each option. First, I have not yet completed the minimum requirements to be a visiting student anywhere, so that option seems unavailable and infeasible. Secondly, taking a leave of absence is also of no value to me, and brings us no closer to a solution. Lastly,*

*transferring may be an option. However, it is not optimal, it will not remedy the breach of contract, and still would leave me with significant damages.*

*Two things are clear: (1) I cannot go to New York to finish this program in person as my family obligations are here, and (2) if ABA Accredited University doesn't commit to a plan in which I may finish the program, then I must seek a remedy from a court. Please believe me when I state that this is the last thing I would want.*

*Though, I am completely committed to this pursuit. I have communicated with ABA Accredited University in good faith about this topic for nearly a year. ABA Accredited University has not presented any reasonable or workable options for me to complete the degree.  That has been very frustrating to me and my family, as you can imagine. Stringing me along semester by semester has not been fair at all and it has caused a tremendous amount of stress. Not the kind of stress that one could reasonably expect from, as you referenced,  the arduous practice of law, but rather a different type; a type which I feel has been intentionally inflicted. ABA Accredited University has backed me into a corner and can reasonably expect a fight.  I don't want that, and I hope that you will find a way to somehow meet me halfway.*

*In the meantime, as I indicated yesterday, I have begun my research into how I might accomplish a solution through the courts.  If no solutions are offered by ABA Accredited University, I will have no choice but to file an Emergency Petition with the US District Court for the Eastern District of Virginia, seek a TRO, Preliminary Injunction, and ultimately a Final Order to enjoin ABA Accredited University from discontinuing the distance learning method of learning currently in place in the J.D. program. Although damages could be paid, specific performance is a necessary part of any remedy given the unique terms and conditions of our contract. In the event of litigation, I would ask the court permission to proceed under pseudonym, but regardless of the decision, I would proceed.  I believe ABA Accredited University has established sufficient minimum contacts with Virginia for a court here to exercise jurisdiction.  If I must go that route, I would also join A.B.A to the action and seek similar relief to prevent them from enforcing Standard 306. This standard, in my view, makes an "unconstitutional" distinction between distant and in-person learning upon which ABA Accredited University and other universities ostensibly rely.  I believe there are valid arguments based in contract law, [Redacted], anti-trust, 14th Amendment, and others, to support my position, and I would ensure the necessary elements. You should know that I have previously been forced to litigate pro se, and surprisingly, I had more success than anyone could have expected. If the school thinks it will simply wait for me to transfer, even if it is possible,  that would not resolve this dispute.*

*ABA Accredited University can and should ask for a waiver from A.B.A. to allow me to continue from a distance. I'm open to earning the remaining credits*

80

*in any way that makes the most sense, but I cannot be required to relocate to NY. My family situation simply won't allow.*

*Please, let us not be adversaries. Let us work together. It is in our mutual interests. It is the right thing to do.*

*Thanks,*

*[Doe]*

*p.s. I note that you sign your email as "JUDGE." I have the utmost respect for that title and for your accomplishments. I assume when we are corresponding, here, you are not acting in that capacity. It is important to me that I exhibit the proper decorum. I remain open to your guidance and support.*

203.   At 5:23 p.m. Dean [Redacted] replied only to the question posed about her signature line:

*Dear [Doe],*
*For clarification purposes,*
*I am a retired Justice of the New York State Supreme Court Justice. As my email clearly states*
*I am presently the Dean of the Maurice A Deane of ABA Accredited University. I act in no other capacity.*
*Sincerely,*
*[First Name Redacted] [Redacted]*
*Sent from my iPhone*

204.   On Monday, Dean [Redacted] demonstrated her lack of willingness to work with me:

*Dear [Doe],*

*As set forth in all of the prior communications between you and ABA Accredited University Law School, we have done everything that can be done for you and all of the other students similarly situated. Every courtesy that could have been extended to you has been provided to you. I hope that you can now focus on moving forward to do what is necessary to continue your law school education.*

*Wishing you all the best with your future professional endeavors.*

*With warmest regards,*

*JUDGE [FIRST NAME REDACTED] [REDACTED]*

*Dean*

81

205. I emailed Dean [Redacted] at 3:33 p.m.

*Dear Judge [Redacted]:*

*"Courtesy" is a peculiar way of describing a fraudulent, retaliatory and discriminatory scheme whereby ABA Accredited University accepts tuition money towards a degree which it does not intend to allow certain students (those who challenge the legality of the school's conduct) to complete. Instead of offering any compromise whatsoever, you have planned this decision for months if not a year. There are whistleblower protection laws which are triggered by my protected types of communications.*

*The law school's true motivation and intent to discriminate against me was most recently revealed by Dean [Dean 1 Redacted] when he "predicted" that even if ABA adopted the new standard which allows for distance learning to continue as a [Redacted] [Redacted], that the law school would ultimately refuse to allow me to continue as a remote student in the program. In other words, the school made this decision a long time ago, concealed it, and even though a compromise is available, which would both protect a disabled student's rights and the apparent interests of the university, the law school has no intent to honor its legal duties.*

*Despite Dean [Dean 1 Redacted]'s revealing comments, the ABA standard allowing for distance learning as an [Redacted] for a [Redacted] is apparently already available, and the school's concealment of this fact is further evidence of its tortious intent. This is further evidence that this is fraud, [Redacted] and [Redacted]. When the school chooses to discriminate against people with disabilities to protect its antiquated business model, and then in [Redacted] for protected activities, it will not be perceived very well by the public. Ultimately, the magnitude of the fraud will be uncovered as we proceed through the discovery process.*

*My court documents, which I have worked on all weekend, are nearly complete. As I mentioned, they will include a motion for a temporary restraining order, a preliminary injunction, and a complaint.*

*President [Redacted], yourself and Dean [Dean 1 Redacted], unfortunately, will be named as parties to my suit, as the specific officers engaging in the fraud, [Redacted] and [Redacted], or adopting others conduct by ratification through inaction. I note that disabled people have already had to sue ABA Accredited University in federal court, so [Redacted] is apparently part of the culture there.*

*I assume the ABA Accredited University Board of Trustees is already aware of this issue. It is, after all, their job to protect the school from the types of damage to its reputation which will inevitably come from its university officers treating*

*its students this way. I predict that this will also be a multimillion dollar judgement against the school. It is unfortunate that you underestimate my resolve and capabilities. This is a terrible way to run your business.*

*Unfortunately, we've run out of time for negotiation because of the unscrupulous timing of ABA Accredited University Law's announcement less than a month before the fall semester. The timing of the communication was no accident. If the court is to take action to right this wrong, it will need to do so in an emergent manner. I note that you took the time to respond to my inquiry about your use of the title "judge" in your signature line, but made me wait all weekend for you to acknowledge or respond to the other issue raised. This method of communication, which has been deployed by Dean [Dean 1 Redacted] for the last year with the intent to harass, has apparently permeated the leadership at the law school.*

*Lastly, multiple professors, have either denied or indicated an unwillingness to write letters of recommendation in support of my transfer, without any valid reason to do so. This is evidence that the law school, under your leadership, is tortiously interfering with my ability to transfer, so we're going to address that in the suit as well. You had an opportunity to make any effort to resolve this for a year now, and you intentionally waited until now to reveal your decision.*

*My next communication on this topic with copies of the filed court documents. Good luck.*
*Sincerely,*
*[Doe]*

206.    I emailed Dean [Redacted] and put the school on notice to preserve evidence:

*Judge [Redacted]:*

*Please take notice of the University's obligation to preserve all correspondence related to my enrollment at the university and participation in the program in anticipation of litigation. It should cease any destruction of any emails and other records, including bac[Dean 1 Redacted]p tapes, fragmentation of hard drives, etc., scheduled or otherwise.*

*The preservation should be accomplished centrally through the IT department while protecting my identity (except for the IT staff member assigned to this activity, with disclosure and acceptance of the assignment to that staff member being conditioned on their acknowledgement of the duty of confidentiality) until the court has had an opportunity to rule on any motion for a protective order and to file under seal.*

*In addition to preserving any and all records pertaining to me, the University should also preserve any records of other students who have made any requests*

*to attend any class remotely, and any other requests that seek variance from any and all published standards or rules or policies of the law school, along with records relating to the school's response to the same.*

*Any and all records of communications between ABA Accredited University and any other university or the American Bar Association, or the Department of Education regarding COVID related policies, distance learning, ABA standards, waivers related to the same, planning and operations of distance learning - should also be preserved in anticipation of the litigation.*

*Any and all student surveys, or studies showing the efficacy of distance learning, or anticipated impact of distance learning on the business and financials of the university, and any materials considered as part of the decision making process related to ABA Accredited University law's discontinuation of distance learning - should be preserved in anticipation of litigation.*

*Any and all records relevant under Rule 401 of Fed R. Evid. to any complaint I have made or could make against the university given the known facts.*

*Under no circumstances should my expressed intent to file suit against the university be revealed to the law school staff or students or this will be construed as further evidence of [Redacted].*

*Please acknowledge receipt of this notice and the university's obligation to preserve the evidence.*

*Thanks,*
*[Doe]*

207.   I did not receive any acknowledgement from Dean [Redacted] regarding her receipt of the Notice to Preserve.

208.   I emailed Dean [Redacted] at 1:38 p.m. on July 26 a Final Demand letter attached as (See Exhibit J.)

*Dear Judge [Redacted]:*

*Please find the attached my final demand letter. I remain open to working cooperatively with the ABA Accredited University Law School to resolve the issues to avoid litigation.*

*Thanks,*
*[Doe]*

209.   Dean [Redacted] replied on July 29, at 8:56 a.m.:

*Dear [Jane],*

*I am in receipt of your communication to me dated 7/26/22 with the subject heading "Final Demand Letter". Please be advised that ABA Accredited University Law School has provided you with all of the [Redacted] to which you are legally entitled pursuant to all applicable ABA, NYS, DOE, ABA Accredited University and other prevailing rules and protocols, ... and has in no way "[Redacted]" and/or "[Redacted]" against you in any way, shape or form.*

*Rather, we have engaged in continuing interactive communications with you with respect to your numerous requests and "demands" and have addressed all of them in an appropriate and proper manner. In fact, the Law School has graciously extended courtesies to you to which you were not entitled pursuant to applicable laws, rules and regulations. Additionally, ABA Accredited University has never promised you or led you to believe that you would be entitled to attend ABA Accredited University Law School on a fully remotely basis during the entirety of your law school tenure and any contentions to the contrary are completely unfounded.*

*I again wish you all the best with your future professional endeavors.*

*Sincerely,*

*JUDGE [FIRST NAME REDACTED] [REDACTED]*

*Dean*

210.    I replied at 10:17 on the same date, in. pertinent part, as follows:

*Judge [Redacted],*

*First, as you know, the school advertised that the law school's students were ALL distance learning when we entered into our contract. Only after I applied and accepted admission to the school did you attempt to change the material terms of the contract. At no time prior to that was I provided with any [university literature] that said anything to the contrary, nor did your website indicate that the distance learning was for COVID only.*

*Secondly, for the dialogue to be "interactive," you and your staff must respond to the substance of my communications. In just one example, in response to my numerous requests for a graduation plan, you've concealed the available options per your own rules, and implemented new rules targeting my situation. Furthermore, neither you or your staff have provided any reasons for the change, and of course, the timing of the announcement, given that I am the only student you've not successfully coerced onto campus, was targeted at me and you did so knowing that this would be a material change to our contract, that it*

*would cause emotional distress to me, particularly given my [Redacted], and that it is retaliatory and frankly, malicious.*

*There is nothing about any of your communications which have been interactive as defined in [Redacted] law, that is for sure. I note that nothing in any of your communications offers a plan, or a suggestion, or even an inkling of a hint as to how this can be done. I've spoken with partners at prestigious law firms who each say that you are required to work something out. Yet, ABA Accredited University has offered nothing.*

*. . .*

*Thanks,*
*[Jane Doe]*

211.   I sent another communication on August 1 to Dean [Redacted], President [Redacted], and Dean [Dean 1 Redacted] as follows:

*CONFIDENTIAL SETTLEMENT COMMUNICATION PURSUANT TO FRE 408*
*Dear Judge [Redacted],*

*I would like to draw your attention to A.B.A. Standard 306(c) which states that:*

*"Remote participation in a non-distance education course by a student as an [Redacted] provided under law (such as the [Redacted] Act) or under exceptional circumstances shall not cause the course to count towards the distance education credit limits in Standard 311(e) for that student. The law school shall document all instances in which it permits a student's remote participation in a non-distance education course for which the credits will not be counted towards the credit hour limits in Standard 311(e)." (emphasis added).*

*If in the event I will plan to sit for the NY Bar, I will seek a waiver under NY State Rule § 520.14 Application for Waiver of Rules to Rule § 520.3(b)(6) Study of Law in Law School: "(6) Distance education. Distance education is an educational process in which more than one-third of the course instruction is characterized by the separation, in time or place, or both, between instructor and student, and the instruction involves the use of technology to support regular and substantive interaction among students and between students and the faculty member, either synchronously or asynchronously." To my knowledge, Virginia has no such constraints beyond the ABA requirements, from which, as I mentioned before, I qualify for a waiver.*
*I believe I have presented all facts necessary to support the granting of an exception under 306(c) due to exceptional circumstances. Those exceptional circumstances are including but not limited to:*

*Documented [Redacted]*

*Family requirements (shared custody of minor child in Virginia).*
*Religious objections to COVID vaccine policy*
*Immuno-compromised family members*
*Please confirm that I qualify under both [Redacted] or exceptional circumstances for any "non-distance learning classes" to be provided remotely or indicate any additional documentation requirements necessary.*

*Operating under the assumption that the school is required to provide this under our contract, and that I qualify for remote classes to be offered under both [Redacted] and exceptional circumstances under Standard 306(c) and 311(e), I have proceeded to register for classes with the expectation that the professors will turn on the zoom capability and I will be permitted to attend from my home in Virginia, just as I have been doing since the beginning of our contract.*

*I would also like the school to confirm that I may opt to "visit" at a law school in the DC area for the remaining classroom credits, per the terms [of the contract] (versus the new/ambiguous rules Dean [Dean 1 Redacted] promulgated in his July 21 message), in the event that I am accepted to take classes at a local law school. I would like the school to confirm that I am currently registered for the all the remaining required classroom credit hours necessary for my degree. I would also like the school to address the other concerns raised in my letters of 7/26.*

212.   I wrote to Dean [Redacted] again on August 3 as follows:

*CONFIDENTIAL SETTLEMENT COMMUNICATION PURSUANT TO FRE 408*

*Judge [Redacted],*

*The school's refusal to provide a reasonable solution for me to retain the value from my $120,000 investment of 39 law school credits, leaves me, as it has with every major untimely decision by the university, and as you would reasonably foresee, feeling daily physical symptoms of severe [Redacted], heart palpitations, [Redacted] and overall distress. I'm having difficulty sleeping and wake up with chest pain daily because of the university's treatment.*

*The fact that the university is attempting to force me to choose between attending university in New York to finish my J.D. degree, or face potential child custody litigation for what would be my inability to comply with a court ordered child custody arrangement here in Virginia, particularly when our contract requires ABA Accredited University to provide the educational services in a materially similar way as when the contract was formed (distance learning), and especially since I qualify for a distance learning medical*

*[Redacted], is breach of contract and violates [Redacted] law and anti-[Redacted] laws.*

*ABA Accredited University's refusal to provide both the contracted services and the required [Redacted], is absolutely [Redacted], [Redacted] and harassment, and leaves a profound negative impact on my physical and mental health. This treatment from ABA Accredited University is a reprehensible way to treat anyone, especially a disabled veteran student.*

*My suit will be for breach of contract, unjust enrichment, conversion, and violations of [Redacted] law.*

*I would be willing to consider any offer from the university of a compromised settlement for me to provide the university a release from liability in exchange for it owing me $2,000,000 damages, and its commitment to refrain from further [Redacted], [Redacted], and breaches of contract. Absent any such offer from the university, I will be filing suit in federal court shortly.*

213.   I wrote on August 4 to Dean [Redacted], President [Redacted] and Dean [Dean 1 Redacted], and Dean [Dean 3 Redacted]:

*Dear Judge [Redacted],*

*The university is being unreasonable which is why the impending litigation remains necessary.*

*The university has not offered any reasons over the past year for its desire to restrict distance learning. This is the first time you've raised any suggestion that the law program now holds "in-person" learning to be somehow tied to the fundamental nature of the program . . . From this fact, we can draw the appropriate inference that the school is attempting to defraud its distance learning students.  At minimum i[t] is a breach of contract, as you advertised distance learning without any caveats and have attempted to change the terms only after the implied contract was formed.*

*I can only assume that you have not addressed my questions regarding the inconsistencies between Dean [Dean 1 Redacted]'s email of July 21 and the [terms of our contract]  pertaining to "visiting students" because the university has decided to make it as difficult for me as possible to obtain the J.D. This is obviously the case, because if I we're permitted to visit at a local school, I could complete the remaining classroom hours locally. It stands to reason that since visiting another ABA accredited law school is an option [published in the school literature], that it also should be available to me. It is clear that since the university refuses to comment on that, it is obvious that any claim the school is now making regarding my continued use of the zoom classes as somehow*

88

*changing the fundamental nature of the program is absolutely pretext. It should be seen as such by the court.*

*You are correct that my immunocompromised family member and my religious objections to your vaccine policy do not specifically relate to a [Redacted] [Redacted], but they none-the-less contribute to the exceptional circumstances which the school is obligated to consider under the basic duty of good faith and fair dealing.*

*When the court takes judicial notice of the contradictory arguments put forth by ABA Accredited University in other federal litigation, it will have a difficult time claiming with a straight face that the program offered remotely was substantially similar enough to the "on campus" learning for the university to justify keeping all the tuition money during COVID, while at the same time absurdly claiming now that using zoom for me and a few students who have exceptional circumstances somehow changes the fundamental nature of the program or is somehow an "unreasonable burden" for the university.  The classes are recorded via zoom and published on the 360 app anyway.*

*With regard to your claim that distance learning is somehow an unreasonable or burdensome [Redacted] for the university to provide, given that I have not yet provided any medical documentation to support that request (since I've been urging the school to handle this is an informal way), it seems that the school, in already adjudicating the unworthiness of any possible medical [Redacted] request, makes the decision perfunctory, without any due process.*

*With all that said, I am still waiting for a detailed graduation plan which either does not require me to come to NY (per the implied terms of our contract) or which, at least, provides details of what the university would consider the absolute minimum time necessary for me to spend in NY with a detailed explanation as to its reasons, particularly as it relates to the quality of the law school education.*

*What will be made crystal clear for the court in my motion for a TRO and Injunction is that the university's deliberate evasiveness, lack of timely and complete communication, has intentionally caused unnecessary emotional distress, and the pretextual explanations as to why the school won't allow another semester of classes via zoom, when it impacted only a few students, will be seen for what it is: Fraud, Breach of Contract, [Redacted] and [Redacted]. There is enough evidence to support each of these claims, and to draw the appropriate inferences as to the school's intent. At minimum, the court should preserve the status quo with a TRO.*

*Quite revealing is your suggestion that my personal family situation and shared custody arrangement is needing to be, or somehow cannot be, "substantiated," as this apparently reflects the school's attitude towards students with*

*challenging family situations. Worse yet, ABA Accredited University Law would view a request for an [Redacted] in a vacuum as opposed to how an [Redacted] request is supposed to be analyzed, to determine necessity given the individualized circumstances of the disabled student.*

*It is clear that the University has not learned any lessons from the 2nd Circuit ruling in Menaker regarding inferences of [Redacted] that can be drawn based on the school's conduct, which includes both acts and omissions.*

*I am continuing to work on my complaint/TRO/Injunction and will file once it is ready absent any compromise from the school.*

*I will also continue the medical treatment which has become necessary due to the school's intentional conduct towards me.*

*Thanks,*
*[Jane Doe]*

214.    On Thursday, August 4, Dean [Redacted] replied:

*Dear [Jane],*

*I am in receipt of your emails to me dated 8/1 and 8/3. As I'm confident that you are aware, your "family arrangements" and claimed "shared custody arrangement" in Virginia, even if substantiated, have absolutely nothing to do with the issue of proper [Redacted] being provided to you as a result of your documented [Redacted]. Nor do your additional contentions that you have "immuno-compromised family members" and "religious objections to ABA Accredited University's COVID vaccine policy".*

*Your most recent contention that ABA Accredited University Law is somehow required to grant you the additional [Redacted] you seek pursuant to ABA Standard 306(c) is equally misplaced. This standard does not stand alone and is required to be considered in conjunction with ABA Standard 207(a), which states:*

*"REASONABLE [REDACTED] FOR QUALIFIED INDIVIDUALS WITH DISABILITIES (a) Assuring equality of opportunity for qualified individuals with disabilities, as required by Standard 205, requires a law school to provide such students, faculty and staff with reasonable [Redacted] consistent with applicable law." (Emphasis added)*

*The ABA's interpretation of Standard 207 states:*

*"The use of the term "qualified" in the Standard requires a careful and thorough consideration of each applicant and each student's qualifications in*

*light of reasonable [Redacted]. Reasonable [Redacted] are those that are consistent with the fundamental nature of the school's program of legal education, that can be provided without undue financial or administrative burden, and that can be provided while maintaining academic and other essential performance standards." (Emphasis added)*

*Thus, it is abundantly clear that ABA requires only that a law school provide a "reasonable [Redacted]" that is consistent with the fundamental nature of the school's program of legal education and can be provided without undue burden, as opposed to providing any possible [Redacted] that a student with a documented [Redacted] requests. ABA Standard 306(c) does not apply in this instance because it has not been established, nor can it be, that remote participation is needed in order to provide a "reasonable [Redacted]" for your documented [Redacted] and claim of exceptional circumstances that you describe. This is particularly true when other reasonable [Redacted] (such as extra time on final exams, the taking of which was permitted in another state) have already been provided to you.*

*I must advise you again that everything that could and should have been done to accommodate your requests pursuant to applicable law was done, even though ABA Accredited University was under no obligation to provide all of these [Redacted] to you. Additionally, as we have made clear in all of our communications to you, ABA Accredited University has never promised you or led you to believe that you would be entitled to attend ABA Accredited University Law School on a fully remotely basis during the entirety of your law school tenure and any contentions to the contrary are completely unfounded.*

*Sincerely,*

*JUDGE [FIRST NAME REDACTED] [REDACTED]*

*Dean*

215.   I sent a follow-up message to the same people on August 5. As follows:

*CONFIDENTIAL SETTLEMENT COMMUNICATION PERSUANT TO FRE 408*

*Dear Judge [Redacted]:*

*I regret to inform you that absent any offer in compromise from ABA Accredited University, I expect to file my complaint and request for TRO/Injunction Monday morning in the US District Court for the Eastern District of Virginia.*

*Thanks,*
*[Jane Doe]*

216.   I replied to Dean [Redacted], President [Redacted], Dean [Dean 1 Redacted], and
       Dean [Dean 3 Redacted] providing additional medical documentation, (Exhibit K.) to
       support the [Redacted] requests to which I received no reply.

> *CONFIDENTIAL SETTLEMENT COMMUNICATION PERSUANT TO FRE
> 408*
>
> *Judge [Redacted]:*
>
> *Please find the attached [REDACTED] test results and the academic
> [Redacted] recommendations from another medical expert.*
>
> *The documentation previously provided supported each of these [Redacted]
> requests, and it was unfortunate that the university chose not to provide them,
> given that many of them are standard for [REDACTED] or were explained in
> detail without any acknowledgement from the University. The expectation is that
> the University is well versed in this common [Redacted]. None-the-less, this
> should eliminate any doubt you may have regarding the recommended
> [Redacted], none of which would change the fundamental nature of the
> program, if granted by the law school.*
>
> *Both contract law and [Redacted] law weigh in favor of the school providing
> what is requested, and the manner in which the school has dealt with my
> reasonable requests support inferences that [Redacted] and [Redacted]
> occurred with administrators exhibiting the all too common invidious
> motivations.*
>
> *Remarkably, the school has still not addressed the concerns regarding the
> visiting student [option] being available to me thereby demonstrating its intent
> to make it impossible for me to finish the J.D. program. I strongly recommend
> that the school stop the fraudulent conduct, immediately.*
>
> *I remain open to the option of settling this matter before Monday morning, after
> which I will be forced to file. As you know, nothing I have requested is
> unreasonable, individually or when viewed in the totality of the circumstances.*
> *Thanks,*
> *[Jane Doe]*

217.   I discovered a university policy named 12b "IMPLEMENTATION OF II, B.
       FREEDOM FROM [REDACTED] " Paragraph IV, which provides a student alleging
       harassment, [Redacted], [Redacted] to invoke protection of the policy under the
       Provost authority, and I invoked in on August 11. The policy allows the student to
       select a professor to aid in the presentation of evidence. As my complaint has several
       components, each requiring different expertise, I requested three professors to assist
       in each of their respective areas of expertise.

218.    The policy states as follows:

*Members of the faculty, administration, and student body of ABA Accredited University all share in the responsibility of preserving and upholding the principles of academic freedom as defined in Section II of Faculty Statutes and the Statement of Academic Freedom and Civil Liberties of the students of ABA Accredited University. The public expression of prejudice and bigotry toward any member of the University community because of race, color, [Redacted], sex, sexual orientation, gender identity or expression, age, national or ethnic origin, physical or mental [Redacted], marital or veteran status or any other characteristic or status protected by state or federal laws and any unwarranted public accusations or charges against any individual or group within the University that might damage their character and reputation are a threat to the academic freedom of all members of the University community, and those most directly affected may seek redress of their grievances in the following manner.*

*Such cases as those described above that involve relations among students should be referred to the Student Judiciary Board.*

*Such cases as those described above that involve relations between students and faculty or administration, or that involve faculty members or administration should be brought to the Provost.*

*When cases are referred to the Provost, the Provost shall, after counseling the complainant and if the complainant wishes, refer the case to the University Judiciary Board.*

*The University Judiciary Board shall consist of:*

*three members of the University Senate Special Committee on Grievances, shall be appointed jointly by the Chairpersons of the University Senate Executive and Faculty Committees for a term of one academic year;*

*a designate of the Provost, who will serve as chairperson;*

*three student members to serve for one academic year, including the Associate Chief Justice of the Student Judiciary Board, and two students appointed by the faculty advisor to the Student Judiciary Board.*

*In cases involving relations between students and faculty the full University Judiciary Board will meet. In all other cases only the faculty members of the University Judiciary Board will meet.*

*The person bringing charges must assume the burden of gathering and presenting evidence to the University Judiciary Board. Students who bring*

*charges may seek the assistance of a faculty member of their choice in presenting their case.*

*If the University Judiciary Board finds the charges proven, it will recommend penalties to the Provost incases involving faculty or administration, and to the Dean of Students in cases involving students.*

*Any member of the University community subjected to conduct covered by the Harassment Policy may seek redress as set forth in Faculty Policy Series #43.*

219.   I emailed the Provost and cc's the law professors with expertise in contract, [Redacted] law, and constitutional law, in an email entitled: "Charges against Dean [Redacted] and Dean [Dean 1 Redacted]" as follows:

*Dear Provost:*

*I am a rising 2L law student residing in Virginia who is having an ongoing dispute with the law school regarding its treatment towards me. That treatment includes, among other things, the threatened discontinuation of the distance learning education. The conduct of the administrators has caused me significant damages to date which I expect to provide in the form of medical and financial documentation in due time.*

*With this email, I formally charge the University, Dean [Redacted] and Dean [Dean 1 Redacted] of engaging in [Redacted], harassment, and [Redacted] stemming from my religious beliefs and [Redacted] and I am invoking the purported protections of the policies below.  To the extent that the school has never intended to allow me to complete the law degree via distance learning, when it can and should under principles of contract law and [Redacted] law, and it has waited until July 21, 2022 to make the announcement to discontinue distance learning, it has perpetrated a fraud.  To the extent that the university withholds information I have reasonably sought regarding how I may complete my J.D. degree program (without traveling to NY or with minimal time in NY), including its refusal to clarify ambiguities which it propagated regarding the "visiting student" option for "extraordinary circumstances", and it plans to discontinue its distance education services, it is in breach of our implied contract and its duty of good faith and fair dealings.  To the extent that the university sought information about my religious beliefs pertaining to the vaccination under pretext of fairly adjudicating a vaccine policy exemption request, and instead used that information to retaliate, it has engaged in [Redacted]. To the extent that my reasonable [Redacted] requests for my [Redacted] were not properly considered, or were refused under the false pretense that granting them would either cause undue financial or administrative burden to the university, or would somehow change the fundamental nature of the program, it has engaged in [Redacted] [Redacted].*

*Under the University's Policy 12b paragraph (VI), I would like to request the assistance of the following three professors in gathering and presenting evidence of these charges as it pertains to their respective areas of expertise listed: Prof. [Omitted] ([Redacted] Law), Prof. [Omitted] (Contract Law), and Prof. [Omitted] (Constitutional Law). This email is not intended to recite all facts and law pertaining to these charges, but I trust that if these professors are appointed to assist me as the policy seems to suggest they should, they would be privy to the extensive communications between me and the school which support these claims.*

*In the interim, I ask the university to prohibit the law school from discontinuing the distance education services to me in order to stop the pending federal law suit and the overall public embarrassment which will inevitably come from the university attempting to defraud a disabled veteran student and breaching its duty to provide [them] with a reasonable opportunity to earn the degree towards which [they have] already invested $118,000. The university should also place all of my tuition money in escrow until this issue is resolved and until it provides an acceptable detailed graduation plan in order to avoid creating further evidence of fraud.*

*It is disappointing that the conduct of the university has brought our relationship to this deteriorated state, but I remain open to collaborating on and arriving at an acceptable solution. However, given that the school caused me to endure significant undue stress associated with the preparations for the summer final exams, its failure to act in a timely manner in support of my transfer applications, its refusing to answer basic questions regarding a graduation plan including the "visiting" student options, and forcing me to deal with the highly stressful uncertainty over the last month by ruining the little free time I've had with my family over the last year, any settlement from the university which would avoid a federal lawsuit at this point must be accompanied by a payment of considerable damages. As I continue to prepare my complaints to the ABA, DOE and a federal complaint with motions for a TRO and Preliminary Injunction, I now attempt to invoke this policy to ensure I've exhausted all administrative remedies.*

*All I've sought is an opportunity to study law and obtain my degree.  Instead I've been met with ridiculous treatment from day 1, and this is what naturally follows from such treatment.*

*Time is of the essence.*

*Thanks,*
*[Jane Doe]*

220.   As of August 15 there has been no reply.

221. ABA Accredited University has a policy of Non-[Redacted] which it has violated as follows:

> *ABA Accredited University is committed to extending equal opportunity to all qualified individuals without regard to race, color, [Redacted], sex, sexual orientation, gender identity or expression, age, national or ethnic origin, physical or mental [Redacted], marital or veteran status (characteristics collectively referred to as "Protected Characteristic") in employment and in the conduct and operation of ABA Accredited University's educational programs and activities, including admissions, scholarship and loan programs and athletic and other school administered programs. This statement of non[Redacted] is in compliance with Title VI and Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, [Redacted] of the Rehabilitation Act of 1973, the [Redacted] Act Amendments Act, the Age [Redacted] Act and other applicable federal, state and local laws and regulations relating to non[Redacted] ("Equal Opportunity Laws"). The Equal Rights and Opportunity Officer is the University's official responsible for coordinating its overall adherence to Equal Opportunity Laws.*

222. I have had several communications with ABA and DOE and those are included below with the law dated July 28.

> *Ms. Winek [ABA Consel],*
>
> *Thank you for your reply.*
>
> *May I obtain copies of any minutes which were recorded from the meeting discussing Standard 306 in Feb?*
>
> *May I have the contact information of the student representative so that I may correspond directly with him/her?*
>
> *The Socratic method has been alive and well throughout the COVID period when all programs have been exclusively online, and to that extent, what specifically is the rationale of ABA in reinstating this 306 standard, has it conducted any surveys to inform itself on the extent of any negative impact on students' lives who are currently in programs and who are now unable to continue because the school changes the requirements mid-program?*
>
> *To the extent that the community takes pride in having been entrusted by the general public to regulate itself, what is A.B.A. doing to protect students who will otherwise be defrauded from their tuition money from schools that will change their standards while the program is ongoing?*

*Wouldn't it be reasonable to allow the students who started under one set of rules to continue under those same rules?  Of course, if necessary to revert to the unnecessarily strict distance learning limits, that could be reimplemented for new students, correct?*

*To the extent that A.B.A. has not sought out the information regarding the extent that this change will negatively impact students who have invested hundreds of thousands of dollars in a partial J.D. degree, who are now prevented from completing the degree, it seems to me that A.B.A. is implicit in the law schools' fraud unless it intervened on behalf of the students.*

*If you are saying that the ABA Standard 306 allows for accredited law schools to obtain waivers to allow students with disabilities to exceed the limit on distance learning credit hours,  it seems that I would qualify.*

*Does A.B.A. enforce as part of its accreditation scheme that universities apply and grant these types of waivers for students with disabilities and has ABA Accredited University law applied for any on my behalf or otherwise?*

*Is ABA still allowing for waivers for Covid and if so can you share which universities have applied and received the waivers, and if ABA Accredited University is among them?*

*Lastly, are there any standards which prevent ABA Accredited University Law from advertising remote learning, on its public website, and after offers from students are accepted, and tuition is paid, discontinuing those services, and if so, who handles such complaints?*

*As I indicated, all of these questions are related directly to the larger question as to whether the legal industry can be entrusted to regulate itself, and the circumstance that I've been placed in by ABA Accredited University and potentially ABA is untenable. I am seeking your intervention to find a solution. If that is not your office's role, I'd ask that you please escalate this to whomever within the ABA is charged with handling these types of issues.*

*The refusal of ABA Accredited University law to provide me with a "graduation plan" given my residence in Virginia, especially since I've been asking for clarity on this issue for the last year, and they have now decided to announce with less than a month before the fall semester begins, that they will discontinue distance learning, after most transfer deadlines have passed, reflects negatively on the legal profession, the schools entrusted to educate future lawyers, and those self-governing bodies which regulate them.*

*Thank you for your consideration of this most urgent matter. As I told the university, I will need to proceed with litigation in Federal court unless this issue is resolved immediately.*

*Thanks,*
*[Jane Doe]*

*July 13: 2:42 p.m.:*

*Dear Mr. [Doe]:*

*There is a law student member on the Council.  The Standards Committee is made up of Council members and may include the law student member of the Council.  If you are interested in serving as the law student member on the Council in a future year, you would need to contact the ABA's Law Student Division as they nominate law students to serve on the Council.*

*Your feedback will be shared with the Committee ahead of its August meeting as it considers it 2022-2023 agenda.  The Council will vote on the Committee's agenda in August.  The revisions to Standard 306 were voted on and approved by the Council in February 2022; there is nothing substantive about distance education that will be voted on by the Council in August.*

*However, when revisions are made to Distance Education-related Standards, a Notice and Comment notice will be posted at the link I sent to you and you are welcome to submit a comment.  All comments will be considered by the Standards Committee and Council before revisions are approved by the Council.  Due to this Notice and Comment process for any revisions to the Standards, immediate changes to the Standards are not possible.  Notice and comment opportunities before Standards revisions are made are a US Department of Education requirement.*

*The Council has an open session meeting that is open to the public.  Here are the instructions for registering for the Open Session on Friday, August 19th from 1-3 pm Central Time: https://americanbar.zoom.us/webinar/register/WN_M5swT1xYTmW5iqWtz9PcEg*

*Sincerely,*
*Kirsten Winek*


*Kirsten M. Winek, J.D., Ph.D.*
*Accreditation Counsel*
*Section of Legal Education and Admissions to the Bar*
*American Bar Association*
*321 North Clark Street*
*Chicago, IL 60654*
*312.988.6714*

*kirsten.winek@americanbar.org*
*http://www.americanbar.org*

223.   On July 13, 2022 11:32 AM, Doe wrote to ABA:

*Dear Ms. Kristen Winek:*

*Thank you for your prompt reply.*

*Is there any law student representation on the standards committee?  If not, I'd like to be elected or appointed, as the rules permit, as soon as possible. If you would please advise as to the process or procedure.*

*Please confirm my feedback will be considered by the committee and council prior to any vote on this in August and not pushed out to the next voting period.*

*I would like my correspondence to the ABA standards committee to be considered a legal demand for the immediate change of this unconstitutional standard, which I will similarly make to the Department of Education.*

*If you would be so kind as to give the reply to this demand the weight that would normally be accorded a legal demand. Please know that the urgency of this matter will warrant an immediate suit seeking a court ordered change if the demand is not met. I will plan to file the action in the US District Court for the Eastern District of Virginia the day after the August vote if the demand is not met by the council unless I am compelled to act sooner.*

*Are the meetings open to the public?*
*Thanks for your service!*

*Dear Mr. Herman Bounds, Jr:*

*If you would,  please consider the correspondence below and above as a legal demand to the Department of Education that it order the ABA Council to abolish the portion of the Standards (306 and otherwise) which impose a distinction between distance and in-person learning and any related restrictions on distance learning requiring compliance for the  accreditation of law schools. The reason that the Department of Education should  find distance learning standards unconstitutional are stated herein (below).*

*Please provide a formal response to the demand. Once I receive a response to the demands from DoE and ABA, assuming they are not immediately met, I will seek a settlement conference with these organizations, and then initiate suit seeking declaratory and injunctive relief in Federal Court as necessary.*

*I have cc'd the Deans of ABA Accredited University ABA Accredited University School of Law with whom I have been attempting to address these unconstitutional standards, so they may continue to be aware of my invitation for them to act in support of this reform.*

*Thank you for your service!*

*Best regards,*
*[Jane Doe]*

*Cc: Dean [First Name Redacted] [Redacted]*
*Dean Julian [Dean 1 Redacted]*

*Ps. Deans [Redacted] and [Dean 1 Redacted], if at anytime you would like to seek an exception from the ABA Standards Committee and the  NY Court of Appeals to allow for me to continue my legal education online, as you contracted to provide in exchange for tuition, either as an [Redacted] for a [Redacted] or because you know it is the moral and righteous thing to do, then we can all treat this matter as less urgent.*

*Pps. This communication should be treated as confidential to the extent that it references a [Redacted].*

224.     **On July 13, 2022 11:32 AM, ABA wrote:**

*Dear [Ms. Doe]:*

*Your email below was forwarded to me.  I will pass along your comments to the Council's Standards Committee.  The Committee is considering further revisions to Standard 306. When these revisions are proposed, there will [be]notice and comment period and you are welcome to submit comments on these revisions.  Notice and Comment notices are posted here: https://www.americanbar.org/groups/legal_education/resources/notice_and_comment/.*

*The US Department of Education contact is as follows:*
*Herman Bounds, Jr.*
*Director, Accreditation Group*
*Office of Postsecondary Education*
*herman.bounds@ed.gov*

*Sincerely,*
*Kirsten Winek*

*Kirsten M. Winek, J.D., Ph.D.*

*Accreditation Counsel*
*Section of Legal Education and Admissions to the Bar*
*American Bar Association*
*321 North Clark Street*
*Chicago, IL 60654*
*312.988.6714*
*kirsten.winek@americanbar.org*
*http://www.americanbar.org*

225.    On July 12, 2022 at 10:32 AM, Doe wrote:

*To: ABA Legal Education and Admissions to the Bar*

*Subject: Standard 306 and ABA's Position on Distance Learning*

*Dear Ms. Holmes:*

*I am writing to ask if there is an opportunity to serve as a witness to present testimony to the Standards Committee prior to any vote expected in August on the proposed changes to Standard 306?*

*I would like to advocate as a law student for the position that the distance learning requirement be eliminated entirely and immediately from ABA Standards as it is no longer necessary to distinguish between in person and remote classes.*

*There are presumably many law students around the country, like myself, who live in one geographic location and are enrolled in a law program in another location. This scenario emerged as an unintended benefit of the COVID response.  As the schools posture to protect their antiquated business models by nonsensically attempting to transition  back to the antiquated days of in person learning (and make no doubt about it, they are), students like myself are at risk of having our aspirations of obtaining a law degree unjustly thwarted.*

*The distance learning restriction does not satisfy even the most lenient of constitutional standards of review for governmental action in that it is not at all "rationally related" to the objective of producing competent attorneys. To say that it is would be tantamount to admitting that universities have been producing insufficient lawyers during the pandemic due to their distance education.*

*The standard is unfairly discriminatory against people with nontraditional families. In my case, I would need to abandon my parental obligations in a shared child custody arrangement to move from VA to NY to complete the program which has thus far been offered remotely without any issue.*

*The 306 standard acts as an unreasonable force against certain types of law students, is contrary to the principles of the free market, and discourages diversity. Students should be free to attend universities in any part of the country without having to move to a particular location, especially when, at times, doing so would cause substantial and unnecessary hardships and conflicts between school and family obligations. Undoubtedly, minorities face the disproportionate burden of these discriminatory policies.*

*By limiting law students to programs in their geographic areas, you significantly diminish the opportunities of these law students to obtain diverse educational experiences, which especially negatively impacts those who have nontraditional family constraints.*

*The 306 standard is being relied upon by many law schools as pretext for protectionist policies which are designed to bring the students back onto campus only to serve the university's misguided belief that it is essential to their current business models. While I predict that these protectionist university policies will lead them to the organizational graveyards to join the likes of inflexible organizations America Online, Blockbuster Video, Yellow Cab, etc., I don't have the luxury of waiting for that inevitability.*

*The fact that all the law schools implemented the exact same policies during Covid, and are taking the exact same approach to terminating the distance learning, will likely be found as evidence of collusion implicating antitrust statutes.*

*The relationship between law students and law schools are primarily contractual, and law schools attempting to change the terms of their programs mid-program for irrational reasons certainly implicate contract law. Law schools will undoubtedly point to the ABA standards to justify changing their program terms. Although this will not relieve them of their contractual obligation, it does provide them with a false sense that they are doing the right thing, and can pass the buck to the ABA (or even the highest courts of jurisdiction). For this reason, law students are looking to ABA to provide moral leadership on this topic.*

*The distance learning distinction also has a negative impact on students with disabilities, and although I note the proposed changes have a section to address disabilities, you should know that law schools are already taking refuge in the idea that the standards will not be implemented for years to come. Unless*

*important topic, I would encourage ABA's leadership to promote immediate change.*

*I will prepare testimony if the board will support my appearance at the August meeting to give such testimony prior to a vote on this matter.*

*None-the-less, I urge the Standards Committee to IMMEDIATELY eliminate the unconstitutional distance learning restriction, as the distinction between in person and distant learning is no longer significant given the technology advances and the precedent established during COVID.*

*In the meantime, would you please provide the name of the office within The Department of Education which authorizes the ABA to enact standards for legal education, and any contact information you may have at that office.*

*I have little choice but to make a similar plea to that office to advocate for a timely resolution to this pressing issue which many law students around the country are facing. If necessary, I am prepared to bring these issues before a federal court to have them addressed.*

*I have cc'd Dean [Redacted] and Dean [Dean 1 Redacted] of ABA Accredited University, Maurice A. Dean School of Law (the university I attend) and invite them to join in advocating to the Standards Board to eliminate the distance learning distinction from the standards on behalf of similarly disadvantaged students like myself who are negatively impacted by this unconstitutional policy.*

*Thank you,*
*[Jane Doe]*

*Cc: Dean [First Name Redacted] Prudent*
*Dean Julian [Dean 1 Redacted]*

226.   ABA Accredited University tortiously interfered with my right to transfer, by having faculty refuse to write letters of recommendation which are required by ABA law schools in support of transfer application, and by willfully missing deadlines for transfer paperwork. I have not been accepted to any Northern VA area schools, two of which were impacted directly by ABA Accredited University's intentional delay in handling the transfer paperwork.

227.   ABA Accredited University law has a faculty in charge of distance learning and has discussed their transition to distance learning in an article published on its website which stated in pertinent part:

*"Communications with, Professor of Law and Associate Dean for Distance Education, for a Q&A to talk about distance education at ABA Accredited*

*University Law and the shift to all online classes in response to the coronavirus pandemic.*

*Professor Colombo recently published "Teaching a Synchronous Online Business Organizations Course to J.D. Students: A Case Study." The article will be published in the ABA Accredited University Law Review.*

*He also teaches in ABA Accredited University Law's Online Health Law and Policy degree programs.*

*How did ABA Accredited University Law respond to "NY Pause" and the shutdown of the schools in New York?*

*ABA Accredited University Law responded quickly and effectively. Our administration deserves a lot of credit for how it handled the sudden shutdown. The dean's office was very proactive. It had already reached out to me two or three weeks before the University shutdown occurred. The administration saw the writing on the wall and wanted us to be as prepared as possible for a potential shutdown.*

*Thus, we were already in the process of preparing our faculty for a transition to online education before the University closed. We had already circulated a list of resources, including links, training videos and articles to help instructors get up to speed on online teaching.  I personally fielded numerous calls and emails from colleagues to help them learn how to best use distance learning technologies to conduct their classes.*

*All this helped make the transition a little less bumpy.*

*What was ABA Accredited University Law doing with online education before the pandemic?*

*One of the reasons ABA Accredited University Law was able to transition quickly, and fairly easily, to online education this semester was because it was already offering a number of online classes.*

*In 2014, we launched two fully online programs in Health Law and Policy: an LLM in for lawyers who wanted to continue their studies in the field, and an MA program for non-lawyers in the health care field.*

*It is a little more difficult to launch online learning in a JD program because there is heavier regulation of JD programs by the ABA and the state bars, (although the rules are being slowly liberalized over time).*

104

*At the JD level, we started small with one online Course taught by Professor Vern Walker a few years ago. Shortly thereafter, I too created and taught a small JD seminar course.*

*Our most ambitious online JD offering to date, rolled out just last summer, was Business Organizations, a 4-credit, bar-tested course.*

*The online business organizations summer course went over smashingly with students. Most were grateful for the opportunity to take the course online. Many said that they would not have been able to take the course otherwise. We found that many students said they learned better in this format.*

*How did your experience with these online programs help
    ABA Accredited University Law transition to all
        online learning this semester?*

*Because we already have this online experience, we had in-house experts and some instructors, including me, who were already familiar with the technology used for online learning and knew what was already working for our students. That gave us a little bit of a head-start. It gave us a strong bench of faculty to support each other and the students during this transition.*

*ABA Accredited University Law students benefited from this – from the Law School's efforts as a pioneer in the field of online education.*

*How successful was the switch to all online classes this
        semester?*

*I think the switch has been very successful.*



*Admittedly, the circumstances have not been ideal. For example, this semester I am teaching contracts, and I have 92 students in the class. That's not the kind of*

105

*class I would have ever thought that I would teach online. I prefer to limit online classes to 25 students, maximum.*

*So, while it wasn't perfect, I think our online classes this semester nevertheless went well for all the reasons discussed previously.*

*Some of us know how to use the technology, and everyone else committed themselves to learning the technology. We do what we can to make the classes engaging and interactive. Indeed, you can do things online that you can't do in person. There are lots of online tools that are superior to what is available in the real-life classroom. Plus, there is a comfort level in learning from home.*

*It will be interesting to see what the students say about this experience. A lot of them will find that they prefer this, and they will want more online learning opportunities, while others are craving human interaction and will welcome a return to more traditional classrooms.*

*What are some things that have surprised you about online legal education?*

*This experience has challenged my assumptions of legal education.*

*Done correctly, the class is more like a conversation. Maybe that's because the students are less intimidated, or maybe it is because since they are alone, and not sitting next to other students, they are less distracted by their neighbor's activities. In a typical in-person class, only a fraction of the class contributes on a regular basis without being called on. But with the online classes, many more students are engaging, participating and asking questions.*

*In a lot of ways, pedagogically, teaching online is more effective than teaching in the classroom. Ultimately, I think many students will find online classes superior to the traditional classroom.*

*ABA Accredited University is an EO/AA/[Redacted] educator and employer and does not discriminate on the basis of race, color, national and ethnic origin, or [Redacted], sex, sexual orientation, gender identity or expression, age, physical or mental [Redacted], marital or veteran status in administration of its educational policies, admissions policies, scholarship and loan programs, and athletic and other school-administered programs. ABA Accredited University admits students of any race, color, national, and ethnic origin to all the rights, privileges, programs and activities generally accorded or made available to its students. "*

106

228.  ABA Accredited University law had a website which indicated all students are "distance learning," yet they have removed the message from the website.

229.  ABA Accredited University has a feature on its website which allows student to see earlier versions of the website, however, this web page appears to have been administratively removed from the site from which we can infer that ABA Accredited University does not want any reference to that web page.

230.  I relied on that web page in making my decision to enter into the contract.

231.  ABA Accredited University, like many universities, consciously decide not to enter into express contracts with its students from which it can be inferred that they would like to maximize the power indifference between university and student, and maintain the maximum amount of flexibility to wiggle out of any terms of the implied contract.

232.  Every contract which requires cooperation in order to perform, like the contract between plaintiff and university, the parties are under a duty to cooperate.

233.  Defendant ABA Accredited University breached its duty to cooperate, by refusing to clarify the terms and conditions of its "visiting student" program.

234.  I assert that ABA Accredited University never had any intent to allow me to complete the program remotely, but refused to state so until July 21.  The concealment of this material fact is an essential element to the charge of fraud.

235.  ABA Accredited University law represented to the public as fact that all students are "distance learning," and also that student may complete the degree program, in extraordinary circumstances, by visiting another university.

236.  I continuously expressed to university officials including the law school dean and president of ABA Accredited University the fact that I could not relocate to New York.

237.  At each opportunity to respond to me with options for completing the J.D. program, they refused to offer a solution, or cooperate at all, while at the same time, concealing for months and months the fact that they had no intent to allow me to finish the program remotely thereby fraudulently inducing me to remain enrolled at considerable expense, knowing it would not deliver the value of the J.D. education.

238.  In its omission of the material fact that it would discontinue distance learning, ABA Accredited University knew I would rely upon the possibility of them performing as I expected by delivering the full education via distance learning, knowing that fact upon which I relied was false.

239.  ABA Accredited University knew that I would rely on this false fact, that ABA Accredited University would continue to offer me distance learning knowing my

constraints, and concealed its intent to discontinue that program for me, intending for me to rely on their misrepresentation by omission.

240.   I did not know that they would discontinue the distance learning and I reasonably relied on the fact of ABA Accredited University providing distance learning, both when I entered the contract and performed, and also continuing throughout.

241.   I had no reason to believe that ABA Accredited University law would arbitrarily not continue to provide me with the the vaccine waiver, while at the same time requiring me and all students to be vaccinated, facts upon which they knew I relied upon for my initial and continuing investment in the university.

242.   Relying on these false and material representations, and the facts omitted, by ABA Accredited University, I incurred significant damages to be proven at trial, including physical injury, which ABA Accredited University could foresee, including heart palpitations, pressure in my chest, and overall persistent high levels of stress and [Redacted], including fear of an extraordinarily high risk of impending financial loss.

243.   Had ABA Accredited University simply cooperated with me and confirmed that it would either continue distance learning for me, or even provided any possibility of me completing the degree in another way, I would not have had these physical injuries and health problems, and therefore, ABA Accredited University's tortious conduct is the direct and proximate "but for" cause of my injuries.

244.   ABA Accredited University knows that I seek this education to obtain the J.D. degree and knows that if it does not provide me a reasonable opportunity to obtain the degree, it will be unjustly enriched having accepted my full tuition money.

245.   ABA Accredited University made the material misrepresentations about its distance learning program to deceptively influence me and other students into enrolling in their university, during COVID, when the future viability of its business model was at risk.

246.   Now that the COVID conditions have improved, ABA Accredited University, instead of allowing the students who started during the pandemic to finish the program the same way as they started, via distance learning, feels free to act in complete disregard to the reasonable expectations of its customers, and has shown no regard for the loss in investment its students will occur, and which I will incur, as a result of their unilateral attempt to change the terms.

I declare under penalty of perjury that all statements contained in this declaration are true and accurate to the best of my knowledge.

Date August 18, 2022
By:

/s/ Jane Doe

## *PRO SE* LITIGANT CERTIFICATION

**PURSUANT TO LOCAL RULE 83.1(M)**

**Each document filed with the court by a *pro se* litigant shall bear the following certification:
CERTIFICATION**

I declare under penalty of perjury that, notwithstanding my objection to the requirement, that no attorney has prepared, or assisted in the preparation of this pleading.

## CERTIFICATE OF SERVICE

I certify that on August 18th, 2021, I have filed the foregoing document, **DECLARATION OF JANE DOE** with the clerk of the U.S. District Court, Eastern District of Virginia, for filing and for preparation of the summons to be picked up and served on Defendants via private process server.

Additionally, I certify that on August 18th, 2022, I have served a true copy of this Complaint via email on defendant's agents, officers or counsel as follows:

To ABA Accredited University, President Susan [Redacted] at Susan.[Redacted]@ABA Accredited University.edu, and Dean of the ABA Accredited University, ABA Accredited University School of Law, Dean [First Name Redacted] [Redacted], at [First Name Redacted].[Redacted]@ABA Accredited University.edu., and/or to their address at ABA Accredited University, ABA Accredited University School of Law, 1000 [City Redacted] Tpke, [City Redacted], NY 11549.

To Defendant American Bar Association, Accreditation Counsel, Section of Legal Education and Admissions to the Bar, Ms. Kirsten M. Winek, J.D., Ph.D. at kirsten.winek@americanbar.org, and/or to her mailing address, American Bar Association, 321 North Clark Street, Chicago, IL 60654

To Defendant, United States Department of Education, Office of Higher Education, Mr. Herman Bounds at herman.bounds@ed.gov, and/or at the main mailing address, US Department of Education, Office of General Counsel, 400 Maryland Avenue, S.W. Room 6E300, Washington, DC 20202-2111, and/or also to the United States Attorney General, Main Justice Building, 10th & Constitution Ave, NW Washington, DC 20530, and the local US Attorneys Office, United States Attorney for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria VA 22314.

Service will be made to or at the addresses once a stamped copy is received from the court with the summons.

By: /s/ Jane Doe