FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA ALEXANDRIA
DIVISION

2022 AUG 25 A 10: 31

| | | |
|---|---|---|
| Jane Doe, a pseudonym,<br><br>Plaintiff,<br><br>v.<br><br>ABA Accredited University,<br>American Bar Association,<br>Department of Education<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **REDACTED**<br><br>Civil Action No. :22-cv-00947-PTG-JFA |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE EMERGENCY CERTIFICATION FOR INTERLOCUTORY APPEAL (REDACTED)(CORRECTED)**

Plaintiff, [REDACTED], under pseudonym, 'Jane Doe', *pro se*, respectfully submits the following Memorandum in Support of Emergency Motion for Reconsideration, or, in the Alternative Emergency Certification for Interlocutory Appeal (Sealed).

[REMAINDER OF PAGE LEFT BLANK]

Table of Contents


**INTRODUCTION ........ 3**

**STANDARD OF REVIEW ........ 5**

**A. Motion for Reconsideration ........ 5**

**B. Certification for Interlocutory Appeal ........ 6**

**PROCEDURAL HISTORY ........ 6**

**ARGUMENT ........ 7**

**I. The District Court erred in Denying Plaintiff's Emergency Motion for TRO ........ 7**

**a. Plaintiff has a substantial likelihood of success on the merits of the claims alleging fraud, Breach of Contract, Discrimination, Retaliation, Violation of Consumer Protection Acts (VA and NY), Unconstitutional Adoption, Enforcement and Regulation of ABA Standards, and Unlawful Restraint of Trade ........ 7**

**b. Plaintiff demonstrated that plaintiff will suffer irreparable harm absent immediate injunctive relief ........ 9**

**c. Plaintiff demonstrated that there is no possible harm to defendant ........ 10**

**d. Plaintiff demonstrated that public interest compels granting the TRO ........ 10**

**II. The District Court erred in Denying Plaintiff Privilege to Proceed in Forma Pauperis ........ 13**

**III. The District Court erred in not granting immediate relief to file under pseudonym, to exceed page limits and file electronically by USB ........ 13**

**IV. This case presents a controlling question of law ........ 14**

**V. There are substantial grounds for difference of opinion on these pivotal questions 15**

**VI. Immediate appeal will material advance the ultimate termination of this litigation ........ 15**

**VII. Plaintiff should be afforded some leniency with the rules of the court given the minimal training, relatively minimal time to prepare given the tortious conduct of the defendants ........ 16**

**CONCLUSION ........ 18**

## INTRODUCTION

Plaintiff hereby moves the Court to Reconsider its August 22, 2022 Order (1) Denying Plaintiff's Motion for Emergency TRO, Striking Plaintiff's Brief in Support of Preliminary Injunction, and directing Plaintiff to submit a Revised Version of said brief no later than August 24, 2022, today, its August 23, 2022 Order (2) Denying Plaintiff's Request to Proceed *in forma pauperis*, and (3) the Court's decision not to immediately grant relief requested in Plaintiff's Motion to File Under Pseudonym, to Exceed Page Limits, and to File Electronically Using USB.

These actions and inactions by the Court will effectively result in plaintiff suffering a "manifest injustice," causing plaintiff to unnecessarily miss at least an entire semester of a J.D. program (and if plaintiff cannot transfer locally, cause plaintiff to pursuit of a law degree) - which is now three days into the semester - and denying plaintiff the money plaintiff expected to receive from the Federal Student Aid to live and support the family; which will naturally be unavailable when plaintiff is forced to withdrawal from the semester. Plaintiff restates for the Court that it is impossible to relocate to N.Y. given the Child Custody Order, and it is unjust to make plaintiff choose between the two, or to cause plaintiff to incur cost of this semester by attending in person for a few days until any preliminary injunction can be rule upon, forcing plaintiff to incur substantial risk of total loss and damage to the school transcript, by passing the withdrawal deadline, unless the Court grants the requested relief.

The Order Denying the TRO is contrary to the "letter" and the "spirit" of the law, when, as is the case here, plaintiff put forth a compelling argument that as a student enrolled in an ABA approved law program, with special circumstances, plaintiff is denied the opportunity to continue studies because the law school unilaterally and in bad faith cancelled both the distance learning and its vaccine exemption requirement, at the "eleventh hour," and worse, then refused to provide any information about other options, even those published in the university literature,

such as the "visiting student" option. (Doe Decl. ¶¶1-246.) By refusing to communicate options, the school is in breach of its duty of good faith and fair dealing and to cooperate and the Court should provide the requested relief.

The Order denying *in forma pauperis*, which will require plaintiff to pay $400 filing fee, when plaintiff will already have to go through extraordinary steps of trying to sell household possessions, or borrow money, just to pay September's rent, is an error. Similarly, by requiring plaintiff to print and file paper copies of all documents in order to proceed, the Court causes plaintiff to spend extremely limited funds or borrow money, unnecessarily, by denying the plaintiff the right to file electronically, as the defendants are allowed to do, and this not only places plaintiff on unequal footing with the opposing parties, but will effectively cause plaintiff to withdraw the case; for the Court will have effectively made it impossible for plaintiff to proceed.

Plaintiff has taken two legal research, analysis, and writing courses at the ABA accredited law school, in each of which the students were given a semester (15 weeks) to write a brief, and an appellate brief, respectively. Plaintiff earned a 'B', and a 'B+' in those two courses, respectively, and avers that in each class, students were given an opportunity to incorporate the professor's feedback into the papers.

Here, in contrast, plaintiff had four weeks from the time of the university's decision to discontinue distance learning, to create a filing of 858 pages, including sealed and redacted versions of three motions, associated briefs, a complaint, and a declaration. Plaintiff provided the best effort given the fact that plaintiff is not an attorney and has not found any attorney willing to take the case *pro bono* (or even otherwise, presumably because of the sensitivity of the topics and the parties). The quality of plaintiff's submission is commensurate with plaintiff's training to

date, given the time constraint caused entirely by the defendants' own actions, and the complicated procedures involved with filing under seal. If plaintiff is to have access to justice, as a *pro se* litigant, interacting with the court as best as reasonably can be expected under the circumstances, plaintiff should not be held to account for 'delays' caused by the defendants in these particular circumstances; held to account such as by the Court denying the necessary relief.

Admittedly, plaintiff's filings were more verbose than would have been a final 'best' product, but given the fact that plaintiff worked "around-the-clock" for four weeks on these filings, (sacrificing time spent with plaintiff's son and looking for income during the one month recess from the J.D. program), while at the same time, negotiating in good faith with the university, ABA and DOE, to explore alternatives, which took time, the Court's Order proclamation that Doe's delay denied the Defendants an opportunity to be heard, given the urgency of the matter, appears to be an error.

To the extent that the immediate or reparable harm is unclear to the court, Plaintiff and plaintiff's family are relying on Federal Student Aid money for living expenses over the next 4 months, and plaintiff has been unable to secure even a part time income source, at a law firm or otherwise, not knowing what plaintiff's future in the law program will be or the direction to take plaintiff's career. The compelling need for a TRO is clear, and plaintiff respectfully requests the Court reconsider its decisions or certify the case for an interlocutory appeal. Denying the TRO will effectively condone the university's abhorrent conduct and give them the exact and malicious result they seek.

## STANDARD OF REVIEW

### A. Motion for Reconsideration

Under Federal Rule of Civil Procedure 54(b), a district court may reconsider an interlocutory order at any time before entry of judgment adjudicating all the claims, if the

moving party establishes one of three circumstances: (1) new evidence has been discovered at a later stage in litigation; (2) there has been a change in applicable law; or (3) the court has committed clear error causing "manifest injustice." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

**B. Certification for Interlocutory Appeal**

28 U.S.C. § 1292(b) allows interlocutory appeals of orders that are not otherwise appealable if the court certifies that the order to be appealed "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). § 1292(b) affords courts broad discretion to grant interlocutory appeal, as "is reflected in the open-ended terms used to define the statutory criteria." *In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019). When a district court determines that the statutory criteria are present, however, it has a "duty to allow an immediate appeal to be taken." *Id.* The Fourth Circuit has made clear that "certainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin v. CSX Transp.*, Inc., 1989 U.S. App. LEXIS 20859 at 16 (4th Cir. 1989) (unpublished). 28 U.S.C. § 1292(b) grants district courts "circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *DiFelice v. U.S. Airways, Inc.*, 404 F. Supp. 2d 907, 908 (E.D. Va. 2005) (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 46 (1995)).

## PROCEDURAL HISTORY

On August 19, 2022, Plaintiff, moved the Court under Local Rule 5, *inter alia*, for an Order granting permission to sue defendants, ABA Accredited University, the American Bar

Association (ABA), and the Department of Education (DOE) under pseudonym, as well as to use a pseudonym to conceal the name of the ABA Accredited Law School, and to file a complaint, motions and supporting memorandum of law with the pseudonyms and partially under seal, with portions of the filings redacted in the versions to be made public, and unredacted versions to be kept under seal. On that same date, Plaintiff filed an Emergency Motion for a TRO, and also asked the Court for leave to Exceed the Page Limit on the briefs, and to file Electronically Using USB. Also on August 19, 2022, Plaintiff sought leave of court to proceed *in forma pauperis*. On August 22, 2022, the Court Denied Plaintiff's Motion for a TRO, ORDERED Plaintiff's Memorandum in Support of Preliminary Injunction (Dkt. 7) STRICKEN noting its lack of compliance with Local Rule 7(f) and further ordered that Plaintiff shall file a revised Memorandum in Support of Preliminary Injunction (Dkt. 7) in compliance with all Local Rules of the Eastern District of Virginia and the Federal Rules of Civil Procedure no later than Wednesday, August 24, 2022. On August 23, 2022, the Court denied plaintiff '*in forma paueris*' status.

## ARGUMENT

### I. The District Court erred in Denying Plaintiff's Emergency Motion for TRO

For the following reasons, plaintiff asserts that the district court erred in denying the TRO.

**a. Plaintiff has a substantial likelihood of success on the merits of the claims alleging fraud, Breach of Contract, Discrimination, Retaliation, Violation of Consumer Protection Acts (VA and NY), Unconstitutional Adoption, Enforcement and Regulation of ABA Standards, and Unlawful Restraint of Trade**

The Court must first determine that Plaintiff is likely to success on the merits. The State Supreme Court has explained that "likelihood of success on the merits" does not actually equal "success on the merits":

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove their case in full at a preliminary injunction hearing ... and the findings of fact and conclusions of law made by a court granting a preliminary injunction are :not binding at trial on the merits. Id. at 395." *University of Texas v. Camenisch*, 451 U.S. 390,394 (1981).

The court Order of August 22, 2022 did not address the merits of this prong of plaintiff's arguments, but plaintiff will simply incorporate the Doe Decl. as if fully set forth herein, and argue that plaintiff has demonstrated sufficient facts for the court to conclude that the defendants have acted in bad-faith. The bad faith conduct is extensively described throughout the Doe Decl. but to emphasize one specific point, none of the defendants have put forth any solutions, nor have they even come to the negotiating table, and the university, in refusing to provide any clarification for plaintiff as to any options for plaintiff to finish the J.D. program even "minimal" time in New York, or to clearly offer plaintiff a course of action which would include time spent at another university per its own published 'visiting student' option, the university acts in bad-faith. Not only did the defendant university refuse to provide a clear path for plaintiff to obtain the J.D., it created new rules, around "visiting students" more restrictive than those published in the handbook, specifically to target plaintiff. That conduct amounts to bad faith and necessitates intervention by the Court. There is planning required to obtain an income source and defendant university's actions unreasonably leave plaintiff in an impossible financial position, having relied on the good faith of the university.

**b. Plaintiff demonstrated that plaintiff will suffer irreparable harm absent immediate injunctive relief**

Plaintiff will suffer irreparable harm absent injunctive relief because Defendants will be free to continue their tortious conduct, because a price cannot be put on Plaintiff's career or legal education. The Defendants do not have infinite or even exorbitant means of compensating Plaintiff for the harm they have caused and will continue to cause absent a protective order or injunction. Courts have held that "[i]rreparable injury" must be "both certain and great; it must be actual and not theoretical." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). When a plaintiff faces "certain and imminent" injury with no way to recover the loss, it weighs in favor of finding "irreparable injury." Plaintiff will sustain an immediate and irreparable injury if not allowed to start the semester on August 22, 2022. Plaintiff has no other income source and is relying on the student loans predicated on the continued enrollment in the program. Furthermore, there is no way to estimate the amount of loss that plaintiff will incur in lost opportunity caused by Hofstra, or other defendants' refusal to intervene, and the defendants do not have infinite funds available to compensate plaintiff. No amount of money would provide plaintiff an equitable solution and the court intervention is required to prevent the immediate harm.

For purposes of the TRO, the plaintiff is simply trying to continue in a law program for which plaintiff already invested over $118,000 and a year of effort towards a goal which will be of no value if the J.D. is not ultimately obtained. If plaintiff is forced to disenroll, which will be imminent absent any TRO granted by the Court in the coming few days, plaintiff will lose student aid for which plaintiff planned to use to cover the family's living expenses. Absent a loan from a family member, or finding an income source, plaintiff and family could become homeless in less than a month. This cannot be acceptable to the Court.

**c. Plaintiff demonstrated that there is no possible harm to defendant**

The Defendants will not be harmed by issuing the requested an order, most substantially, directing them to turn on the zoom which they have used for every class for the last two years., in order to preserve the *status quo*. There is no plausible argument that could be made where extending the distance learning as requested would undermine the quality of the education, the integrity of the ABA accreditation process, or the DOE's ability to regulate the ABA. The university would not be harmed by an order compelling it to provide a professor to oversee and assistant with this case, or by compelling it to offer plaintiff credit for the effort. Afterall, the university's harassment policy allows a complaining student to select a staff member to assist with the presentation of the case, and the school literature allows for independent study's under the supervision of a faculty member. This experience will obviously provide the plaintiff with a legal education experience substantially similar to the clinical work and independent studies which the university advertises as core to its offering. The ABA and DOE cannot be harmed by an order not to enforce the distance learning standards, when it has already done so for over a year, and this newest version of those standards allow for a university to provide and document variances as accommodations for exemption (specific to the distance learning). This implies that law schools, operating in good faith, and in compliance with ABA standards, are likely providing students who request distance learning as an accommodation, the exact accommodation they request. Plaintiff's university can be compelled to act in good faith and provide the plaintiff what is needed to continue in the program and maintain *status quo* during litigation.

**d. Plaintiff demonstrated that public interest compels granting the TRO**

A variety of Public Policies and Public Interests will be furthered by granting plaintiff the TRO.

Only where a right created by Congress has been obliterated may a court of equity intervene to protect the rights of individuals or the public. *Order of R.R. Telegraphers v. New Orleans*, T. & M. Ry. Co., C.C.A.8 (Mo.) 1946, 156 F.2d 1, certiorari denied 67 S.Ct. 112, 329 U.S. 758, 91 L.Ed. 654, rehearing denied 67 S.Ct. 201, 329 U.S. 829, 91 L.Ed. 703.

Purpose of preliminary injunction is merely to preserve relative positions of parties until trial on merits can be held, and thus party is not required to prove their case in full at preliminary injunction hearing, and findings of fact and conclusions of law made by court granting preliminary injunction are not binding at trial on the merits. *University of Texas v. Camenisch*, U.S.Tex.1981, 101 S.Ct. 1830, 451 U.S. 390, 68 L.Ed.2d 175.

Temporary injunction did not necessarily reflect what ultimate disposition of suit would be. *Beverage Distributors, Inc. v. Olympia Brewing Co.*, C.A.9 (Cal.) 1968, 395 F.2d 850.

Grant or denial of a preliminary injunction is not an adjudication of ultimate rights and does not foreclose further consideration at a trial on the merits of any question presented. *Surber v. U.S.*, S.D. Ohio 1968, 285 F.Supp. 775.

Granting or denying of preliminary injunction is not an adjudication of ultimate rights of parties. *American Granwood Flooring Co. v. McIntyre Veneers, Inc.*, E.D.La.1967, 264 F.Supp. 4. See, also, *Duckworth v. James*, C.A.Va.1959, 267 F.2d 224, certiorari denied 80 S.Ct. 88, 361 U.S. 835, 4 L.Ed.2d 76; *Hunter v. Atchison*, T. & S.F. Ry. Co., C.A.Ill.1951, 188 F.2d 294, certiorari denied 72 S.Ct. 36, 342 U.S. 819, 96 L.Ed. 619, rehearing denied 72 S.Ct. 172, 342 U.S. 889, 96 L.Ed. 667.

Grant or denial of temporary injunction does not conclude parties on merits of case. *S.E.C. v. North Am. Research & Development Corp.*, S.D.N.Y.1972, 59 F.R.D. 111.

Rights which are entitled to protection by injunction fall within a very broad definition of

property or contract rights; and included within category of property rights is any civil right of a pecuniary nature. *Beacon Theatres, Inc. v. Westover*, C.A.9 (Cal.) 1958, 252 F.2d 864, certiorari granted 78 S.Ct. 996, 356 U.S. 956, 2 L.Ed.2d 1064, reversed on other grounds 79 S.Ct. 948, 359 U.S. 500, 3 L.Ed.2d 988.

Generally, one has right freely to contract, and this right or privilege may not be destroyed by force or illegal means, and any unjustifiable inference by third party with contract which results in irreparable injury to complaining party for which law furnishes no adequate or complete remedy may be enjoined, provided contract is not in violation of other law or public policy. *Hallmark Productions v. Mosley*, C.A.8 (Mo.) 1951, 190 F.2d 904.

Injunctive relief may be had to restrain third persons from unlawfully inducing breach of a lawful contract by one of the parties thereto when it will result in irreparable injury to the other. *Sunbeam Corp. v. Payless Drug Stores*, N.D.Cal.1953, 113 F.Supp. 31, 97 U.S.P.Q. 373. Public interest supports parties to a contract acting in good faith. Public interest frowns upon members of the public engaging in fraud, in fact, that is an understatement; it actually is illegal. [REDACTED]. Public interest requires the DOE to regulate ABA, and for ABA to adopt standards which are rationally related to a government interest, as opposed to adopting and enforcing arbitrary and capricious standards which serve only a subversive purpose of protecting the legal education industry from competition. Plaintiff has made a substantial showing from the Doe Decl. and supporting exhibits sufficient to demonstrate that the alleged conduct is in violent disagreement with the conduct of the defendants. (Doe Decl. ¶¶1-246)

The granting of the TRO is particularly important to public policy which demands that if the legal industry is to be afforded the privilege of self-regulation, that the judiciary think of the potential consequences of appearing to act in arbitrary manner which would serves to benefit

those established members of the legal community, of which members of the judiciary are apart, at the expense of the rights of a student to study law and enter the community. The current Order of the Court presents such an appearance of which plaintiff most respectfully asks the Court to consider.

Plaintiff has potential of refining his legal skills through training and finishing the J.D. program and passing a state bar. This is necessary to plaintiff's overall objective of helping the public by practicing law and advocating for people who are less capable or advantaged, including the disabled, and minorities. Unnecessarily delaying plaintiff's legal education due to the tortious conduct of the private law school and those organizations that over see it (in their refusal to help with a solution), will only harm the public by delaying or preventing plaintiff's ability to gain the necessary skills and experience to practice law.

## II. The District Court erred in Denying Plaintiff Privilege to Proceed in Forma Pauperis

Plaintiff has demonstrated sufficient facts for the Court to authorize status of *in forma pauperis*. Plaintiff will not always warrant this status, but now, the circumstances require. It is unreasonable for the plaintiff to be forced to choose between finding a loan or going homeless, or selling household goods in some sort of emergent fashion just to get the relief, immediate and otherwise, which is sought by pursuing this case. This is particularly true when, as is the case here, the tortious conduct of the defendants, if the Court were to not intercede, will inevitably make the plaintiff's financial situation worse when plaintiff loses Federal Student Aid money. At minimum, plaintiff should be able to proceed without fees until plaintiff can afford them. Denying this status leaves defendant with the burden of taking a loan or risking rent payment for due in less than 10 days, in order to seek potential relief, and would result in plaintiff appealing or voluntarily dismissing the case. (Doe Decl ¶¶1-246).

## III. The District Court erred in not granting immediate relief to file under pseudonym, to exceed page limits and file electronically by USB

For the same reasons as in ¶ II above, plaintiff cannot afford to unnecessarily pay fees for paper copies, and the court should reconsider its policy that allows represented parties the privilege of avoiding costs by e-filing while at the same time leaving *pro se* litigants with extensive inconvenience and cost. It is improper and against public policy to use these obvious costs which pro se plaintiffs will incur as a mechanism to deter pro se plaintiffs from seeking relief. It undoubtedly has that effect and to the extent that public policy supports access to justice, denying or even delaying a ruling on such a motion, as the Court has been known to do, denies the unrepresented public with a fair and accessible judicial system.

## IV. This case presents a controlling question of law

Whether the plaintiff qualifies for the TRO and the other relief sought is a controlling question of law. Should the legal education industry and those agencies and organizations who regulate it, having, arguably, some of the smartest members of the general public in leadership positions, be able to wield their power unchecked and have their actions adjudicated by members of that same community, and then adjudicated to the severe detriment of a law student in the ways the plaintiff has represented in the Doe Declaration, without consequence? The plaintiff deserves immediate relief.

"Certification for interlocutory appeal is fitting when the substantive merit of the relevant legal question remains novel." *Puryear v. County of Roanoke*, 71 F. Supp. 2d 551, 554 (W.D. Va. 1999). A controlling question of law is one in which either: [1] if decided erroneously, would lead to reversal on appeal; or [2] is "serious to the conduct of the litigation either practically or legally." *Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, Civil Action No. 3:14cv706, 2015 U.S. Dist. LEXIS 71944, at 17 (E.D. Va., 2015) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). A question is controlling if it is dispositive of the case or if a reversal might save time for the district court, and time and expense for the litigants. *Terry v. June*, 368 F. Supp. 2d 538-39 (W.D. Va. 2005) (citing Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3930, at 426 (West 1996)). A question may be controlling under § 1292(b) even if it is not dispositive of the case, as long as it would materially affect the litigation's outcome. *In re Trump*, 928 F.3d at 371; *Hengle v. Asner*, No. 3:19cv250 (DJN), 2020 U.S. Dist. LEXIS 30261, at *26 (E.D. Va., 2020). The question of whether the law compels a TRO,

an *informa pauperis* status, and other requested relief, under the facts presented, is a controlling question of law because it is central to the conduct of this litigation from a practical perspective. It is perhaps the most important issue of the case.

If the Fourth Circuit were to hold that the Court erred in denying the plaintiff's motions and for inaction on the other motion, it would necessarily lead to reversal.

## V. There are substantial grounds for difference of opinion on these pivotal questions

The fact that universities and those regulatory bodies which control the accreditation have been operating in "distance learning" demonstrates that there are substantial grounds for disagreement as to whether distance learning restrictions are necessary or appropriate. Similarly, the wave of cases which were ruled in favor of the universities when plaintiffs sought reimbursement for tuition because the universities transitioned to distance learning during COVID-19, suggest even further that, not only is there room for disagreement, but that the university's should not be entitled to argue both, that distance learning is not substantially different to justify refund of tuition, while at the same time argue, that "in-person learning" is necessary. Frankly, it is the defendant university's best argument and it is absurd. It seems that the Court must either accept the idea that the universities under ABA accreditation, and DOE regulatory oversight, were producing "less than sufficient" attorneys educated via "distance learning", who have now been "set-free" on the general public to practice as they see fit, or the idea that the distance learning constraints are suspect (at best).

## VI. Immediate appeal will material advance the ultimate termination of this litigation

Immediate appeal of the Court's rulings would materially advance the ultimate termination of this litigation in that if the TRO and other requested relief is granted, it would likely avoid protracted and expensive litigation by driving the defendants to the settlement table. Interlocutory appeal should be permitted "in exceptional situations in which doing so would avoid protracted and expensive litigation."

*Fanin v. CSX Transp., Inc.*, 1989 U.S. App. LEXIS 20859, at6 (4th Cir. 1989). In *Mack v. Yankah (In re Yankah)*, 514 B.R. 159, 164 (E.D. Va. 2014), the court granted interlocutory appeal, finding that doing so would advance the ultimate conclusion of the litigation by preventing the inefficiency of relitigating the same issue if an appeal was decided differently. Similarly, in *Puryear*, 71 F. Supp. 2d, at 554, the court certified a denial of a motion to dismiss for interlocutory appeal where doing so would best serve the interests of judicial economy and avoid unnecessary expense to the parties. The situation is the same here. The interests of judicial economy and avoiding undue expense to the Parties are best served by immediate resolution of the TRO issue by the Fourth Circuit.

## VII. Plaintiff should be afforded some leniency with the rules of the court given the minimal training, relatively minimal time to prepare given the tortious conduct of the defendants.

28 U.S.C. § 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

In *Haines v. Kerner*, 404 U.S. 520 (1971)., the plaintiff-inmate filed *pro se* complaint against prison seeking compensation for damages sustained while placed in solitary confinement. In finding plaintiff's complaint legally sufficient, Supreme Court found that pro se pleadings should be held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 520 (1971). "... the right to file a lawsuit *pro se* is one of the most important rights under the constitution and laws." *Elmore v. McCammon*, 640 F. Supp. 905 (1986). "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." *Maty v. Grasselli Chemical Co.*, 303 U.S. 197 (1938). It was held that a pro se complaint requires a less stringent reading than one drafted by a lawyer per Justice Black in Conley v. Gibson (see case listed above, Pro Se Rights Section). *Puckett v. Cox*, 456 F. 2d 233 (1972) (6th Cir. USCA)

Here, Plaintiff thanks the court for requiring such a less stringent standard and is working hard to learn the proper practice of law.

Court finds that ghostwriting by attorney for a pro se litigant implicates an attorney's duty of candor to the court, interferes with the court's ability to supervise the litigation, and misrepresents the litigant's right to more liberal construction as a pro se litigant. *U.S. v. Eleven Vehicles*, 966 F.Supp. 361 (E.D.Pa. 1997).

Here, Plaintiff wishes to bring to the Court's attention that the pro se litigant rule cited in the Certification has an especially negative consequence on Plaintiff's ability to put forth the case given the sensitive topics implicating rules which protect the legal profession and questionably have no other purpose. By limiting an attorney's ability to help anonymously, plaintiff has been impacted especially in his emergent request for a TRO where time was of the essence. The policy reasons supporting the rule, "candor to the tribunal," sometimes, as is the case here, has competing policy interests which case serve to effectively deny plaintiff right to seek relief. For this reason alone, TRO against the defendants is warranted.

Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1959); *Picking v. Pennsylvania R. Co.*, 151 Fed 2nd 240; Pucket v. Cox, 456 2nd 233.

In response to the Court's Order of August 22, 2022, plaintiff wishes to make two minor points to address concerns expressed by the Court. First, plaintiff had prepared the two sets of documents redacted and unredacted, for the August 19th filing. Plaintiff posed some questions to the clerk as to how to best organize them in support of the emergency motion for TRO. Clerk had already alerted the judge to the emergency motion and insisted, while plaintiff was still organizing the papers, that she present what plaintiff had in one of the two piles, knowing that there was a mix of both redacted and unredacted versions in the pile she took to the judge. When she returned and asked plaintiff to reorganize him, she explicitly told plaintiff not to mark the "Sealed" versions until told to do so, because she was seeking guidance from the court. This is offered by way of explanation, and plaintiff reiterates his appreciate for

any flexibility in handing the "less than perfect" documents. The plaintiff thanks the Clerk for her professionalism and kindness in handling the questions.

## CONCLUSION

Plaintiff, [REDACTED], requests this Honorable Court grant the Motion for Reconsideration of the August 22, and August 23, 2022 Orders or, in the alternative, certify the Order for Interlocutory Appeal.

I certify under penalty of perjury that all assertions made in this brief are true to the best of my knowledge.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully Submitted,

Jane Doe

[REDACTED]

**REDACTED**
**CERTIFICATE OF SERVICE**

I certify that on August 25h, 2021, I have filed the foregoing document, **MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE EMERGENCY CERTIFICATION FOR INTERLOCUTORY APPEAL (REDACTED)(CORRECTED)** with the clerk of the U.S. District Court, Eastern District of Virginia, for filing and for preparation of the summons to be picked up and served on Defendants via private process server.

Additionally, I certify that on August 25th, 2022, I have served a true copy of this Complaint via email on defendant's agents, officers or counsel as follows:

To Hofstra University, President Susan Poser at Susan.Poser@hofstra.edu, and Dean of the Hofstra University, Maurice A. Deane School of Law, Dean Gail Prudenti, at Gail.Prudenti@hofstra.edu., and/or to their address at Hofstra University, Maurice A. Deane School of Law, 1000 Hempstead Tpke, Hempstead, NY 11549.

To Defendant American Bar Association, Accreditation Counsel, Section of Legal Education and Admissions to the Bar, Ms. Tacy Flint, at tflint@sidley.com, and/or to her mailing address, American Bar Association, 321 North Clark Street, Chicago, IL 60654

To Defendant, United States Department of Education, Office of Higher Education, Mr. Herman Bounds at herman.bounds@ed.gov, and/or at the main mailing address, US Department of Education, Office of General Counsel, 400 Maryland Avenue, S.W. Room 6E300, Washington, DC 20202-2111, and/or also to the United States Attorney General, Main Justice Building, 10th & Constitution Ave, NW Washington, DC 20530, and the local US Attorneys Office, United States Attorney for the Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria VA 22314.

Service will be made to or at the addresses once a stamped copy is received from the court with the summons.

By: Jane Doe
[REDACTED]